1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**UNITED STATES DISTRICT COURT**
**EASTERN OF WASHINGTON**

| | |
|---|---|
| JADE WILCOX, ON BEHALF OF HERSELF, AND ALL OTHERS SIMILARLY SITUATED, | ) CASE NO.:  2:17-CV-275-RMP ) ) COMPLAINT -- CLASS ACTION |
| PLAINTIFFS, | ) FOR DAMAGES AND OTHER ) RELIEF UNDER THE DRIVER'S ) PRIVACY PROTECTION ACT, |
| VS. | ) AND JURY DEMAND ) |
| SWAPP LAW, PLLC, DBA CRAIG SWAPP AND ASSOCIATES; AND JAMES CRAIG SWAPP, INDIVIDUALLY, | ) RELATED TO CASE ) NO. 2:17-CV-00122-RMP ) ) |
| DEFENDANTS. | ) ) |

Plaintiff, Jade Wilcox, on behalf of herself and all others similarly situated, by and through her undersigned attorneys, bring this lawsuit for monetary damages and declaratory and injunctive relief based upon Defendants' violations of the federal Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721**,** *et seq.*

COMPLAINT AND JURY DEMAND - 1

# I. INTRODUCTION

1.1    This Action arises from Defendants' purchase of thousands of records that included the personal information of Plaintiff and the Class from motor vehicle records, which Defendants knowingly obtained without consent, for the purpose of sending Plaintiff and the Class marketing materials, in violation of the Driver's Privacy Protection Act ("DPPA") 18 U.S.C. § 2721 *et seq.*

1.2    Congress enacted the DPPA, in part, based upon concerns about "States' common practice of selling personal information to businesses engaged in direct marketing and solicitation. To address these concerns, the DPPA establishes a regulatory scheme that restricts the States' ability to disclose a driver's personal information without the driver's consent." *Maracich v. Spears*, 133 S. Ct. 2191, 2198 (2013) (citations and quotation marks omitted).

1.3    Between September 2013 and May 2016, Defendants purchased more than 10,000 accident reports from the Washington State Patrol that were created following motor vehicle accidents, utilizing personal information populated from motor vehicle records maintained by the Washington Department of Motor Vehicles ("DMV").    Defendants obtained the accident reports from the Washington State Patrol, typically

COMPLAINT AND JURY DEMAND - 2

at a price of $9.50 or $10.50 and then used the protected personal information of Plaintiffs and the Class to mail numerous letters and glossy pamphlets advertising their services to motorists, including Plaintiff and the Class, who had been involved in automobile accidents.

1.4    When Defendants obtained the personal information from the Washington State Patrol, Defendants had not obtained the written consent of Plaintiff or other members of the Class and had no permissible purpose to obtain, use or disclose the personal information that they obtained about Plaintiff or the Class.    As the Supreme Court had held in 2013 that obtaining such personal information without consent for purposes of legal marketing was *not* a permissible purpose under the DPPA, Defendants knew (or at the least were reckless in not knowing) that they were violating the DPPA.

1.5    On June 9, 2017, a court in this District entered a preliminary injunction preventing the Washington State Patrol from selling collision reports containing personal information protected by the DPPA unless and until the requestor certifies that the information is sought for a permissible purpose under the DPPA.

1.6    As relief for Defendants' violations of the DPPA by purchasing and misusing the personal information of thousands of people, this action

COMPLAINT AND JURY DEMAND - 3

seeks an injunction preventing Defendants from using any of the personal information obtained about Plaintiff or the Class and from attempting to obtain such personal information without consent in the future as well as damages and other relief as permitted under the DPPA.

## II. PARTIES

2.1    Plaintiff Jade Wilcox ("Ms. Wilcox") is an individual who resides in Spokane, Washington.  At all times material to this action, she has had a motor vehicle registered and titled with the DMV, and she has held a Washington driver's license issued by the DMV.

2.2    Defendant, Swapp Law, PLLC, dba Craig Swapp and Associates ("the Swapp Firm"), is a Utah Professional Limited Liability Company, with offices in, among other places, Spokane, Washington. According to Swapp Law, its office is located at 16201 E. Indiana Ave., Suite 199, Spokane Valley, WA 99216.   The Swapp Firm's website identifies at least 8 attorneys (Swapp, Bunnell, Larson, Swainston, Childs, Mortensen, Eastwood and King) admitted to practice in Washington State of which at least 4 attorneys (Larson, Mortensen, Eastwood and King) are located in the Spokane office.

2.3    Defendant James Craig Swapp ("Mr. Swapp") is a lawyer who has been admitted to practice law in the State of Washington since 2004.

COMPLAINT AND JURY DEMAND - 4

Upon information and belief, Mr. Swapp is the principal shareholder of the Swapp Firm.  As his biography on the Swapp Firm website acknowledges, Mr. Swapp is "the familiar face of Craig Swapp & Associates' 'One Call, That's All' advertising campaign," which includes having his face displayed on numerous billboards in Spokane, Washington, and Spokane Valley, Washington advertising the services of the Swapp Firm.

## III.    JURISDICTION AND VENUE

3.1    This Court has original subject matter jurisdiction over this Action pursuant to 18 U.S.C. § 2724(a) and 28 U.S.C. § 1331.

3.2    This Court has personal jurisdiction over the Swapp Firm, because it is licensed to do business, and regularly transacts business, within the State of Washington, including but not limited to its solicitation of Plaintiffs.  The Swapp Firm also maintains offices in Washington.

3.3    This Court has personal jurisdiction over Mr. Swapp, a lawyer, because, according to his law firm website he is licensed to practice law in the State of Washington, regularly transacts business within the State of Washington, including but not limited to his solicitation of the Plaintiffs.

3.4    Venue is proper under 28 U.S.C. § 1391(b) and (c).

COMPLAINT AND JURY DEMAND - 5

## IV.    FACTUAL ALLEGATIONS

***The DPPA***

4.1    Congress enacted the DPPA in response to concerns over the collection of individuals' personal information by state motor vehicle departments and the subsequent sale of that personal information by the states. Congress was concerned, in part, by "States' common practice of selling personal information to businesses engaged in direct marketing and solicitation. To address these concerns, the DPPA establishes a regulatory scheme that restricts the States' ability to disclose a driver's personal information without the driver's consent." *Maracich*, 133 S. Ct. at 2198 (citations and quotation marks omitted).

4.2    To obtain a driver's license or motor vehicle registration from the DMV, or from any state's motor vehicle department, individuals must disclose personal information, such as names, addresses, telephone numbers, birth dates, social security numbers, medical information, vehicle descriptions, and photographs.

4.3    Prior to the DPPA, third parties could, and routinely did, purchase individual's personal information to conduct invasive investigations, mine the data on an aggregated basis, and resell the

COMPLAINT AND JURY DEMAND - 6

resulting targeted information to marketers and engage in direct marketing and solicitation.

4.4    In enacting the DPPA, Congress intended to prevent the disclosure of this personal information, prevent activities using this personal information and render these invasive acts to be subject to fines and penalties.

4.5    Section 2724(a) of the DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains …"

4.6    "Personal Information" is defined in the DPPA to include "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status."   18 U.S.C. § 2725. Meanwhile, a "motor vehicle record" is "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles."   *Id.*

COMPLAINT AND JURY DEMAND - 7

4.7   DPPA Section 2721(b) provides a set of "permissible uses" of personal information. The permissible use exemptions to the DPPA allow the use of such information for a limited number of purposes designed to promote the public welfare.

4.8   The Supreme Court in *Maracich* held that communications for the predominant purpose of solicitation of legal services was not a "permissible use." exempt from DPPA liability under (b)(4).   No other provision of the DPPA permits Personal Information to be obtained, disclosed, or used for marketing or solicitation purposes, including for the solicitation or advertising of legal services.

### Collision Reports in the State of Washington Contain Personal Information From Motor Vehicle Records

4.9   As the Court found in *Wilcox v. Baptiste* No. 17-cv-00122 (E.D. Wash.), following automobile accidents in Washington State, the Washington State Patrol prepares collision reports containing personal information protected by the DPPA.

4.10  Indeed, the *Wilcox* court held that the personal information used to prepare those collision reports is obtained from DMV motor vehicle records and uploaded into a software program that the WSP troopers,

COMPLAINT AND JURY DEMAND - 8

(and, upon information and belief other local law enforcement) use to compose the reports.

4.11 The DMV's motor vehicle records pertain to motor vehicle operator's permits, motor vehicle titles, motor vehicle registrations, or identification cards issued by the DMV, and drivers and vehicle owners are required to supply such Personal Information when they obtain permits, licenses, titles and registrations.

4.12 Prior to June 2017—*i.e.*, when the *Wilcox* Court issued a preliminary injunction preventing the practice—the Washington State Patrol was selling those collision reports to any third party—*e.g.,* such as Defendants—without redacting personal information protected by the DPPA or taking any steps to ensure that the requesting party had a permissible purpose under the DPPA.

4.13 Following the issuance of the preliminary injunction, the Washington State Patrol is now required to "put into place a system of redacting addresses, driver license numbers, dates of birth, sex, height, and weight of registered owners from all traffic collision reports that it discloses unless and until the requestor of such information certifies under penalty of perjury that the information is sought for one of the fourteen permissible purposes under 18 U.S.C. § 2721(b)."

COMPLAINT AND JURY DEMAND - 9

***Defendants Systematically Purchase Personal Information for Purpose of Direct Marketing***

4.14  Defendant Craig Swapp, a lawyer admitted to practice law in the State of Washington, and his law firm, the Swapp Firm, focus their practice in personal injury and, in particular, automobile accidents. On its website, the Swapp Firm prominently advertises itself as "Your Auto Accident Lawyers."

4.15  As explained in a July 21, 2016 article in the *Inlander*, Defendants have repeatedly and routinely obtained DPPA-protected personal information for the purpose of marketing legal services. Such Personal Information is obtained for the sole purpose of lining the firm's, and therefore Mr. Swapp's personal, pockets.

4.16  According to records provided by the Washington State Patrol, on more than 10,000 occasions between September 2013 and July 2016, the Swapp Firm purchased accident reports from the Washington State Patrol, at a cost of either $9.50 or $10.50 per report.

4.17  As explained in the July 21, 2016 *Inlander* article, Defendants systematically ordered traffic collision reports electronically and then harvested those reports for Personal Information, including names and addresses.

COMPLAINT AND JURY DEMAND - 10

4.18 The July 21, 2016 *Inlander* article described the procedures that the Swapp Firm's marketing employee, Mariam Ibarra, utilizes to collect collision reports and therefore the personal information of auto accident victims:

> All Ibarra has to do is open up WSP's Requests for Electronic Collision Records site, enter a date in the search field, and start clicking tiny shopping cart icons next to the list of names. The only speed bump? You're capped at ordering 15 records at a time. So at 8:56am, Ibarra orders another 15. Then another. Within 35 minutes, Ibarra has already purchased more than 60 Washington accident collision records for Swapp.

4.19 Utilizing this Personal Information, the Swapp Firm  sends letters with the signature of Craig Swapp (including the ones received by Plaintiff) and glossy pamphlets marketing their legal services to people who had just been involved in motor vehicle accidents, often within a matter of days of their accidents, and prior to these accident victims ever contacting Mr. Swapp or the Swapp Firm.

4.20 Defendants' practice of bulk-purchasing collision reports, in order to obtain and use this personal Information, was the subject of a grievance filed with the Washington State Bar Association ("WSBA"). During the bar grievance, Defendants were advised that their bulk

COMPLAINT AND JURY DEMAND - 11

purchase of personal information for solicitation purposes was a violation of the DPPA.

4.21  In an April 28, 2015 letter, Mr. Swapp advised the WSBA that his law firm, "a for-profit organization," requested "auto-accident reports" and using the information from those reports, the Swapp Firm had a practice of sending "direct mailings" to the persons identified in those reports along with 'how-to' guides in dealing with property damage and medical bills" and the police report."

4.22  Thereafter, in a June 5, 2015 letter, Mr. Swapp advised the WSBA that the Swapp Firm "was obtaining comprehensive police reports, which comprise a myriad of information" and that information was then used by Mr. Swapp and his Spokane law firm to communicate with "the person who has been in an accident."   The June 5, 2015 letter acknowledges that these mailings were sent to auto accident victims who had not previously contacted the Swapp Firm to entice these "persons [who] would be interested in retaining our firm to help in this process, which may include litigation" and these materials were sent for the sole purpose of "offer[ing] our legal services."

4.23  On May 27, 2016, WSBA Disciplinary Counsel Christine Gray issued a letter setting forth the following findings: "The facts here are

COMPLAINT AND JURY DEMAND - 12

uncontested… On a regular basis, Mr. Swapp's office has obtained reports from the Washington State patrol … On a regular basis; Mr. Swapp's office has used some information on those reports to send solicitation letters to potential clients… [It is undisputed] Craig Swapp obtained collision reports from the Washington State Patrol and used information from those reports to solicit potential clients by mail."

4.24 Accident victims receiving Defendants' solicitations and marketing materials had not consented to the contact or waived any privacy rights they have under the DPPA.

### *Defendants Obtain & Use Plaintiffs' Personal Information*

4.25 Ms. Wilcox was involved in an automobile accident on August 1, 2015, labeled E448140.  The Spokane Police Department created a traffic collision report on August 2, 2015, utilizing Personal Information obtained from the DMV's motor vehicle records.

4.26 Based on Defendants' systematic and continual practice, Defendants purchased the collision report from the Washington State Patrol.

4.27 Ms. Wilcox was involved another automobile accident on July 9, 2016, labeled E562485.  She was driving a motor vehicle registered in her name, and to her address.  The Washington State Patrol created a

COMPLAINT AND JURY DEMAND - 13

traffic collision report on July 11, 2016, utilizing Personal Information obtained from the DMV's motor vehicle records.

4.28 Based on Defendants' systematic and continual practice, Defendants purchased the collision report from the Washington State Patrol.

4.29 Utilizing Ms. Wilcox's Personal Information obtained from the collision report, Defendants sent Ms. Wilcox a letter on July 14, 2016 signed by Mr. Swapp, advertising their services. The letter explained that Ms. Wilcox's Personal Information was obtained from Washington public records.

**Defendants' Conduct Was Knowing and Willful and/or Reckless**

4.30  By at least June 17, 2013, when the United States Supreme Court issued its decision in *Maracich v. Spears*, Defendants knew or were reckless in not knowing that communications for the predominant purpose of solicitation of legal services was not a permissible use of personal information under the DPPA.

4.31  The majority, if not every, attorney listed on the Swapp Firm's website claims to practice in the area of automobile accidents. As all of the 8 attorneys identified on the Swapp Firm website as being admitted to practice in the State of Washington claim to handle or focus on automobile

COMPLAINT AND JURY DEMAND - 14

accident cases, and the concentration of the Swapp Firm's practice in automobile accident cases in general, Defendants must have known (and certainly should have known) that the personal information in the collision reports was populated with personal information from motor vehicle records.

4.32  The July 21, 2016 *Inlander* article, for which Mr. Swapp was interviewed and extensively discusses the Swapp Firm's data mining and marketing practices, specifically identified the existence of a class action lawsuit alleging that because "collision reports often contain information obtained from driver's licenses, when lawyers use them to contact accident victims, they are violating the federal Driver's Privacy Protection Act."

## V.    CLASS ACTION ALLEGATIONS

5.1    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), on behalf of the following Class:

> All drivers identified in traffic collision reports whose Personal Information, as defined by the DPPA, was obtained by the Swapp Law Firm (d/b/a Craig Swapp & Associates) or Mr. Swapp from the Washington State Patrol between September 1, 2013 and June 23, 2017.

COMPLAINT AND JURY DEMAND - 15

Excluded from the Class are (a) any individuals who are current or former clients of the Swapp Firm or Mr. Swapp, (b) any individuals who provided written consent to Defendants for the disclosure of their Personal Information (as defined by the DPPA) prior to Defendants obtaining their personal information, (c) employees of the Swapp Law Firm (including any attorneys) or of Mr. Swapp as well as any of the members of their immediate families, and (d) the Judge to whom this action is assigned as well as person working in the Judge's chambers and the members of their families.

## Impracticability of Joinder

5.2    The Class is so numerous that joinder of all members is impracticable. According to records produced by the Washington State Patrol, Defendants purchased more than 10,000 collision reports containing Personal Information between 2013 and 2016 predominantly involving accidents in the Spokane area.    While the exact number identities of the Class members are unknown to Plaintiffs and their counsel, the members of the Class are also believed to be geographically dispersed across the State of Washington.

COMPLAINT AND JURY DEMAND - 16

**Commonality**

5.3    The central question concerns whether Defendants' admitted practice of obtaining personal information contained in accident reports, which is directly populated from records from the DMV, to solicit business from accident victims without their consent violates the DPPA. Subsidiary common questions of law or fact which will have common answers including the following:

a)    whether Defendants obtained, disclosed and/or used the Personal Information derived from the motor vehicle records of the DMV, of Plaintiffs and the Class when they purchased the traffic collision reports from the Washington State Patrol;

b)    Whether Defendants had any permissible purpose, within the meaning of 18 U.S.C. § 2721(b), when they obtained they obtained the Personal Information, of Plaintiffs and the Class;

c)    Whether Defendants knowingly obtained, disclosed or used the Personal Information, of Plaintiff and the Class in violation of the DPPA and are therefore liable to Plaintiff and the Class;

d)    whether Defendants systematic conduct was willful or in reckless disregard of the law, warranting the award of punitive

COMPLAINT AND JURY DEMAND - 17

against Defendants and in favor of Plaintiff and the class members, as expressly provided under 18 U.S.C. § 2724(b)(2) of the DPPA;

e)     the appropriate equitable and damage remedies that should be awarded to Plaintiffs and the Class as a result of Defendants

## Typicality

5.4     Plaintiffs' claims are typical of the claims of other members of the Class because Plaintiff and Class members' claims all arise from the same course of conduct and are all premised upon the same legal theory. Defendants obtained personal information about Plaintiff and the other Class Members in bulk through numerous requests to the Washington State Patrol.  After obtaining this protected information about Plaintiff and the Class, Defendants then used Plaintiff' and Class members' Personal Information without consent for purposes of marketing legal services.

## Adequacy

5.5     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has no conflict with other members of the Class.   Plaintiff understands her obligations to the Class, is committed to vigorously litigating this matter and will fairly and adequately protect and represent the interests of the Class.

COMPLAINT AND JURY DEMAND - 18

5.6    Defendants have no unique defenses against Plaintiff that would interfere with her representation of the Class.

5.7    Plaintiff has engaged counsel experienced in class action litigation.

### Rule 23(b)(3)

5.8    The Class is suitable for certification under Fed. R. Civ. P. 23(b)(3). The questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

5.9    Common questions of law and fact will predominate over any individual ones as the significant questions in this case focus on the legality of Defendants' conduct. As illustrated by the article in the *Inlander*, the Swapp Firm, engaged in bulk downloading of collision reports, purchasing as many as 60 reports in 35 minutes and mining the personal information contained in those reports for purposes of marketing their legal services. As a result, Defendants' own conduct will determine their liability based upon law and fact common to all Class members. Even though predominance is not required for damages, the DPPA establishes a minimum amount of liquidated damages

COMPLAINT AND JURY DEMAND - 19

5.10  A class action is superior to other available methods of suit, because a class action would be more manageable and efficient than other means. As Plaintiff and the approximately 10,000 Class members have essentially identical claims focused on Defendants' conduct, it is far more efficient to litigate these claims in a single proceeding rather than to require each Class member to file suit separately, particularly as the vast majority, if not all, of class members' damages will not exceed the liquidated damage amount.

5.11  There are no other pending lawsuits in which members of the Class have raised similar allegations against the Defendants.  The only other related litigation alleging claims involving the DPPA concerning the sale of accident reports by the Washington State Patrol is pending in this District.

5.12  This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, Defendants have utilized the Personal Information they obtained to engage in marketing in this District, and, as a result of those activities, a significant portion of the Class likely resides in this District.

5.13  There are no difficulties in managing this case as a class action.

COMPLAINT AND JURY DEMAND - 20

## VI.   CLAIM FOR RELIEF
## VIOLATION OF THE DRIVER'S PRIVACY PROTECTION ACT
### (18 U.S.C. § 2721, et seq.)

6.1    Plaintiffs repeat and reallege the allegations in the foregoing paragraphs as if fully set forth herein.

6.2    The DPPA, 18 U.S.C. § 2722 makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under Section 2721(b)" of the DPPA.

6.3    The DPPA, 18 U.S.C. § 2724(a) provides that a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains.

6.4    The DPPA, 18 U.S.C. § 2725(1) defines "motor vehicle record" to mean "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles."

6.5    The DPPA, 18 U.S.C. § 2725(3) defines "personal information" to mean information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or

COMPLAINT AND JURY DEMAND - 21

disability information, but does not include information on vehicular accidents, driving violations, and driver's status."

6.6    Defendants obtained approximately 10,000 collision reports from the Washington State Patrol between 2013 and 2016, including those involving Plaintiff and the Class. Collision reports obtained by Defendants contained "personal information from a motor vehicle record" within the meaning of 18 U.S.C. §§ 2722 & 2725(1), (3).    By obtaining such information and reports, Defendants obtained the Personal Information, within the meaning of 18 U.S.C. § 2725(3) of Plaintiff and the Class.

6.7    Defendants obtained the collision reports for the express purpose of obtaining, using and/or disclosing Plaintiff and Class Members' Personal Information, in order to and as part of Defendants' efforts to market legal services.

6.8    The marketing of legal services is not a "permissible use" of personal information under the DPPA, 18 U.S.C. § 2721(b).

6.9    Defendants had no permissible purpose, within the meaning of 18 U.S.C. § 2722(a) or § 2721(b), to obtain the personal information of Plaintiff and the Class and did not use the personal information for a permissible purpose.

COMPLAINT AND JURY DEMAND - 22

6.10  Defendants obtained the personal information of Plaintiff and the Class knowing that they were obtaining their personal information from a motor vehicle record and knew that they had no permissible use under the DPPA.

6.11  As a result of Defendants' conduct, Plaintiff and the Class have suffered harm, and are entitled to recover the damages available under the DPPA, plus costs and attorneys' fees, as provided under 18 U.S.C. § 2724(b) of the DPPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray that judgment be entered against Defendants, jointly and severally, and request that the Court award the following relief:

A.    Declare that Defendants' practice of obtaining personal information contained in traffic collision reports from the Washington State Patrol about Plaintiff and the Class for purpose of marketing Defendants' legal services violated the DPPA;

B.    Enter a preliminary and permanent injunction preventing and restraining Defendants (and any of their attorneys, employees, agents, representatives or anyone acting on their behalf) from obtaining traffic collision reports issued by the Washington State Patrol unless Defendants

COMPLAINT AND JURY DEMAND - 23

have obtained that person's express written consent or Defendants have certified under penalty of perjury to the Washington State Patrol that the information is sought for one of the permissible purposes under 18 U.S.C. § 2721(b) and identifying the permissible purpose.

C.    Enter a preliminary and permanent injunction preventing and restraining Defendants (and any of their attorneys, employees, agents, representatives or anyone acting on their behalf) from disclosing or using the personal information about Plaintiff and the Class, and requiring Defendants to destroy all personal information about Plaintiff and the Class that Defendants have in the possession, custody or control.

D.    Require Defendants to identify under penalty of perjury all manners how the personal information of Plaintiff and the Class have been used or disclosed and confirming that all personal information about Plaintiff and the Class has been destroyed.

E.    Award monetary damages, the exact amount to be determined at trial, in an amount not less than the statutory-provided liquidated damages, for each Plaintiff and each member of the Class, of not less than $2500 for each separate violation of DPPA by Defendant under 18 U.S.C. § 2724(b)(1);

COMPLAINT AND JURY DEMAND - 24

F.    Award punitive damages, the exact amount to be determined at trial, for Defendants' willful and reckless disregard of the DPPA and to deter such future violations, pursuant to 18 U.S.C. § 2724(b)(2);

G.    Require Defendants to pay pre-judgment interest and post-judgment interest;

H.    Award reasonable attorney's fees and other litigation costs pursuant to 18 U.S.C. § 2724(b)(3) and/or order payment of reasonable fees and expenses in this action to Plaintiff's counsel on the basis of the common benefit and/or common fund doctrine out of any money or benefit recovered for the Class in this action;

I.    Grant any other relief that this Court determines is appropriate pursuant to 18 U.S.C. § 2724(4) and grant any other relief to which Plaintiff is entitled pursuant to Rule 54(c) of the Federal Rules of Civil Procedure.

**TRIAL BY JURY**

Plaintiffs demand trial by jury of all issues so triable.

DATED August 3, 2017

*/s Thomas G. Jarrard*
THOMAS G. JARRARD
The Law Office of Thomas G. Jarrard, PLLC
1020 N. Washington
Spokane, WA 99201
Telephone: (425) 239-7290
Email: tjarrard@att.net

COMPLAINT AND JURY DEMAND - 25

R. Joseph Barton (*pro hac vice forthcoming*)
Block & Leviton LLP
1735 20th Street, N.W.
Washington D.C. 20009
Telephone: 202-734-7046
Email: jbarton@blockesq.com

Jason Leviton (*pro hac vice forthcoming*)
Thomas W. Kirchofer (*pro hac vice forthcoming*)
Block & Leviton LLP
155 Federal Street, Suite 400
Boston MA 02110
Telephone: 617-398-5660
Email: jason@blockesq.com
Email: tom@blockesq.com

James R. Sweester
Sweetser Law Office
1020 n. Washington St.
Spokane WA 99201
Telephone: 509-328-0678
Email: jsweets@sweetserlawoffice.com

Attorneys for Plaintiff.