# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

JADE WILCOX, ON BEHALF OF
HERSELF, AND ALL OTHERS
SIMILARLY SITUATED,

                    PLAINTIFFS,

            VS.

SWAPP LAW, PLLC, DBA CRAIG
SWAPP AND ASSOCIATES; AND
JAMES CRAIG SWAPP,
INDIVIDUALLY,

                    DEFENDANTS.

) CASE NO. 2:17-CV-275-RMP
)
) RELATED TO CASE
) NO. 2:17-CV-00122-RMP
)
) PLAINTIFF'S MOTION FOR
) CLASS CERTIFICATION
)
)
)
)
) WITHOUT ORAL ARGUMENT
) November 6, 2018
)
)
)
)
)

# **TABLE OF CONTENTS**

Introduction ........................................................................................ 1

Background Facts ............................................................................... 1

  I.  Officers Prepared Collision Reports Using Similar Procedures ........... 1

  II.  Defendants Purchased Thousands of Collision Reports ................. 4

  III.  Plaintiff's Two Car Accidents. .......................................................... 5

Argument ............................................................................................ 6

  I.  The Class is Sufficiently and Properly Defined ................................... 7

  II.  The Requirements of Rule 23(a) Are Satisfied. ................................ 8

    A.  Joinder of the Class is Impracticable ............................................. 8

    B.  There are Common Questions of Law and Fact ........................... 8

    C.  Plaintiff's Claims Are Typical of those of the Class ..................... 11

    D.  Plaintiff Will Fairly and Adequately Represent the Class ............ 12

      1.  There Are No Conflicts Among the Class .................................... 12

      2.  Plaintiff Will Vigorously Represent the Class ............................... 13

      3.  Plaintiff's Counsel are More Than Adequate. ........................... 14

  III.  The Requirements of Rule 23(b)(3) Are Satisfied. ........................ 15

    A.  The Predominance Requirement is Met. ...................................... 15

    B.  The Superiority Requirement is Met ............................................. 18

Conclusion ........................................................................................ 20

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION - i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Agne v. Papa John's Int'l, Inc.*,

5
   286 F.R.D. 559 (W.D. Wash. 2012)......................................................17

6

*Allen v. Hyland's Inc.*,

7
   300 F.R.D. 643 (C.D. Cal. 2014) ...................................................13, 14

8

*Amchem Prods., Inc. v. Windsor*,

9
   521 U.S. 591 (1997) ...........................................................................6

10

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ...............................................................6, 15, 16

11

*Briseno v. ConAgra Foods, Inc.*,

12
   844 F.3d 1121 (9th Cir. 2017) ..........................................................7, 19

13

*Buchanan v. Tata Consultancy Servs., Ltd.*,

14
   No. 15-CV-01696-YGR, 2017 WL 6611653 (N.D. Cal. Dec.

15
   27, 2017)..............................................................................................7

16

*Cabiness v. Educ. Fin. Sols., LLC*,
   16-CV-01109-JST, 2018 WL 3108991 (N.D. Cal. June 25,

17
   2018)....................................................................................................16

18

*Connor v. Automated Accounts, Inc.*,

19
   202 F.R.D. 265 (E.D. Wash. 2001)......................................................16

20

*Erickson v. Elliot Bay Adjustment Co., Inc.*,

21
   C16-0391JLR, 2017 WL 1179435 (W.D. Wash. Mar. 29,

22
   2017)..............................................................................................7, 19

23

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014) .......................................................................18

24

*Haney v. Recall Ctr.*,

25
   282 F.R.D. 436 (W.D. Ark. 2012).......................................................7, 9

26

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .......................................................12, 15

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION - ii

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ............................................................... 11

*Hernandez v. Cnty. of Monterey*,
    305 F.R.D. 132 (N.D. Cal. 2015) .......................................................... 7

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) .............................................................. 15

*Kamar v. Radio Shack Corp.*,
    254 F.R.D. 387 (C.D. Cal. 2008), *aff'd,* 375 F. App'x 734 (9th
    Cir. 2010) ............................................................................................ 16

*Kurihara v. Best Buy Co., Inc.*,
    No. C 06-01884 MHP, 2007 WL 2501698 (N.D. Cal. 2007)................. 16

*Maracich v. Spears*,
    570 U.S. 48 (2013) ........................................................................ 11, 12

*Messner v. Northshore U. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ............................................................... 16

*Moeller v. Taco Bell Corp.*,
    220 F.R.D. 604 (N.D. Cal. 2004) *amended in part,* 2012 WL
    3070863 (N.D. Cal. July 26, 2012) ...................................................... 13

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
    311 F.R.D. 590 (C.D. Cal. 2015) ......................................................... 16

*Orvis v. Spokane Cty.*,
    281 F.R.D. 469 (E.D. Wash. 2012) (Peterson, J.)................................ 13

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ............................................................... 11

*Pichler v. UNITE*,
    228 F.R.D. 230 (E.D. Pa. 2005) ....................................................... 6, 9

*Roberts v. Source for Pub. Data*,
    No. 2:08-CV-04167-NKL, 2009 WL 3837502 (W.D. Mo. Nov.
    17, 2009)......................................................................................... 9, 18

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- iii

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2009) ...................................................... 11, 12

*Sandoval v. Rizzuti Farms, Ltd.*,
    CV-07-3076-EFS, 2008 WL 4530525 (E.D. Wash. Oct. 6,
    2008)................................................................................................ 16

*Saucedo v. NW Mgmt. & Realty Servs., Inc.*,
    290 F.R.D. 671 (E.D. Wash. 2013)................................................. 8

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ...................................................................... 6

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ......................................................... 12

*Stockwell v. City & County of San Francisco*,
    749 F.3d 1107 (9th Cir. 2014) ...................................................... 6

*Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ...................................................... 8, 18

*Torres v. Mercer Canyons, Inc.*,
    No. 1:14-CV-03032-SAB, 2015 WL 1641519 (E.D. Wash.
    Apr. 8, 2015) ................................................................................. 11

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) .................................................................. 15, 16

*Vaquero v. Ashley Furniture Indus., Inc.*,
    824 F.3d 1150 (9th Cir. 2016) ...................................................... 8

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) ........................................................ 8

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000)......................................................... 18

*Wilcox v. Batiste*,
    17-cv-00122-RMP (E.D. Wash.).................................................... 13

*Wolin v. Jaguar Land Rover N.A., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ...................................................... 18, 19

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**Statutes**

18 U.S.C. § 2721 ............................................................................ *passim*

18 U.S.C. § 2721(b)(4) ................................................................ 12

18 U.S.C. § 2724(a) ....................................................................... 9

18 U.S.C. § 2725(1) ...................................................................... 17

18 U.S.C. § 2725(3) ........................................................................ 2

RCW 46.52.080 .............................................................................. 4

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................. 1, 6, 13

Fed. R. Civ. P. 23(a) ........................................................... 6, 8, 20

Fed. R. Civ. P. 23(a)(1) .................................................................. 8

Fed. R. Civ. P. 23(a)(2) .................................................................. 8

Fed. R. Civ. P. 23(a)(3) ................................................................ 11

Fed. R. Civ. P. 23(a)(4) .......................................................... 12, 14

Fed. R. Civ. P. 23(b) ...................................................................... 6

Fed. R. Civ. P. 23(b)(3) ........................................... 15, 16, 18, 19

Fed. R. Civ. P. 23(g) ..................................................................... 14

Fed. R. Civ. P. 23(g)(1)(A) ........................................................... 14

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- v

## INDEX OF EXHIBITS

**Declaration of Jade Wilcox with the following attachments:**

Exhibit 1:   Letter and Booklet from Craig Swapp & Associates to Jade Wilcox, bates stamped Wilcox000001-Wilcox000030

Exhibit 2:   Duties of Class Representative signed by Jade Wilcox

**Declaration of Thomas Kirchofer with the following attachments:**

Exhibit 3:   Excerpts from the Rule 30(b)(6) Deposition of the Washington State Patrol by Kateri Candee ("Candee Dep.")

Exhibit 4:   Excerpts from the Rule 30(b)(6) Deposition of the Washington State Patrol by Patrick Gibbs ("Gibbs Dep.")

Exhibit 5:   Excerpts from the Rule 30(b)(6) Deposition of the Washington State Patrol by Tania Johnson ("Johnson Dep.")

Exhibit 6:   Excerpts from the Rule 30(b)(6) Deposition of the Washington State Patrol by Ian Morhous ("Morhous Dep.")

Exhibit 7:   Excerpts from the Rule 30(b)(6) Deposition of the Washington Criminal Justice Training Commission by Michael McGee ("McGee Dep.")

Exhibit 8:   Excerpts from the Rule 30(b)(6) Deposition of the Washington Department of Licensing by Carla Weaver-Groseclose ("Weaver Dep.")

Exhibit 9:   Excerpts from the Deposition of Jade Wilcox ("Wilcox Dep.")

Exhibit 10: Defendants' Responses to Plaintiff's First Set of Requests for Admissions dated March 5, 2018

Exhibit 11: Defendants' Responses to Plaintiff's First Set of Interrogatories and Second Supplemental Responses dated July 17, 2018

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION - vi

Exhibit 12:  Responses to Plaintiff's First Set of Interrogatories and Requests for Production by John Batiste with Objections, Answers and Responses, the Batiste Action

Exhibit 13: Police Traffic Collision Report Instructions Manual (Exhibit 18 of the Rule 30(b)(6) Deposition of the Washington State Patrol), bates stamped Plaintiff006918-Plaintiff007033

Exhibit 14: Email from collisionrecords@wsp.wa.gov to Marissa Ibarra dated July 13, 2016, (Exhibit 5 of the Rule 30(b)(6) Deposition of the Washington State Patrol), bates stamped eSWAPP_001767

Exhibit 15: Second Email from collisionrecords@wsp.wa.gov to Marissa Ibarra dated July 13, 2016 (Exhibit 6 of the Rule 30(b)(6) Deposition of the Washington State Patrol), bates stamped eSWAPP_001765

Exhibit 16: Police Traffic Collision Report dated August 1, 2015, bates stamped Swapp_022250-Swapp_022254

Exhibit 17: Police Traffic Collision Report dated July 9, 2016 (Exhibit 2 of the Rule 30(b)(6) Deposition of the Washington State Patrol), bates stamped Swapp_028379-Swapp_028384

**Declaration of R. Joseph Barton**

**Declaration of Thomas G. Jarrard**

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- vii

**Declaration of Pete Cozzitorto**, (originally filed as Dkt. No. 22-3 in *Wilcox v. Batiste*, Case No. 17-cv-00122-RMP (E.D. Wash.)) ("Cozzitorto Decl.")

**Second Declaration of Patrick Gibbs**, (originally filed as Dkt. No. 22-1 in *Wilcox v. Batiste*, Case No. 17-cv-00122-RMP (E.D. Wash.)) ("Gibbs Decl.")

**Declaration of Tania Johnson,** (originally filed as Dkt. No. 5-4 in *Wilcox v. Batiste*, Case No. 17-cv-00122-RMP (E.D. Wash.)) ("Johnson Decl.")

**Declaration of Carla Weaver**, (originally filed as Dkt. No. 22-2 in *Wilcox v. Batiste*, Case No. 17-cv-00122-RMP (E.D. Wash.)) ("Weaver Decl.")

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- viii

**INTRODUCTION**

This case concerns bulk purchases of Police Traffic Collision Reports ("PTCRs") by Defendants James Craig Swapp, and his law firm, Swapp Law, PLLC ("Swapp") from the Washington State Patrol ("WSP") to extract drivers' personal information for marketing. The Complaint alleges doing so violated the Driver's Privacy Protection Act ("DPPA") 18 U.S.C. § 2721 *et seq.* As Defendants bought thousands of PTCRs as part of a standard scheme, Rule 23 is satisfied, and the following Class should be certified:

> All drivers identified in Police Traffic Collision Reports whose Personal Information, as defined by the DPPA, was derived from a Department of Licensing record (e.g. license, registration or database) and the Report was obtained by the Swapp Law Firm (d/b/a Craig Swapp & Associates) or Mr. Swapp from the Washington State Patrol between September 1, 2013 and June 23, 2017.

Excluded from the Class are (a) current and former clients of Defendants (b) individuals identified on the same PTCRs as Defendants' clients, (c) individuals who provided written consent to Defendants for the disclosure of their Personal Information (as defined by the DPPA) prior to Defendants obtaining their personal information, (d) employees (and attorneys) of the Defendants and members of their immediate families, and (d) the Judge to whom this action is assigned and anyone working in the Judge's chambers and the members of their families.

**BACKGROUND FACTS**

**I.    Officers Prepared Collision Reports Using Similar Procedures**

Law enforcement officers across Washington State use standard PTCR forms to document vehicle accidents. Gibbs Dep. at 8:9-16; Morhous Dep.at 23:5-8. Officers use standard procedures in preparing PTCRs.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION - 1

Morhous Dep. at 24:1-8. Nearly all PTCRs are prepared with SECTOR, a program installed on police car computers and used by 96% of Washington law enforcement agencies. Johnson Dec. ¶ 3; Johnson Dep. at 38:23-25. SECTOR allows officers to auto-populate certain fields on PTCRs. Johnson Dec. ¶¶ 3, 5.

In collecting Personal Information[1] for the PTCR, officers ask drivers for their licenses, registrations, and insurance information and then ask if the information on the registration and drivers' licenses is current. Morhous Dep. at 65:15-21; McGee Dep. at 41:2-9; Cozzitorto Dec. ¶ 3. In situations in which licenses and registrations show different addresses, officers will ask drivers which one is current. Morhous Dep. at 73:19-74:7. If the information on one is current, officers scan the barcode on a license or registration and so long as the barcode is scannable, SECTOR auto-populates the PTCR with information from those documents. Johnson Dep. at 13:13-25; Morhous Dep. at 27:25-28:15; McGee Dep. at 42:18-43:8; Cozzitorto Dec. ¶ 4. The DOL, which creates and owns the licenses and the barcodes, considers the barcode information to be confidential. Weaver Dep. at 100:10-25;[2] 125:1-5.

If the information is not current, officers are instructed to use a drivers' updated street addresses and "[c]heck the 'new address' box [on

---

[1] The DPPA defines "Personal Information" as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3).

[2] The front of the license contains the same Personal Information as the bar code. Johnson Dep. at 19:6-20:23; Weaver Dep. at 100:13-16.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 2

the PTCR form] if the operator's address is different than what is listed on their driver's license." Ex. 13 (PTCR Manual) at Plaintiff006943; *see* Morhous Dep. at 24:1-4; 36:20-37:9; 118:5-10; McGee Dep. at 77:20-78:4. Officers creating PTCRs on SECTOR cannot ignore the "new address" box; they must either check the box, or elect to keep it unchecked, to advance in the software and complete the report. Johnson Dep. at 106:7-107:1. If an officer received personal information verbally from a motorist, the "new address" box would be checked. McGee Dep. at 178:2-12.[3] If the information on a license is not current, an officer "may then manually type the information from the driver's return into SECTOR to complete the police traffic collision report." Ex. 12 (WSP's Interrog. Resp.) at No. 3; *see* Morhous Dep. at 24:12-27:16; 28:5-11.

Officers investigating a collision request a "driver's return" or "driver's check." Cozzitorto Dec. ¶ 5; Morhous Dep. at 66:13-21; McGee Dep. at 45:1-25. A driver's return provides officers with Personal Information directly from Department of Licensing ("DOL") databases, including motorists' names, addresses, dates of birth, and license status, among other information. Weaver Dec. ¶ 4; Candee Dep. at 22:14-25; 23:16-25:20.

---

[3] PTCRs can be identified by a report number beginning with "E" (if created using SECTOR) or only numerals (if created on paper). Gibbs Dep. at 15:13-17:7. SECTOR keeps a record of whether a PTCR was created by scanning barcodes versus manually typing information. Weaver Dep. at 101:10-102:12. Reports with numbers beginning with "M" or "C" are created by citizens (those drivers are not included in the class). Gibbs Dep. at 16:6-18.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 3

## II.    **Defendants Purchased Thousands of Collision Reports**

Once officers complete their PTCRs, SECTOR transmits the PTCRs to the Department of Transportation and to the WSP. Johnson Dep. at 37:9-38:2; Gibbs Dep. at 13:13-17. WSP's Collision Records Section maintains all PTCRs for the State of Washington, regardless of whether they were prepared by WSP troopers, or local law enforcement. Gibbs Dep. at 8:9-16.

The WSP routinely sold PTCRs – containing drivers' names and addresses – to anyone who wished to buy them. Using the WSP website WRECR,[4] requesters identified their involvement in a collision through a dropdown box. Gibbs Dep. at 25:24-26:3; 28:4-20. Parties to the accidents, their attorneys, and their insurers were "entitled parties" and could obtain unredacted PTCRs. Gibbs Dec. ¶ 7. Anyone else were "non-entitled parties" and could only obtain PTCRs with driver's license numbers and dates of birth redacted. *Id.* ¶ 11; *see* RCW 46.52.080.[5] There was no limit to the number of PTCRs someone could buy.[6]

Standard procedure for selling PTCRs to Defendants was through the "WRECR" website. Gibbs Dep. at 26:1-3. Defendants' employees had usernames and passwords associated with one account, so they could purchase records in bulk and received a monthly bill. Gibbs Dep. at 31:15-18; 33:9-35:14; 67:18-69:15.

---

[4] WRECR stands for Washington Request for Electronic Collision Report. Gibbs Dep. at 7:25-8:1.

[5] In April 2017, the WSP stopped redacting dates of birth from PTCRs sold to non-entitled parties. Gibbs Dec. ¶ 11.

[6] While only 15 reports could be purchased in a request, purchasers could make as many requests as they liked. Gibbs Dep. at 40:8-15.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 4

Swapp employees would select the reports they wished to purchase, and then receive a confirmation email. Gibbs Dep. at 42:9-43:8; Ex. 14 (confirmation email to Swapp employee); *see* Ex. 11 (Swapp's Interrog. Resp.) at No. 5. Later, Defendants would receive an email containing a password-protected link from which they could download PTCRs. Gibbs Dep. at 46:15-48:8; Ex. 15 (transmittal email to Defendants' employee); Ex. 11 (Swapp's Interrog. Resp.) at No. 5.[7] Between September 1, 2017 and June 23, 2017, Defendants purchased 10,555 reports, of which 8,835 were not then – and never became – clients of Swapp Law. Ex. 11 (Swapp's Interrog. Resp.) Nos. 2(a), (b) and (c).

### III.   Plaintiff's Two Car Accidents.

Plaintiff Jade Wilcox was involved in two car accidents. The first occurred August 1, 2015. Wilcox Dep. at 23:8-14; Ex. 16 (2015 PTCR). A Spokane Police officer asked Plaintiff for her driver's license, registration and proof of insurance, which she provided. Wilcox Dep. at 26:15-24. The officer asked if the information was current; she said the license address was not current, but the registration address was. *Id.* at 26:15-24.

The second accident occurred July 9, 2016. Wilcox Dep. at 40:17-41:16; Ex. 17 (2016 PTCR). After that accident, Plaintiff spoke to Spokane County Sheriff's Department officers and a WSP Trooper. Wilcox Dep. at 44:3-14; 56:21-57:9, 57:3-58:11, 60:8-61:4. She gave the officers her license and registration and showed proof of insurance. Wilcox Dep. at 44:16-25. An officer asked if the information on the documents was current, and Plaintiff said the registration address was current, but the license

---

[7] Marissa Ibarra, the recipient of these emails, is a Swapp employee. Ex. 11 (Swapp Interrog. Resp.) at No. 1.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 5

address was not. Wilcox Dep. at 45:1-3. The officer wrote "good" next to the address on her DOL-issued registration. Wilcox Dep. at 44:21-45:6; 124:7-9.

Defendants bought PTCRs for both of Plaintiff's accidents. Ex. 10 (Swapp's Requests for Admission Resp.) at Requests No. 2-3. After her 2016 accident, Ms. Wilcox received a letter from Defendants offering their legal services and stating they learned "from Washington public records" that she was "involved in a serious accident on July 9." Ex. 1 (Craig Swapp & Assoc. Letter and Booklet). The letter also enclosed a booklet advertising Defendants' firm. *Id.* Ms. Wilcox considered the way "they got my address" to be "an invasion of my privacy." Wilcox Dep. at 94:19-24.

## ARGUMENT

Class certification is appropriate where the moving party satisfies the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). A court lacks discretion to deny class certification if Rule 23 is satisfied. *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action."). "[W]hether class members could actually prevail on the merits of their claims' is not a proper inquiry in determining" whether the class should be certified. *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014). "[M]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,* 568 U.S. 455, 466

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 6

(2013). Claims alleging violations of the DPPA are suitable for class certification. *E.g., Pichler v. UNITE*, 228 F.R.D. 230 (E.D. Pa. 2005) (certifying class); *Haney v. Recall Ctr.,* 282 F.R.D. 436 (W.D. Ark. 2012) (certifying class).

**I.    The Class is Sufficiently and Properly Defined**

"[A]t the certification stage, it [i]s sufficient that the class [i]s defined by an objective criterion." *Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121, 1124, 1125 n.4 (9th Cir. 2017). In *Briseno*, the Ninth Circuit rejected a requirement that there be an "administratively feasible way to identify class members." beyond the class member's self-identification. *Id.* at 1133. An objective class definition merely "avoid[s] subjective standards (*e.g.* a plaintiff's state of mind) or terms that depend on resolution of the merits (*e.g.*, persons who were discriminated against)." *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 152 (N.D. Cal. 2015). But a class definition based on "self-identified" "objective criteria is acceptable. *E.g.*, *Buchanan v. Tata Consultancy Servs., Ltd.,* No. 15-CV-01696-YGR, 2017 WL 6611653, at *21 (N.D. Cal. Dec. 27, 2017) (finding such a class is permissible after *Briseno*); *Erickson v. Elliot Bay Adjustment Co., Inc.,* C16-0391JLR, 2017 WL 1179435, at *11 (W.D. Wash. Mar. 29, 2017) (same).

Here, the class definition is objective because it is based on the following criteria: Is the person (1) a driver identified on a PTCR that Defendants obtained from the WSP between September 1, 2013 and June 23, 2017? (2) did the personal information originate from DOL record? and (3) Was the person not a client of Defendants or listed on the same PTCR as a client, not employed by Defendants, or the Court and did not provide written consents? These are all objective factors requiring no subjective

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 7

evaluation. In fact, members can be readily identified by reviewing PTCRs obtained by Swapp, and records of the WSP[8] identifying people listed on PTCRs obtained by Defendants, between fixed dates to obtain the names of non-client drivers. Thus, the class is sufficiently and properly defined.

## II.   The Requirements of Rule 23(a) Are Satisfied.

### A.   Joinder of the Class is Impracticable

Rule 23(a) requires that the class is so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a)(1). "In general … a class consisting of forty or more members is presumed to be sufficiently numerous." *Saucedo v. NW Mgmt. & Realty Servs., Inc.*, 290 F.R.D. 671, 676 (E.D. Wash. 2013). Here, Defendants bought nearly 9,000 PTCRs about drivers across Eastern Washington who were not clients between September 1, 2013 and June 23, 2017. Thus, Rule 23(a)(1) is readily satisfied.

### B.   There are Common Questions of Law and Fact

Commonality requires only *one* question of law or fact common to the class. Fed. R. Civ. P. 23(a)(2); *Torres v. Mercer Canyons Inc.,* 835 F.3d 1125, 1133 (9th Cir. 2016) ("To satisfy Rule 23(a)(2) commonality, '[e]ven a single [common] question' will do."). Not "every question in the case, or even a preponderance of questions," need to be "capable of classwide resolution." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). Commonality "means that the class members' claims 'must depend upon a common contention' and that the 'common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is

---

[8] The WSP produced a spreadsheet listing PTCRs sold to Swapp. Gibbs Dep. at 66:13-68:16.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 8

central to the validity of each one of the claims in one stroke.'" *Vaquero v. Ashley Furniture Indus., Inc.,* 824 F.3d 1150, 1153 (9th Cir. 2016) (quoting *Wal-Mart v. Dukes*, 564 U.S. 338, 350 (2011)).

In DPPA cases, questions about whether defendants violated the DPPA and whether plaintiffs are entitled to damages satisfy commonality. *Roberts v. Source for Pub. Data*, No. 2:08-CV-04167-NKL, 2009 WL 3837502, at *3 (W.D. Mo. Nov. 17, 2009) (certifying class in DPPA case). *Haney,* 282 F.R.D. at 440 (same). Evidence that Defendants engaged in "similar conduct" as to the Class, and a "pattern of activity raises common issues of fact" as does "a common purpose." *Pichler,* 228 F.R.D. at 249; *Haney,* 282 F.R.D. at 440 (same). Plaintiff has identified common questions, three of which address liability: (1) whether information on PTCRs was derived from motor vehicle records, (2) whether Defendants' knowingly obtained Class members' Personal Information, and (3) whether it was obtained for a permissible purpose.[9] Compl. ¶ 5.3.

First, the question of whether Personal Information on PTCRs is sourced in motor vehicle records can be answered on a classwide basis. Officers typically create PTCRs either by scanning registrations and drivers licenses with SECTOR, or if the barcode does not scan, by "manually typ[ing] information from a drivers' license into SECTOR…." Ex. 12 (WSP's Interrog. Responses) at p. 17. A driver's Personal Information is entered "exactly how it appears on their driver's license." Ex. 13 (PTCR Manual) at

---

[9] Affirmative answers to these questions satisfy the elements of the DPPA, which imposes liability on defendants where they (1) knowingly obtain, disclose or use (2) personal information (3) from a motor vehicle record (4) unless for a specific purpose allowed under the DPPA. 18 U.S.C. § 2724(a).

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 9

Plaintiff006943. Not only is the information on the front of the license and the barcode identical, but both are considered by the DOL to contain confidential personal information. Weaver Dep. at 87:10-91:3; 100:14-16**.** The same is true for the registration. Weaver Dep. at 55:21-56:11; 58:22-60:15; 87:10-88:20; 116:5-117:20; 170:10-13. Thus, the issue for PTCRs where personal information from a license or registration (whether from the front or back) raise the same issue.

If a new address comes from another source, the officer is trained to check the "new address" box. McGee Dep. at 178:2-12. If a driver lacks a license or has an address different than listed on the license officers have alternative means of populating the Personal Information fields. Ex. 12 (WSP's Interrog. Resp.) at p. 17-18. Officers frequently draw information from DOL databases, or other motor vehicle records. Cozzitorto Dec. ¶¶ 6-6; Ex. 12 (WSP's Interrog. Resp.) at p. 17-18; Morhous Dep. at 66:22-68:6; *see also* Candee Dep. at 100:22-101:4**.** The information may come from a vehicle registration, or from a driver's check, all of which originate from a DOL source. Morhous Dep. at 53:23-54:11; 55:11-56:13; 74:2-7; Ex. 12 (WSP's Interrog. Resp.) at p. 17-18; Weaver Dep. at 99:13-20; 116:5-7. And there are records as to whether the information was scanned from a license or registration or whether a drivers' check was utilized. Weaver Dep. at 101:10-102:12. Candee Dep. at 93:19:94:1; 101:11-102:20.

Second, whether Defendants' acted "knowingly" in buying PTCRs will be the same as to all class members. The purchase of non-client PTCRs was part of systematic practice whereby Defendants bought them in bulk. Gibbs Dep. at 33:9-35:14; 31:15-18; Ex. 11 (Swapp's Interrog. Resp.) at No. 2, 5. Defendants themselves appear to intend to rely on "Craig

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 10

Swapp's understanding" about how "Accident Reports are prepared." Ex. 11 (Swapp Interrog. Resp.) at No. 7.

Finally, Defendants admittedly obtained PTCRs "for purposes of direct-mail marketing" between 2013 and 2017. Ex. 11 (Swapp Interrog. Resp.) at No. 5. Thus, this question can be resolved on a classwide basis, and probably on summary judgment as "an attorney's solicitation of clients is not a permissible purpose covered by the [18 U.S.C. § 2721](b)(4) litigation exception." *Maracich v. Spears,* 570 U.S. 48, 51 (2013).

Accordingly, the commonality requirement is satisfied.

## C.    Plaintiff's Claims Are Typical of those of the Class

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan,* 754 F.3d 657, 685 (9th Cir. 2014). "The Ninth Circuit is clear that when a policy or practice is at issue that affects all class members, typicality exists." *Torres v. Mercer Canyons, Inc.,* No. 1:14-CV-03032-SAB, 2015 WL 1641519, at *5 (E.D. Wash. Apr. 8, 2015) (citing *Parsons*, 754 F.3d at 685 and *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). "Defenses unique to a class representative counsel against

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 11

1  class certification *only where* they 'threaten to become the focus of the
2  litigation.'" *Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir. 2009).

3     Here, Plaintiff's claims are typical of the Class and there are no
4  unique defenses. Plaintiff claims that Defendants violated the DPPA by
5  buying PTCRs containing her Personal Information without her consent and
6  without a permissible purpose. Compl. ¶¶ 1.4, 4.24, 5.4. Indeed, Swapp
7  bought the PTCRs for the expressly *impermissible* purpose of law firm
8  marketing. *See* Ex. 11 (Swapp's Interrog. Resp.) at No. 5 (describing
9  Defendants' practices "for purposes of direct-mail marketing") and Ex. 1
10 (Craig Swapp & Assoc. Letter and Booklet); *see also Maracich,* 570 U.S. at
11 52 (client solicitation not a permissible purpose under 18 U.S.C. §
12 2721(b)(4)). All Class members share this claim.

13    Defendants have asserted 14 affirmative defenses, but none appear
14 to be "unique" to the Plaintiff. ECF No. 41. Accordingly, the typicality
15 requirement is satisfied.

16    **D.    Plaintiff Will Fairly and Adequately Represent the Class**

17    Adequacy under Rule 23(a)(4) involves two issues: "(1) Do the
18 representative plaintiffs and their counsel have any conflicts of interest with
19 other class members, and (2) will the representative plaintiffs and their
20 counsel prosecute the action vigorously on behalf of the class?" *Staton v.*
21 *Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Plaintiff and her counsel
22 meet both requirements.

23    **1.    There Are No Conflicts Among the Class**

24    There is no conflict where the class is "not divided into conflicting
25 discrete categories" and where "each potential plaintiff has the same
26 problem." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1021 (9th Cir. 1998);

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 12

1  *see Orvis v. Spokane Cty.,* 281 F.R.D. 469, 474 (E.D. Wash. 2012)

2  (Peterson, J.) (finding no conflict where plaintiff "and all the members of the

3  proposed class are exclusively interested in protecting their constitutional

4  rights from alleged unlawful loss of their liberty…").

5         Here, there is only one potential category of class members, and

6  Plaintiff has the same problem as each potential class member –

7  Defendants acquired PTCRs containing their Personal Information without

8  their consent or a permissible purpose.

9                  **2.    Plaintiff Will Vigorously Represent the Class**

10        In the Ninth Circuit, "[t]he threshold of knowledge required to qualify

11  a class representative is low; a party must be familiar with the basic

12  elements of her claim, and will be deemed inadequate only if she is

13  'startlingly unfamiliar' with the case." *Moeller v. Taco Bell Corp.,* 220 F.R.D.

14  604, 611 (N.D. Cal. 2004) (citations omitted) *amended in part,* 2012 WL

15  3070863 (N.D. Cal. July 26, 2012). "[D]istrict courts in this circuit have

16  repeatedly stressed the relatively low level of familiarity

17  a representative plaintiff must have to be meet the Rule 23 adequacy

18  requirement." *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 663 (C.D. Cal. 2014)

19  (finding plaintiffs adequate where they "have made themselves available for

20  depositions and demonstrated familiarity with the case.").

21        Here, Ms. Wilcox has been deposed here and in the related matter,

22  *Wilcox v. Batiste*, 17-cv-00122-RMP (E.D. Wash.) and she has

23  demonstrated her familiarity with the case and willingness to prosecute the

24  claims of the Class. *E.g.,* Declaration of Jade Wilcox ¶¶ 7-13; Wilcox Dep.

25  at 52:1-53:8.

26

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 13

### 3.    Plaintiff's Counsel are More Than Adequate.

"The adequacy of counsel is considered under Rule 23(a)(4) and Rule 23(g)." *Allen,* 300 F.R.D. at 664 (citing *Baumann v. Chase Inv. Servs. Corp.,* 747 F.3d 1117, 1122–23 (9th Cir. 2014)). Rule 23(g) factors include "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Here, Plaintiff's counsel has investigated and identified the claims from their inception. Plaintiff's counsel, specifically Thomas Jarrard and the Sweetser Law Firm investigated the related claims in *Batiste* and also obtained a preliminary injunction. *See* ECF No. 1, 14 in *Batiste*.

Both of Plaintiffs' proposed Co-Lead Class Counsel, Thomas Jarrard and Block & Leviton are experienced in complex litigation and class action cases. Block & Leviton and its attorneys have been appointed lead or co-lead counsel in numerous high-profile and complex class-action cases. Barton Decl. ¶ 2. Both Block & Leviton partners on this case, Joseph Barton and Jason Leviton, are AV-rated by Martindale Hubbell and are recognized as Super Lawyers. *Id.* ¶ 2. Mr. Barton has successfully tried class action and other large complex actions. *Id.* ¶ 4-5. And Block & Leviton attorneys have successfully certified and settled numerous class cases. *Id.* Mr. Jarrard has significant experience litigating class action and other complex matters in federal court. Jarrard Decl. ¶ 2. Mr. Jarrard is also AV-rated by Martindale-Hubbell and has been selected a "Rising Star" by Super Lawyers. Jarrard Decl. ¶ 4.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 14

Plaintiff's counsel has demonstrated familiarity with the DPPA by drafting a Complaint that withstood a motion to dismiss. ECF No. 21.

Finally, Plaintiff's counsel have devoted substantial resources to this case already. For example, they have deposed the WSP (which produced four separate witnesses deposed over two days); the Washington State Criminal Justice Training Commission, the Washington Department of Licensing and the Spokane Police Department, collected and reviewed thousands of pages of documents from Defendants and non-parties, and also filed two Motions to Compel. Kirchofer Decl. ¶¶ 2-7, 17. These efforts have required the devotion of substantial resources, and demonstrate the vigor of Plaintiff's counsel. Accordingly, the adequacy requirement is satisfied.

## III.    The Requirements of Rule 23(b)(3) Are Satisfied.

### A.    The Predominance Requirement is Met.

Rule 23(b)(3) requires that "common questions predominate over any questions affecting only individual members." Predominance "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). When the common questions "present a *significant aspect* of the case and . . . can be resolved for all members of the class in a single adjudication," predominance is met. *Hanlon*, 150 F.3d at 1022 (emphasis added). When "[a] common nucleus of facts and potential legal remedies dominates th[e] litigation," common issues predominate. *Id.*; *see Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (finding predominance where claims "arise from a course of conduct that impacted the class"). Predominance

1  "does *not* require a plaintiff seeking class certification to prove that each

2  'elemen[t] of [her] claim [is] susceptible to classwide proof.'" *Amgen*, 568

3  U.S. at 469. The "text of Rule 23(b)(3) itself contemplates that [] individual

4  questions will be present." *Messner v. Northshore U. HealthSystem*, 669

5  F.3d 802, 815 (7th Cir. 2012); *Tyson Foods*, 136 S. Ct. at 1045 (explaining

6  other "important" individual issues "will have to be tried separately").[10] Here,

7  the common issues will also predominate. *Supra* Argmt. II.B.

8      The first question, whether and what Personal Information was

9  sourced in "motor vehicle records," and the third question, whether there

10  was a permissible purpose, are likely questions (given the evidence) that

11  may be resolved on summary judgment at the completion of discovery. If

12  so, these issues may turn on legal issues. A "legal question that is of

13  central importance" supports predominance. *Connor v. Automated*

14  *Accounts, Inc.*, 202 F.R.D. 265, 271 (E.D. Wash. 2001); *see Cabiness v.*

15  *Educ. Fin. Sols., LLC*, 16-CV-01109-JST, 2018 WL 3108991, at *3 (N.D.

16  Cal. June 25, 2018) (finding predominance based on dominant legal

17  issue"); *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590,

18  621 (C.D. Cal. 2015) (finding predominance based on resolving "the

19  _____

20  [10] "[A] party seeking class certification is not required to show that the legal
and factual issues raised by the claims of each class member are

21  identical". *Kamar v. Radio Shack Corp.,* 254 F.R.D. 387, 399 (C.D. Cal.
2008), *aff'd,* 375 F. App'x 734 (9th Cir. 2010). "[T]he existence of certain

22  individualized or deviating facts will not preclude certification if most class
members were subjected to a ... policy in a way that gives rise to

23  consistent liability or lack thereof." *Id.; Sandoval v. Rizzuti Farms, Ltd.*, CV-
07-3076-EFS, 2008 WL 4530525, at *5 (E.D. Wash. Oct. 6, 2008) (finding

24  "individual issues may arise" and "each class members' claims need not
be identical"); *Kurihara v. Best Buy Co., Inc.,* No. C 06-01884 MHP, 2007

25  WL 2501698, *9–10 (N.D. Cal. 2007) (finding predominance even where in
practice there are deviations from the policy));

26  PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 16

overarching legal question at the core of plaintiff's case" -- whether defendants' policy as applied resulted in a violation of the law).

Moreover, here, officers create PTCRs following a standardized procedure in which they scan the barcodes on a motorists' license and registration to populate the relevant Personal Information fields (*e.g.*, name and address) on the PTCR. *Supra* Backgd. I, Argmt. II.B. This procedure populates the PTCR with Personal Information from the DOL-created barcode. *Supra* Backgd.  I. Even where officers manually type information from the DOL-created registration or licenses into SECTOR, it is the same Personal Information also found in the barcode, all of which is considered confidential by the DOL. *Supra* Backgd. I.[11] The same is true in the small minority of situations[12] where officers utilize some alternative means of collecting Personal Information (e.g. obtaining driver's return from a DOL database). *Id.*

There is no evidence that the PTCR for any Class Member was prepared using an address or other Personal Information different than what was on both their license and registration (or in the DOL data). And "Defendants' speculation … is not sufficient to defeat class certification." *Agne v. Papa John's Int'l, Inc.,* 286 F.R.D. 559, 567 (W.D. Wash. 2012).

---

[11] They are still obtaining the Personal Information from a "motor vehicle record," which means "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1).

[12] Such situations are found in fewer than 10 percent of PTCRs, based on the presence of checked "new address" boxes in a review of the first 130 reports received from Defendants. A review of PTCRs in the Bates range *See* Kirchofer Decl. ¶ 17.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 17

Even if Defendants are able to find some such evidence, "[t]hat the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate." *Halliburton Co. v. Erica P. John Fund, Inc.,* 134 S. Ct. 2398, 2412 (2014) (finding predominance met). "[T]he presence of certain 'non-injured' individuals" in a class dose not defeat predominance. *Torres,* 835 F.3d at 1136 (affirming class certification). Likewise, the mere fact that a decision on the merits of a claim "may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 295–97 (1st Cir. 2000) (same).

The second question, whether Defendants obtained Personal Information knowingly will also be based on common proof and a standard practice as the evidence will focus entirely on Defendants' conduct and not individual class members. *Supra* Argmt. II.B.

Accordingly, issues of law and fact common to all class members predominate over issues that may only affect individual members.[13]

### B.    The Superiority Requirement is Met

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Superiority "requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." *Wolin v. Jaguar Land Rover N.A., LLC,* 617 F.3d 1168, 1175–76 (9th Cir. 2010). Among the factors to consider are the following:

---

[13] The existence of statutory liquidated damages means there are no individualized determinations. *Roberts,* 2009 WL 3837502, at *6.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 18

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing of a class action.

Fed. R. Civ. P. 23(b)(3).

The first factor is met "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *Wolin*, 617 F.3d at 1175. Here, the likely recovery per class member is $2500 in statutory liquidated damages, an amount too small to efficiently litigate individually.[14] Second, there is no other DPPA litigation against Defendants. Third, most Class members will be in Eastern Washington because Defendants bought PTCRs for accidents "that occurred in Eastern Washington." Ex. 11 (Swapp's Interrog. Resp.) at No. 5. Swapp also has an office in Spokane. Complaint and Answer, ¶¶ 2.2. Finally, there is a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Briseno*, 844 F.3d at 1128 (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015) and *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (Sotomayor, J.) (listing management tools)). Nothing suggests that there is anything so complex that would make individual actions preferable or that trying the case as a class action would create any additional issues for trial. Thus, a class action is a superior method of resolving the Class' claims.

---

[14] Courts have repeatedly concluded that the mere possibility of statutory damages of a few thousand dollars is insufficient incentive to litigate individually. *E.g.* Erickson, 2017 WL 1179435, at *11 (citing cases).

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 19

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion to certify the Class under Fed. R. Civ. P. 23(a) and (b)(3) should be granted.

Dated: August 7, 2018          Respectfully submitted,

*/s/Thomas G. Jarrard*
Thomas G. Jarrard
The Law Office of Thomas G. Jarrard, PLLC
1020 N. Washington
Spokane, WA 99201
Telephone: (425) 239-7290
Email: tjarrard@att.net

Jason Leviton
Thomas W. Kirchofer
Block & Leviton LLP
155 Federal Street, Suite 400
Boston MA 02110
Telephone: 617-398-5660
Email: jason@blockesq.com
Email: tom@blockesq.com

R. Joseph Barton
Block & Leviton LLP
1735 20th Street, N.W.
Washington D.C. 20009
Telephone: 202-734-7046
Email: jbarton@blockesq.com

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 20

James R. Sweetser
Marcus Sweetser
Sweetser Law Office
1020 N. Washington St.
Spokane WA 99201
Telephone: 509-328-0678
Email: jsweets@sweetserlawoffice.com
Email: marcussweetser@gmail.com

*Attorneys for Plaintiff*

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 21

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2018 I caused to be filed electronically a true copy of the foregoing document using the CM/ECF system which effected service of the same upon all counsel of record.


*/s/ Thomas G. Jarrard*

Thomas G. Jarrard

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION- 22