FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 24, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JADE WILCOX on behalf of herself and all others similarly situation,<br><br>                Plaintiff,<br><br>  v.<br><br>JAMES CRAIG SWAPP, individually; and SWAPP LAW, PLLC, doing business as Craig Swapp and Associates,<br><br>                Defendants. | NO: 2:17-CV-275-RMP<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS |

BEFORE THE COURT is Defendants James Craig Swapp and Swapp Law, PLLC's (collectively, "Defendants") Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 80. Defendants move to dismiss Plaintiff Jade Wilcox's First Amended Class Action Complaint, ECF No. 69. The Court held a hearing in this matter on November 20, 2018. Ms. Wilcox was represented by Robert Barton. Defendants were represented by Ryan McBride. The Court has considered the parties' arguments, briefings, and the record, and is fully informed.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 1

## BACKGROUND

The following are facts alleged in Ms. Wilcox's first amended complaint, ECF No. 69. Following car accidents in Washington, the Washington State Patrol ("WSP") prepares Police Traffic Collision Reports ("PTCRs") using a standardized collision report form. *Id.* at 8. Before this Court issued a preliminary injunction in the *Batiste* case requiring the WSP to institute procedures to redact personal information, the WSP would sell these unredacted records to any third party that would ask and pay for them.[1] *Id.*

Ms. Wilcox claims that the PTCRs are prepared using a software called SECTOR. ECF No. 69 at 10. SECTOR allows officers to scan the bar code on a driver's license or a vehicle registration to auto-populate the PTCR form with a driver's personal information. *Id.* The data are placed on the bar codes by the Washington State Department of Licensing ("DOL") when the DOL creates the licenses and registrations. *Id.* The information scanned from a driver's license's bar code includes a driver's name, address, license number, and date of birth, among other things. *Id.* at 10–11. The information scanned from a motor vehicle registration's bar code includes a driver's name and home address, as well as information about the driver's vehicle. *Id.*

Ms. Wilcox alleges that Defendants purchased more than 10,000 of these

---

[1] The Court has since dissolved that preliminary injunction. *See Wilcox v. Batiste*, No. 2:17-CV-122-RMP, 2018 WL 6729791 (E.D. Wash. Dec. 21, 2018).

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 2

PTCRs from the WSP between 2013 and 2017.  ECF No. 69 at 13.  Defendants would then use the personal information on the PTCRs to send letters and pamphlets to the persons involved in the accidents to solicit clients for Defendants' automobile personal injury practice.  *Id.* at 15.  The letters would contain Defendant Craig Swapp's signature.  *Id.*

Ms. Wilcox claims that she was involved in two separate car accidents on August 1, 2015, and on July 11, 2016.  ECF No. 69 at 17–18.  She alleges that Defendants purchased the PTCRs created as a result of these accidents.  *Id.* at 18.  Ms. Wilcox alleges that Defendants sent her a letter advertising their services on July 14, 2016, using Plaintiff's personal information gleaned from her Collision Reports.  *Id.*  The letter was signed by Defendant Craig Swapp.  *Id.*

## LEGAL STANDARD

A complaint will be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a Rule 12(b)(6) motion to dismiss, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most

favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not required, however, to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**DISCUSSION**

Defendants argue that Ms. Wilcox fails to allege facts that establish a DPPA claim. ECF No. 80. The DPPA "sets forth the three elements giving rise to liability, *i.e.*, that a defendant (1) knowingly obtained, disclosed or used personal information, (2) from a motor vehicle record, (3) for a purpose not permitted." *Howard v. Criminal Info. Servs., Inc.*, 654 F.3d 887, 890–91 (9th Cir. 2011) (quoting *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King and Stevens, P.A.*, 525 F.3d 1107, 1111 (11th Cir. 2008)). The Court examines whether the facts in the complaint, construed in the light most favorable to Ms. Wilcox, satisfy the three elements of a DPPA claim.[2]

---

[2] Ms. Wilcox argued that Defendants' motion to dismiss was procedurally barred as law of the case and violated Federal Rule of Civil Procedure 12(g)(2) because they previously brought a motion to dismiss the original complaint. ECF No. 95 at 10. The Court rejects these arguments and considers Defendants' motion on the merits. *See City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001) (holding that law of the case does not prohibit a district court

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 4

*Knowingly Obtaining, Disclosing, or Using Personal Information*

The first element of a DPPA claim is that the defendant knowingly obtained, disclosed, or used personal information. *Howard*, 654 F.3d at 890–91; 18 U.S.C. § 2724(a). The parties dispute whether the complaint sufficiently alleges that Defendant Craig Swapp knowingly used personal information. ECF No. 80 at 19; ECF No. 95 at 21.[3]

The DPPA defines "personal information" as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3). The first amended complaint sufficiently alleges that Defendants received personal information from the PTCRs purchased from the WSP, including drivers' names and addresses. *See* ECF No. 69 at 18 (alleging that Defendants sent Ms. Wilcox a solicitation letter using her name and address). However, the statute does not define what it means to "use" personal information. *See* 18 U.S.C. § 2725 (definitions).

---

from reconsidering its prior holdings); *United States v. Somnia, Inc.*, 339 F. Supp. 3d 947 (E.D. Cal. 2018) (holding that Rule 12(g)(2) does not prevent raising new arguments on a motion to dismiss an amended complaint).

[3] Defendants do not dispute that the first amended complaint sufficiently alleges that Defendant Swapp Law, PLLC knowingly obtained, disclosed, or used personal information. *See* ECF No. 80.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 5

When a term is undefined in a statute, the term is given its ordinary meaning, often with assistance from a dictionary definition. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). "Use," as a verb, is defined by Merriam-Webster as "to put into action or service; avail oneself of; employ," or "to carry out a purpose or action by means of; utilize." *Use*, Merriam-Webster's Dictionary Online (last visited Jan. 10, 2019). Black's Law Dictionary gives the word "use" a similar definition: "[t]o employ for the accomplishment of a purpose; to avail oneself of." *Use*, Black's Law Dictionary (10th ed. 2014). The Supreme Court and the Ninth Circuit have found the same ordinary meaning for "use" when interpreting the word in other statutes. *See Smith v. United States*, 508 U.S. 223, 228–29 (1993); *United States v. Laursen*, 847 F.3d 1026, 1032 (9th Cir. 2017).

Other courts have determined that an actor cannot be vicariously liable for a DPPA violation; there must be some sort of direct conduct by an individual that can be attributed to "using" personal information within the meaning of the statute. *See, e.g.*, *Bass v. Anoka Cty.*, 998 F. Supp. 2d 813, 820 (D. Minn. 2014) ("[T]he DPPA does not impose liability on one who indirectly facilitates *another's* access of a motor vehicle record" (emphasis in original).). Ms. Wilcox's first amended complaint must allege that Mr. Swapp personally engaged in conduct that constituted "use" of personal information to sufficiently state a DPPA claim. *Id.*

Ms. Wilcox alleges that the solicitation letters Defendants would send out contained Mr. Swapp's signature. ECF No. 69 at 15. She claims the solicitation

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 6

letter that she received contained Mr. Swapp's signature as well. *Id.* at 18. Construing the first amended complaint in the light most favorable to Ms. Wilcox, Mr. Swapp's personal signature on the letter to Ms. Wilcox sufficiently supports Ms. Wilcox's plausible allegation that Mr. Swapp put the personal information from the PTCRs into action or service, carried out a purpose or action with Ms. Wilcox's personal information, and employed her personal information for the accomplishment of a purpose by placing his signature on the solicitation letters. *See Use*, Merriam-Webster's Dictionary Online (last visited Jan. 10, 2019); *Use*, Black's Law Dictionary (10th ed. 2014). Mr. Swapp's signature gave the solicitation letters legitimacy in Defendants' offering of legal services. Accordingly, the complaint adequately alleges that Mr. Swapp "used" personal information within the meaning of the DPPA.

In their reply brief and at oral argument, Defendants argue that the complaint fails to allege that Mr. Swapp personally penned his signature on the solicitation letters, and that the lack of that allegation shows that Mr. Swapp did not personally "use" the personal information within the meaning of the DPPA. ECF No. 96 at 13. Essentially, Defendants argue that because there is no allegation that Mr. Swapp signed the letters himself, rather than someone else putting his signature on the letter for him, Mr. Swapp cannot be liable under the DPPA. *Id.*

The idea that Mr. Swapp cannot be liable for his own signature on a document because someone else placed it there is flawed. An attorney's signature

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 7

represents the attorney's endorsement of the content within the document and the purpose for which the document was used. *See* Fed. R. Civ. P 11(b) (stating that by signing a document and presenting it to the Court, the attorney makes certain promises and assurances); Wash. Rule of Professional Conduct § 1.0(n) (defining "signed writing" as a writing that is "executed or adopted by a person with the intent to sign the writing"). An attorney would not be absolved from Rule 11 misconduct by alleging he or she did not personally sign a document submitted to the Court. The Court finds that Mr. Swapp, an attorney, should understand the significance of having his personal signature attached to the letter to Ms. Wilcox and others. Therefore, Mr. Swapp's argument is not persuasive.

The Court finds that the first amended complaint sufficiently alleges that Mr. Swapp used personal information within the meaning of the DPPA.

***From a Motor Vehicle Record***

The second element of a DPPA claim is that the personal information used, obtained, or disclosed was from a "motor vehicle record." *Howard*, 654 F.3d at 890–91; 18 U.S.C. § 2724(a). The parties dispute whether a driver's license or motor vehicle registration is a "motor vehicle record" for the purposes of DPPA liability. ECF No. 80 at 12; ECF No. 95 at 15. Additionally, the parties dispute whether DPPA liability attaches when the driver gives his or her driver's license and registration to a police officer to create a PTCR. ECF No. 80 at 12; ECF No. 95 at 18.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 8

The DPPA defines a "motor vehicle record" as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1). Interpreting this definition, one circuit court has held that "pertains" in this statute means "to belong as a part, member, accessory, or product." *Lake v. Neal*, 585 F.3d 1059, 1061 (7th Cir. 2009). With this definition, some district courts have concluded that driver's licenses and motor vehicle registrations are not motor vehicle records because objects cannot "pertain" to themselves. *See, e.g.*, *Whitaker v. Appriss, Inc.*, 266 F. Supp. 3d 1103, 1108 (N.D. Ind. 2017) ("A driver's license isn't a part, member, accessory, or product of a motor vehicle operator's permit; it *is* a motor vehicle operator's permit" (emphasis in original).).

Other district courts have come to the opposite conclusion: that the personal information in a driver's license is protected by the DPPA. *Pavone v. Law Offices of Anthony Mancini, Ltd.*, 205 F. Supp. 3d 961, 966 (N.D. Ill. 2016). The *Pavone* court supported its interpretation of the statute with two points. First, the personal information in a driver's license did come "from a motor vehicle record" because the driver's license was created with information from motor vehicle records created and held by the state DOL. *Id.* Second, the information on the driver's license, including the driver's license number, address, and name, is a "part" of the driver's license itself, and therefore "pertains to" the motor vehicle operator's permit. *Id.* Therefore, because the information on driver's licenses originated from a motor

vehicle record kept by the state DOL, and the information on a driver's license pertains to a motor vehicle operator's permit, a driver's license qualifies as a "motor vehicle record" under the statute. *Id.*

When presented with these potential readings of the statute at oral argument, Defendants argued that it was not the intent of Congress to potentially criminalize certain uses of a driver's license by businesses that hold driver's licenses as collateral for renting or using a business's services, such as reserving or renting a locker at a gym. According to Defendants, the personal information must come directly from a motor vehicle record kept by the state's DOL to receive DPPA protection.

In response, Ms. Wilcox argued that personal information is protected by the DPPA even if it is found in a location other than a state DOL record if that information is originally sourced to the state licensing department. She argued that it makes no difference where the personal information is found; if its original source is a motor vehicle record from the state licensing department, Ms. Wilcox argues that the DPPA protects that information.

When interpreting a statute, the Court begins with the statute's text. *United States v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015). "We interpret statutory terms in accordance with their ordinary meaning, unless the statute clearly expresses an intention to the contrary." *Id.* Courts should interpret statutes as a whole, giving meaning to each word and avoiding interpretations that render other words or

provisions of the statute inconsistent, meaningless, or superfluous. *Boise Cascade Corp. v. U.S. Envtl. Prot. Agency*, 942 F.2d 1427, 1432 (9th Cir. 1991). "Particular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme." *United States v. Lewis*, 67 F.3d 225, 228–29 (9th Cir. 1995). The Court will not read additional terms, phrases, or words into a statute unless it must do so to avoid absurd results. *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625–26 (1978) ("There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted.").

The Court turns to the plain text of the statute. Starting with the definition of a motor vehicle record, Ms. Wilcox has provided several different interpretations that would satisfy the "pertains" definition from *Lake* while also applying to Defendants' conduct in this case. First, the information on the driver's license or motor vehicle registration itself is a "part of" the motor vehicle operator's permit or registration, showing that the information may "pertain" to the motor vehicle's operator permit or registration. Second, the first amended complaint alleges that PTCRs are created with the SECTOR system, which requires police officers to scan the bar code on the back of a driver's license or registration card. ECF No. 69 at 10. A bar code is at least a part of, if not also a member, accessory, or product of, a motor vehicle operator's permit or registration. *See Lake*, 585 F.3d at 1061.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 11

The plain language of the statute is also devoid of the requirement that the personal information come directly from a state's licensing department, as Defendants argue. The statute only says that the personal information comes "from a motor vehicle record." 18 U.S.C. § 2724(a). The statute does not say that the personal information must be copied directly from a motor vehicle record, or that the information loses its protected status if it is first put on another object, like a driver's license; rather, the statute states that the personal information is protected if it comes "from a motor vehicle record." *Id.*

The Court will not read a direct-source requirement into the statute as Defendants ask the Court to do here. *Mobil Oil Corp.*, 436 U.S. at 625–26; ECF No. 80 at 13. Therefore, the Court concludes that the DPPA protects the information on driver's licenses and motor vehicle registrations, because the information on those items come "from a motor vehicle record" at the state DOL. The Court finds that Ms. Wilcox has sufficiently alleged that the personal information received by Defendants on PTCRs came from a motor vehicle record.

For the same reasons, the Court also rejects Defendants' argument that Ms. Wilcox cannot allege DPPA violations because she provided her driver's license and registration to the police officer, who used them to create the PTCRs. Defendants cite to several cases in their motion that have all held that the state's licensing department must be the direct source of the information for DPPA liability to attach. ECF No. 80 at 17. But, as stated above, there is no requirement

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 12

in the text of the statute that the state licensing department be the direct source of the personal information. *See Whitaker v. Appriss, Inc.*, No. 3:13-CV-826-RLM-CAN, 2014 WL 4536559, at *4 (N.D. Ind. Sept. 11, 2014) ("If the original source of the other government agency's information is the state department of motor vehicles, the DPPA protects the information throughout its travels.").

The cases cited by Defendants do not endorse a voluntariness requirement, i.e., that the DPPA only protects information when it is involuntarily given to other people, rather than voluntarily given. ECF No. 80 at 17. Because the Court finds that the complaint sufficiently alleges the information on the PTCRs originated from the Washington State DOL, and finds that such information is protected by the DPPA, the distinction between voluntary and involuntary transfers of personal information is irrelevant to the Court's decision.[4] For this reason, the Court will

---

[4] Defendants argue that a "parade of horribles" might result from this interpretation of the DPPA that would result in cashiers at convenience stores "violating" the DPPA by checking a person's driver's license for that person's birthday when the person tries to buy tobacco. ECF No. 80 at 15–16. However, Defendants' hypothetical situations differ from this case. This case involves a third party allegedly obtaining and using personal information by affirmatively purchasing PTCRs and using that information for an improper purpose. *See* ECF No. 69. In Defendants' proposed scenario, a customer offers up his or her identification to effectuate the customer's goal; i.e., the purchase of tobacco. That situation is far different from a driver giving a police officer his or her license and registration, as mandated by state law, and then a third party obtaining and using the information from the license and registration down the line. One situation involves a person willingly giving identification to effectuate the person's desired purpose, while the

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 13

not rule on this issue, and instead finds that Ms. Wilcox's complaint against Defendants sufficiently alleges that the information obtained and used by Defendants was "from a motor vehicle record."

*For a Purpose Not Permitted*

The third element of a DPPA claim is that the personal information from a motor vehicle record was obtained, disclosed, or used for a purpose not permitted under the statute. *Howard*, 654 F.3d at 890–91; 18 U.S.C. § 2724(a). The parties do not dispute that using DPPA-protected information for the solicitation of legal services is a purpose not permitted by the DPPA. *See Maracich v. Spears*, 570 U.S. 48, 78 (2013).

Therefore, the Court finds that Ms. Wilcox's complaint sufficiently alleges that Defendants obtained and used DPPA-protected personal information for a purpose not permitted.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, **ECF No. 80**, is **DENIED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** January 24, 2019.

                    *s/ Rosanna Malouf Peterson*
                    ROSANNA MALOUF PETERSON
                    United States District Judge

---

other involves a third party taking advantage of a person doing what state law mandates in a certain situation.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 14