FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 25, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JADE WILCOX on behalf of herself and all others similarly situation,<br><br>                   Plaintiff,<br><br>    v.<br><br>JAMES CRAIG SWAPP, individually; and SWAPP LAW, PLLC, doing business as Craig Swapp and Associates,<br><br>                 Defendants. | NO: 2:17-CV-275-RMP<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION |

BEFORE THE COURT is Plaintiff Jade Wilcox's Motion for Class

Certification, ECF No. 61. Ms. Wilcox seeks to certify a plaintiff class of drivers

whose personal information was obtained and used by Defendants James Craig

Swapp and Swapp Law PLLC (collectively, "Defendants") through their practice

of purchasing Police Traffic Collision Reports ("PTCRs") created with motor

vehicle records between September of 2013 and June of 2017. *Id.* A hearing was

held on this motion on December 13, 2018. Ms. Wilcox was represented by

ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION ~ 1

Robert Joseph Barton, Thomas Jarrard, and Marcus Sweetser. Defendants were represented by Barbara Duffy and Ryan McBride. The Court has considered the parties' arguments, briefing, and the record, and is fully informed.

## BACKGROUND

### *Factual Allegations*

The following are facts alleged in Ms. Wilcox's first amended complaint, ECF No. 69. Following car accidents in Washington, the Washington State Patrol ("WSP") prepares PTCRs using a standardized collision report form. *Id.* at 8. Before this Court issued a preliminary injunction in the *Batiste* case requiring the WSP to institute procedures to redact personal information, the WSP would sell these unredacted records to any third party who would ask and pay for them.[1] *Id.*

Ms. Wilcox claims that the PTCRs are prepared using a software called SECTOR. ECF No. 69 at 10. SECTOR allows officers to scan the bar code on a driver's license or a vehicle registration to auto-populate the PTCR form with a driver's personal information. *Id.* The data are placed on the bar codes by the Washington State Department of Licensing ("DOL") when the DOL creates the licenses and registrations. *Id.* The information scanned from a driver's license's bar code includes a driver's name, address, license number, and date of birth,

---

[1] The Court has since dissolved that preliminary injunction. *See Wilcox v. Batiste*, No. 2:17-CV-122-RMP, 2018 WL 6729791 (E.D. Wash. Dec. 21, 2018).

ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION ~ 2

among other things. *Id.* at 10–11. The information scanned from a motor vehicle registration's bar code includes a driver's name and home address, as well as information about the driver's vehicle. *Id.*

Ms. Wilcox alleges that Defendants purchased more than 10,000 of these PTCRs from the WSP between 2013 and 2017. ECF No. 69 at 13. Defendants would then use the personal information on the PTCRs to send letters and pamphlets to the persons involved in the accidents to solicit clients for Defendants' automobile personal injury practice. *Id.* at 15. The letters would contain Defendant Craig Swapp's signature. *Id.*

Ms. Wilcox claims that she was involved in two separate car accidents on August 1, 2015, and on July 11, 2016. ECF No. 69 at 17–18. She alleges that Defendants purchased the PTCRs created as a result of these accidents. *Id.* at 18. Ms. Wilcox alleges that Defendants sent her a letter advertising their services on July 14, 2016, using Plaintiff's personal information gleaned from her Collision Reports. *Id.* The letter was signed by Defendant Craig Swapp. *Id.*

***Class Claims***

Based on Defendants' conduct, Ms. Wilcox alleges that Defendants violated the DPPA each time they obtained and used class members' personal information to solicit clients for Defendants' automobile injury practice. ECF No. 69. The DPPA "sets forth the three elements giving rise to liability, *i.e.*, that a defendant (1) knowingly obtained, disclosed or used personal information, (2) from a motor

vehicle record, (3) for a purpose not permitted." *Howard v. Criminal Info. Servs., Inc.*, 654 F.3d 887, 890–91 (9th Cir. 2011) (quoting *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King and Stevens, P.A.*, 525 F.3d 1107, 1111 (11th Cir. 2008)).

***Proposed Class***

Ms. Wilcox submits the following proposed class definition to be certified by the Court:

> All drivers identified in Police Traffic Collision Reports whose Personal Information, as defined by the DPPA, was derived from a Department of Licensing record (e.g. license, registration or database) and the Report was obtained by the Swapp Law Firm (d/b/a Craig Swapp & Associates) or Mr. Swapp from the Washington State Patrol between September 1, 2013 and June 23, 2017.

ECF No. 61 at 10. The proposed class would exclude Defendants' current and former clients; individuals identified on the same PTCRs as Defendants' clients; individuals who provided Defendants written consent to obtain and use their personal information; employees of and attorneys for Defendants and their immediate families; and the presiding judge and anyone working in the presiding judge's chambers and their families. *Id.*

## LEGAL STANDARD

To be certified, a proposed class "must meet the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th

Cir. 2013).  "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied . . . .'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  The putative class also must comply with Rule 23(b), which defines three types of classes.  *Id.*

Although class certification often requires some consideration of the underlying claims, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.  Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

## DISCUSSION

### *Rule 23(a) Requirements*

#### *Numerosity*

Plaintiffs first must establish that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  This condition "requires examination of the specific facts of each case and imposes no absolute limitations."  *Gen. Tel. Co. of the Nw. v. E.E.O.C.*, 446 U.S. 318, 330 (1980).

Defendants do not dispute numerosity.  *See* ECF No. 85.  The Court finds that Ms. Wilcox has proven the numerosity element of Rule 23(a).

*Commonality*

The second prerequisite to certification is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Ms. Wilcox argues that three questions are common to the class. ECF No. 61 at 18. Defendants argue that the questions are not so common as to be answered the same across the entire class. ECF No. 85 at 18.

A competently-crafted class complaint always raises common questions, so "commonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'" *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (quoting *Wal-Mart*, 564 U.S. at 350). The plaintiff must demonstrate that the class members have suffered the same injury in the same way. *Wal-Mart*, 564 U.S. at 349–50. "This does not, however, mean that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single *significant* question of law or fact.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Mazza*, 666 F.3d at 589) (emphasis in original).

Ms. Wilcox presents three potential common questions in her motion for class certification: (1) whether information on the PTCRs was derived from motor vehicle records; (2) whether Defendants knowingly obtained the class members' personal information; and (3) whether the information was obtained for a

permissible purpose under the DPPA. ECF No. 61 at 18. In response, Defendants argue that these questions might be common to the class, but that they cannot be answered in a single stroke. ECF No. 85 at 19.

Defendants argued in their motion to dismiss that the answer to the first question would be dispositive of the class action complaint, which supports the conclusion that the first question is common to the class. ECF No. 108. The second question is equally common because Ms. Wilcox alleges, and Defendants do not dispute, that Defendants purchased all PTCRs in the same way. ECF No. 61-7 at 15–16. Last, because the PTCRs were all purchased to solicit clientele for Defendants, the third question is common to the entire class as well. For these reasons, the Court finds that Ms. Wilcox has presented questions common to the entire class and has satisfied the commonality requirement of Rule 23(a).

***Typicality***

The next prerequisite for certifying a putative class is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Ms. Wilcox argues that her claim against Defendants is typical of the class members' claims against Defendants because her injuries arose from the same course of conduct that created the class members' injuries: Defendants' purchasing of PTCRs that contained drivers' personal information. ECF No. 61 at 20. Defendants argue that Ms. Wilcox's PTCRs were created differently from the typical class member's PTCR, and that Ms. Wilcox's

different versions of the facts in her case makes her claims atypical of the class. ECF No. 85 at 20.

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (internal citation and quotation marks omitted). "We do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (internal citations and quotation marks omitted). Defenses unique to the named plaintiff that threaten to become the focus of the litigation would defeat typicality. *Hanon*, 976 F.2d at 508.

Ms. Wilcox alleges that the WSP created PTCRs from her two car accidents and that Defendants knowingly obtained and used those PTCRs for an improper purpose. *See* ECF No. 69. Under Ms. Wilcox's proposed class definition, the class members were all injured the same way: Defendants purchased and used class members' PTCRs with the members' personal information for the purpose of soliciting clients. ECF No. 61 at 10 (proposed class definition); ECF No. 69 (first amended complaint). While Defendants have not yet answered Ms. Wilcox's first

amended complaint, Defendants' affirmative defenses to Ms. Wilcox's original complaint are not unique to Ms. Wilcox.  ECF No. 41 at 10 (Defendants' Second Amended Answer to Complaint).  Thus, at the very least, Ms. Wilcox's injury and the class members' injuries result from the same alleged injurious course of conduct by Defendants: the purchase of personal information for purposes of soliciting clients.  *See Parsons*, 754 F.3d at 685.

Defendants make two arguments against typicality.  ECF No. 85 at 20.  First, they argue that the variation in the way PTCRs were created shows a lack of typicality among the class members' claims.  *Id.*  Second, they argue that Ms. Wilcox changed her story throughout this litigation, making her an unreliable plaintiff and thus atypical to the class.  *Id.* at 20–21.

Defendants' first argument against typicality is that there is too much variation among the creation of each class member's PTCR.  ECF No. 85 at 20.  In support of their argument, Defendants cite two failed attempts to certify DPPA classes in other states, *Pavone* and *Truesdell*.  *Id.* at 20–21.  In *Pavone*, the district court declined to certify a DPPA class because the presence of a driver's license number on a crash report did not prove that the crash report was created with a driver's license.  *Pavone v. Meyerkord & Meyerkord, LLC*, 321 F.R.D. 314, 321–

22 (N.D. Ill. 2017).[2]  In *Truesdell*, the district court declined to certify a DPPA class because each class member would have to prove how his or her crash report was created before holding the defendant liable for a DPPA violation.  *Truesdell v. Thomas*, No. 5:13-cv-522-Oc-10PRL, 2015 WL 12681655, *9 (N.D. Fla. Feb. 13, 2015).

The proposed class definition in this case, however, limits the class to only those drivers whose PTCRs were created in eastern Washington with motor vehicle records.  ECF No. 61 at 10.  This limitation distinguishes Ms. Wilcox's proposed class definition from the proposed classes in *Pavone* and *Truesdell*.  *Pavone*, 321 F.R.D. at 317–18; *Truesdell*, 2015 WL 12681655, at *4.  Because of this limitation in the proposed class definition, Ms. Wilcox's class does not suffer from the same typicality deficiencies that the proposed classes in *Pavone* and *Truesdell* presented.  Further, minor variation in how each driver's PTCR was made in eastern Washington, whether with SECTOR or manual entry by reading from a driver's license, does not defeat typicality.  *See Hanon*, 976 F.2d at 508.

Defendants' second argument against typicality is that Ms. Wilcox lacks credibility as a named plaintiff.  If a named plaintiff in a putative class action lacks credibility, the proposed class may not have typicality.  *Fosmire v. Progressive*

---

[2] The Court notes that this line of argument from *Pavone* arose under a predominance analysis, rather than a typicality analysis, but considers the argument nonetheless.

*Max Ins. Co.*, 277 F.R.D. 625, 633 (W.D. Wash. 2011). Lack of credibility is considered a unique defense that could potentially preoccupy the class's claims at trial. *Id.* However, "credibility issues will defeat typicality only where those credibility problems are directly relevant to the issues in the case." *In re Myford Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2016 WL 7734558, *11 (N.D. Cal. Sept. 14, 2016). A named plaintiff's credibility issues only affect typicality when those issues are "so sharp as to jeopardize the interests of absent class members." *Harris v. Vector Marketing Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010). Defeating typicality with credibility issues is an extremely difficult standard to satisfy and is usually limited to "flagrant cases where putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case." *Peterson v. Ala. Commc'ns Sys. Grp., Inc.*, No. 3:12-CV-00090-TMB, 2018 WL 4100665, at *11 (D. Ala. Aug. 28, 2018) (internal quotations omitted).

Defendants claim that Ms. Wilcox's story has changed over the course of the litigation. In an answer to Defendants' interrogatories, Ms. Wilcox stated that she only provided her name and phone number to the police officers, but otherwise allowed them to use the personal information on her license and registration to create the PTCR. ECF No. 85 at 20; ECF No. 86-10 at 4. However, Defendants claim that the address on Ms. Wilcox's license is different from the address on her

PTCRs.  ECF No. 85 at 20–21; ECF No. 86-11.  Further, they claim that Ms. Wilcox eventually admitted to giving the police officer a handwritten statement with personal information at the scene of her second car accident.  ECF No. 85 at 21; ECF No. 62-3 at 8–10.  Defendants claim that these constant changes in Ms. Wilcox's story make her an untrustworthy witness, and thus atypical to the class's claims.  ECF No. 85 at 21.

In response, Ms. Wilcox argues this slight change in her story came from a memory lapse at the time she answered the interrogatories rather than willful deceit.  ECF No. 100 at 15.  She claims that the memory lapse will not preoccupy the claims at trial because they are irrelevant to the ultimate claim that Defendants violated the DPPA by purchasing the PTCRs created with her personal information.  *Id.*  Further, she states that she explained her lapse in memory at her deposition and is not lying to Defendants about what happened at each accident.  *Id.*

This type of memory lapse does not expose Ms. Wilcox to a unique defense of credibility that might defeat typicality.  Defendants portray Ms. Wilcox as someone who is constantly changing her story, when Ms. Wilcox has been supplementing the facts as her memory of the events in question becomes clearer.  This is a far cry from the named plaintiff who is unfamiliar with the suit and lacks

so much credibility that it would harm the unnamed class members' cases.  *See Peterson*, 2018 WL 4100665, at *11.

The Court finds that Ms. Wilcox has satisfied the typicality requirement of Rule 23(a).

### Adequacy of Representation

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Court considers two issues when analyzing adequacy of representation: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Defendants did not contest adequacy of representation, either as to Ms. Wilcox or class counsel.  *See* ECF No. 85.  Therefore, the Court finds that Ms. Wilcox has proven typicality.

### Rule 23(b) Requirements

After satisfying the four Rule 23(a) factors, the party moving for class certification must meet the requirements for one of the three class definitions in Rule 23(b).  Fed. R. Civ. P. 23(b).  Ms. Wilcox argues that her class satisfies the requirements of a damages class under Rule 23(b)(3).  ECF No. 61 at 24.  To certify a class under Rule 23(b)(3), the court must find "that the questions of law or

ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION ~ 13

fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### *Predominance*

Ms. Wilcox argues that issues common to the class members predominate individual issues. ECF No. 61 at 24. Defendants argue that individual issues predominate and that the class definition is not clear and definite. ECF No. 85 at 15.

### *Common Questions Predominate*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). This inquiry overlaps with the commonality requirement in Rule 23(a)(2), although the predominance requirement is much more demanding. *Abdullah*, 731 F.3d at 957, 963. Predominance is met by showing that the common questions can be proven by evidence common to the class. *Amgen*, 568 U.S. at 467. "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubinstein, Newberg on Class Actions § 4:49 (5th ed. 2012)). Common questions predominate even if some lingering issues require

individual resolution.  *Id.* (citing C. Wright, A. Miller, & M. Kane, Federal

Practice & Procedure § 1778 (3d ed. 2005)); *see also Torres v. Mercer Canyons,*

*Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016) ("[E]ven a well-defined class may

inevitably contain some individuals who have suffered no harm as a result of a

defendant's unlawful conduct.").

Ms. Wilcox argues that the three questions common to the class predominate

over any individual issues: whether information on PTCRs was derived from motor

vehicle records; whether Defendants knowingly obtained the class members'

personal information; and whether the information was obtained for a permissible

purpose.  ECF No. 61 at 25.  These three questions are central to the ultimate

question as to whether Defendants are liable for DPPA violations.  *See* 18 U.S.C. §

2724(a).  The questions can also be proven by evidence common to the class, as

Ms. Wilcox alleges that Defendants obtained and used the class members' personal

information by the same method and for the same reasons.  ECF No. 69.

Defendants argue that three individual issues prevent common questions

from predominating this current litigation.  ECF No 85 at 24.  First, they argue that

the sources of the information on the PTCRs are variable and unknown.  *Id.*

Second, they argue that Defendants' knowledge is an individualized question.  *Id.*

at 30.  Third, they argue that damages are an individualized question as well.  *Id.* at

31.

First, Defendants argue that the sources of information used to create the PTCRs are variable and unknown. ECF No. 85 at 24. However, this argument is more relevant to issues in identifying the class members rather than whether there is predominance of common questions of fact or liability among the class members. Questions of predominance are limited to those among class members, and questions that relate to those outside of the class have no bearing on findings of predominance. *See* Fed. R. Civ. P. 23(b)(3) ("the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members . . . ."). Further, Plaintiffs argue that the class definition excludes those drivers whose PTCRs were not made by motor vehicle records, so there will be no individual questions about the information used to create the PTCRs. ECF No. 61 at 10.

Second, Defendants argue that Defendants' knowledge is an individualized question because DPPA plaintiffs need to prove that Defendants obtained, disclosed, or used personal information that they knew came from a motor vehicle record. ECF No. 85 at 30. But Defendants' interpretation of the DPPA is incorrect.[3] When tasked with interpreting a statute, the district court gives words their plain and

---

[3] The Court finds it necessary to consider the merits of a DPPA claim to determine the validity of Defendants' second argument against predominance. *See Amgen*, 568 U.S. at 466 ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

ordinary meanings. *Perrin v. United States*, 444 U.S. 37, 43 (1979). The meaning

of a statute "will typically heed the commands of its punctuation," but an analysis

based on punctuation alone is usually incomplete. *U.S. Nat'l Bank of Or. v. Indep.*

*Ins. Agents of Am., Inc.*, 508 U.S. 439, 454–55 (1993). Typically, adverbs in statutes

modify verbs. *See United States v. Chi Tong Kuok*, 671 F.3d 931, 945 (9th Cir.

2012).

Looking at the plain text of section 2724(a), a person is liable for a DPPA

violation if that person "knowingly obtains, discloses, or uses personal information,

from a motor vehicle record, for a purpose not permitted." 18 U.S.C. § 2724(a).

Because the rest of the statute is offset by commas, the "knowingly" requirement in

section 2724(a) only applies to the portion before the commas, which is the first

element of the statute. *See U.S. Nat'l Bank of Or.*, 508 U.S. at 454–55. Further,

beyond reasons related to punctuation, the first element of a DPPA claim contains

the action verbs required to commit a DPPA violation, and with the term

"knowingly" being an adverb, it follows that "knowingly" only applies to the

requisite verbs. *See Chi Thon Kuok*, 671 F.3d at 945.

Using these tools of statutory construction, several courts interpreting section

2724(a) have found that the "knowingly" scienter only applies to the first element of

a DPPA claim because of the commas that offset the rest of the statute. *See Wiles v.*

*Worldwide Info., Inc.*, 809 F. Supp. 2d 1059, 1081 (W.D. Mo. 2011) ("The only

reason to use commas to isolate the clause 'from a motor vehicle record' is to

ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION ~ 17

confine the adverb 'knowingly' to modifying the act of obtainment, disclosure, or use."); *Rios v. Direct Mail Express*, 435 F. Supp. 2d 1199, 1205 (S.D. Fla. 2006) ("Thus, under the express language of the DPPA the term 'knowingly' only modifies the phrase 'obtains, discloses, or uses personal information.'"). When courts identify the elements of a DPPA claim, the "knowingly" requirement is only applied to the first element. *See, e.g.*, *Howard*, 654 F.3d at 890–91 (". . . that a defendant (1) knowingly obtained, disclosed, or used personal information, (2) from a motor vehicle record, (3) for a purpose not permitted."). Because of the commas that offset the "knowingly" requirement from the other two elements of a DPPA claim, "knowingly" only defines the first element, which is that the person "obtains, discloses or uses personal information." 18 U.S.C. § 2724(a).

With this interpretation of section 2724(a) in mind, the Court turns to Defendants' argument that knowledge is an individualized question. According to the complaint, Defendants acquired the class members' personal information the same way: purchasing PTCRs from the WSP. ECF No. 69 at 13. Additionally, Defendants used the personal information the same way: soliciting individuals for Defendants' car accident injury law practice. *Id.* at 15. Ms. Wilcox does not need to prove that Defendants knew that the PTCRs were created with motor vehicle records. Therefore, knowledge is not an individualized question.

Third, Defendants argue that damages in this case are an individualized question. ECF No. 85 at 31. But the potential for individual damages calculations,

alone, cannot defeat class certification. *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010). Nonetheless, Defendants argue that damages cannot be "feasibly and efficiently calculated," which is something a class action plaintiff must show before the predominance requirement is met. *See Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 244 (N.D. Cal. 2014). To any extent Ms. Wilcox is required to prove that damages are feasibly and efficiently calculated, she already has conceded that the class only seeks the statutory minimum for damages, $2500 per member. ECF No. 100 at 21–22; 18 U.S.C. § 2724(b)(1). Therefore, any individual questions of damages do not defeat Ms. Wilcox's showing that common questions of law and fact predominate over individual questions.

### *Clear and Definite Class Definition*

Ms. Wilcox argues the class is clear and definite because the class members are identified using objective criteria. ECF No. 61 at 16. Defendants argue that the class is not ascertainable because the class members cannot be readily identified. ECF No. 85 at 15.

Defendants refer to the requirement that a class definition be clear and definite as ascertainability. *See* ECF No. 85 at 15 ("[C]ourts require plaintiffs to define the class so that members are 'ascertainable[.]'"). Some district courts in the Ninth Circuit have held that a class should be "ascertainable" before class certification is granted. *See, e.g.*, *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) ("In order for a proposed class to satisfy the

ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION ~ 19

ascertainability requirement . . .").  However, the Ninth Circuit has never adopted

an "ascertainability" requirement that other circuits have adopted.  *See Briseno v.*

*ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017) ("ConAgra cites no

other precedent to support the notion that our court has adopted an

'ascertainability' requirement.  This is not surprising because we have not.").

Instead, the Ninth Circuit has held that a class must be "'sufficiently

cohesive to warrant adjudication by representation'" as a matter to be considered

under the question of Rule 23(b)(3) predominance.  *Torres*, 835 F.3d at 1135

(quoting *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir.

2009)).  Accordingly, the class must be defined with objective criteria.  *Xavier*, 787

F. Supp. 2d at 1089.  Defining a class with subjective criteria, such as class

members' feelings or beliefs, would only result in an unmanageable class.  *Id.*

However, this analysis does not require the moving party to demonstrate an

administratively feasible way to identify class members.  *Briseno*, 844 F.3d at

1133.

Ms. Wilcox argues that the class definition is clear and definite because it is

based on objective criteria.  ECF No. 61 at 16.  She identifies the criteria in three

parts: "Is the person (1) a driver identified on a PTCR that Defendants obtained

from the WSP between September 1, 2013 and June 23, 2017? (2) did the personal

information originate from [*sic*] DOL record? and (3) Was the person not a client

of Defendants or listed on the same PTCR as a client, not employed by

ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION ~ 20

Defendants, or the Court and did not provide written consents?" *Id.* She states that the defining factors of her class are objective and not based on subjective evaluation of a potential class member's feelings or beliefs. *Id.* at 16–17.

Defendants argue that class certification is improper because the facts cannot support a clear and definite class definition. ECF No. 85 at 16. They state that a PTCR does not show whether it was made using the auto-populate feature provided by SECTOR, manual entry by the police officer from reading a driver's license or registration, or manual entry by the police officer based off the information the driver tells the officer directly. *Id.* at 16–17. Because of this inability to determine the source of a PTCR's creation, Defendants argue that any class created will not be defined by objective or verifiable criteria. *Id.*

Despite Defendants' arguments, the determining factor in creating a clear and definite class definition is whether class members are determined with "an objective criterion." *Briseno*, 844 F.3d at 1124. In *Briseno*, the objective criterion was "whether class members purchased Wesson oil during the class period." *Id.* While there would be difficulties in determining who purchased Wesson oil during the class period, those difficulties did not prevent class certification, because Rule 23 does not require plaintiffs to present a simple or administratively feasible method of identification to win class certification. *Id.* at 1133. The *Briseno* court rejected several arguments in favor of an administrative feasibility requirement,

including the potential for fraudulent claims, the due process rights of defendants

or absent class members, and mitigating administrative burdens. *Id.* at 1127–33.

In this case, Ms. Wilcox has presented objective criteria in her proposed

class definition: whether class members' personal information was received by

Defendants through their purchase of PTCRs made from a Department of

Licensing record. ECF No. 61 at 10. The criteria are objective because they are

not based on class members' feelings or beliefs; it is based on a fact: either

Defendants obtained or used the class members' personal information through

PTCRs created with motor vehicle records, or they did not. Potential difficulties

presented by the identification process does not defeat an attempt for class

certification. *Briseno*, 844 F.3d at 1133.

At oral argument, Defendants tried to distinguish *Briseno* from the current

case by arguing that *Briseno* involved identifying who gets to share the damages

from the litigation, whereas this case involves identifying how to even establish the

extent of Defendants' liability. Defendants seemingly invite the Court to consider

the merits of the case at class certification, which the Court may not do unless it is

essential to the question of class certification. *Amgen*, 568 U.S. at 466. Under

Defendants' theory, class certification is improper unless the class plaintiffs can

establish at the outset the potential for liability, or the "pot" of recoverable

monetary damages. This, essentially, asks the Court to make a merits

determination by requiring the Court to frame the scope of Defendants' liability

before certification.  This sort of inquiry is improper at this time, and the Court declines to do so.  *See id.*

The Ninth Circuit already has heard, and rejected, Defendants' argument on class member identification at the litigation stage.  *Briseno*, 844 F.3d at 1125.  The Ninth Circuit held that Rule 23 does not require a class plaintiff to demonstrate an administratively feasible means of identifying absent class members.  *Id.* at 1126. It considered several arguments in favor of an identification requirement, including mitigation of administrative burdens, creating a reliable notice plan, protecting class defendants from bona fide claims, and ensuring that class defendants' due process rights were not violated.  *Id.* at 1126–1132.  Despite these arguments, the Ninth Circuit rejected an identification requirement, instead holding that a proposed class definition only needs to be defined with objective criteria.  *Id.* at 1133.  The issue of whether a particular individual qualifies as a class member is a separate inquiry to be conducted at a later time in the litigation.  *See Briseno*, 844 F.3d at 1131–32; Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment (explaining that the need "for separate determination of the damages suffered by individuals within the class" will not defeat predominance).

Here, Ms. Wilcox has provided objective criteria to identify the class .  ECF No. 61 at 10.  These objective criteria are clear and definite.

//

//

*Superiority*

Ms. Wilcox argues that class action is the superior form of litigation because the alternative is multiple small cases in which the litigation and attorney's costs would surpass the amount of likely damages. ECF No. 61 at 27. Defendants argue that these cases are not low-value claims and that certifying a class would cause more harm than help. ECF No. 85 at 32.

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). The Court also considers the following non-exhaustive list of factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).

Turning to the four enumerated factors of Rule 23(b)(3), the first factor favors certification if "recovery on an individual basis would be dwarfed by the cost of

litigating on an individual basis." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Ms. Wilcox stipulated that the class would be seeking the statutory minimum $2,500 per violation. Therefore, each class member's potential recovery would be "dwarfed" by the cost of litigating DPPA claims against Defendants individually. *Id*; Fed. R. Civ. P. 23(b)(3)(A). Further, no party has made the Court aware of any other actions against Defendants for DPPA violations similar to the class claims here. Fed. R. Civ. P. 23(b)(3)(B). The Eastern District of Washington is the appropriate forum for this class action because Defendants limited their purchases of PTCRs to accidents that occurred in eastern Washington. ECF No. 61-7 at 15–16; Fed. R. Civ. P. 23(b)(3)(C). Finally, there are not immediately apparent difficulties in managing this proposed class action. Fed. R. Civ. P. 23(b)(3)(D). Ms. Wilcox has made an initial showing that class action is the superior form of litigation to resolve this dispute.

Defendants make two additional arguments as to why class action is not the superior means of litigation. First, Defendants argue that certifying a class would cause the harms that the DPPA was intended to prevent. ECF No. 85 at 33. According to Defendants, telling the class members that Defendants accessed their personal information will cause more harm than Defendants' act of invading the class members' privacies, and that the Court should avoid this result. *Id.* Second, Defendants argue that DPPA claims are not low-value claims, meaning that

individual litigation is superior and class certification would be ruinous to Defendants. *Id.* at 34–35.

Defendants return to *Truesdell* to support their first argument against superiority. In *Truesdell*, the defendant, a deputy sheriff in Florida, was accused of violating the DPPA by using his access to the state's driver and vehicle identification database to satisfy his own personal curiosities about certain women he read about in the news. *Truesdell v. Thomas*, No. 5:13-cv-552-Oc-10PRL, 2016 WL 7205490, *1 (M.D. Fla. Sept. 8, 2016). Given this unique fact pattern, the district court determined that class action was not the superior means of litigation because it would involve notifying several women in Florida that their privacy was invaded, which could potentially cause emotional distress that they may not otherwise experience without that knowledge. *Id.* at *4. According to Defendants, *Truesdell*'s logic applies here, and the Court should avoid certifying a class to prevent more emotional distress by alerting individuals that their personal information was purchased and used for solicitation by Defendants. ECF No. 85 at 33. But Defendants do not address the footnote in the *Truesdell* opinion following its statement that it wished to avoid causing more emotional harm in certifying a class. The footnote reads:

> The principal purpose of DPPA was to redress the practice in some states of selling databases . . . to mass marketers who would then communicate with the victims in an effort to sell them something . . . In cases like that it would clearly be in harmony with the purpose of DPPA—to say nothing of

common sense—to notify those whose privacy was, or will likely be, invaded for commercial purposes.

*Truesdell*, 2016 WL 7205490, at *4 n.6. For the reasons stated by the district court in *Truesdell*, Defendants' argument is not well-taken here.

Further, a plaintiff alleging a DPPA violation does not need to prove emotional damages to succeed in his or her claim. The DPPA states that a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information permits." 18 U.S.C. § 2724(a). While the plaintiff may present proof of actual damages from the DPPA violation for recovery, the DPPA sets a statutory floor of $2,500 in damages. 18 U.S.C. § 2724(b)(1). This shows that the main harm intended to be prevented by DPPA is not the emotional harm that results from the discovery that one's private information has been obtained by an unknown third party; rather, it is the acquisition itself that is considered the harm. *See Reno v. Condon*, 528 U.S. 141, 148 (2000) (holding that Congress may punish private actors for the acquisition of personal information from motor vehicle records with the DPPA under the Commerce Clause).

Defendants' second argument against superiority is that the DPPA incentivizes individual litigation because DPPA claims are not low value. ECF No. 85 at 34. However, as Defendants already have admitted in their first

argument, many drivers do not even know that Defendants purchased their personal information from the WSP. *Id.* at 33. Without knowledge that the alleged violations occurred, many class members would not seek the compensation to which they are entitled if Defendants did indeed violate the DPPA. Furthermore, the cost of investigating and trying these DPPA cases individually likely exceeds the $2,500 value that class members would receive from the litigation. Such an outcome makes individual litigation unfavorable. *See White v. E-Loan, Inc.*, No. C 05-02080 SI, 2006 WL 2411420, at *9 (N.D. Cal. Aug. 18, 2006).

Additionally, Defendants argue that a potential class of over 17,000 members would be ruinous to Defendants' business. ECF No. 85 at 35. But the Ninth Circuit has held that such a consideration is inappropriate in the class certification analysis. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 713 (9th Cir. 2010). Additionally, Rule 23 is intended to be a procedural mechanism, unconcerned with the merits of the action, to determine whether a party's case may proceed as a class action. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action."). And as the Court has already discussed, it is generally inappropriate to discuss the merits at the class certification stage. *Amgen Inc.*, 568 U.S. at 466–67.

Ms. Wilcox has shown that a class action is the superior means of litigating this dispute against Defendants.

### Appointing Class Counsel

While Defendants did not dispute the adequacy of proposed class counsel, the Court "must consider" several factors before appointing class counsel. Fed. R. Civ. P. 23(g)(1)(A); *see also* Fed. R. Civ. P. 23(c)(1)(B). These factors are the work counsel has done in identifying or investigating the class claims; counsel's class action or complex litigation experience; class counsel's knowledge of the applicable law; and the resources counsel will commit to representing the class. *Id.* When only one applicant seeks appointment as class counsel, or two applicants seek to be named co-lead counsel, the district court may appoint the applicants as class counsel only if they satisfy the requirements of Rule 23(g)(1) and 23(g)(4). Fed. R. Civ. P. 23(g)(2). "Class counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

Ms. Wilcox asks that Thomas Jarrard and Block & Leviton be appointed as co-lead class counsel. ECF No. 61 at 23. Mr. Jarrard investigated the DPPA claims along with the Sweetser Law Firm against these Defendants and the Washington State Defendants in the related *Batiste* action. ECF No. 61-16 at 2. Both Thomas Jarrard and Block & Leviton have extensive class action experience, especially in plaintiff class actions. *Id.*; ECF No. 61-12 at 2. Plaintiff's counsel also has shown knowledge of the applicable DPPA law and proven that they have

the resources necessary to represent this class.  ECF No. 61-16; ECF No. 61-12.
The proposed co-lead counsel have shown that they will fairly and adequately
represent the best interests of the class as they demonstrated through their hard
work in successfully navigating two motions to dismiss, several discovery
disputes, and this motion for class certification.

Accordingly, the Court appoints Thomas Jarrard and Block & Leviton as co-
lead class counsel.  Fed. R. Civ. P. 23(g).

## CONCLUSION

Ms. Wilcox has met the four requirements of Rule 23(a) and the additional
requirements to certify a damages class under rule 23(b)(3).  Therefore, the Court
grants Ms. Wilcox's motion for class certification, and certifies the following class:

> All drivers identified in Police Traffic Collision Reports whose
> Personal Information, as defined by the DPPA, was derived from a
> Department of Licensing record (e.g. license, registration or database)
> and the Report was obtained or used by the Swapp Law Firm (d/b/a
> Craig Swapp & Associates) or Mr. Swapp from the Washington State
> Patrol between September 1, 2013 and June 23, 2017.
>
> Excluded from the Class are (a) current and former clients of
> Defendants; (b) individuals identified on the same PTCRs as
> Defendants' clients; (c) individuals who provided written consent to
> Defendants for the disclosure of their Personal Information (as
> defined by the DPPA) prior to Defendants obtaining their personal
> information; (d) employees (and attorneys) of Defendants and
> members of their immediate families; and (e) the presiding judge and
> anyone working in the presiding judge's chambers and the members
> of their families.[4]

---

[4] This class definition differs slightly from the proposed class in Ms. Wilcox's
motion.  "Where appropriate, the district court may redefine the class."  *Armstrong*

ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION ~ 30

The Court appoints Ms. Wilcox as class representative. The Court appoints Thomas Jarrard and Block & Leviton as co-lead class counsel.

Accordingly, **IT IS HEREBY ORDERED**:

1.      Plaintiff's Motion for Class Certification, **ECF No. 61**, is **GRANTED**.

2.      Plaintiff's proposed class, ECF No. 61 at 10, is certified under Federal Rule of Civil Procedure 23(b)(3).

3.      Thomas Jarrard and Block & Leviton are appointed as co-lead class counsel.

4.      Pursuant to this Court's order staying discovery deadlines, ECF No. 102, the parties shall file a Joint Status Report within 14 days of the entry of this order. This Joint Status Report shall include a plan for class notice pursuant to Rule 23(c)(2)(B).

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** January 25, 2019.

_____s/ Rosanna Malouf Peterson_____
ROSANNA MALOUF PETERSON
United States District Judge

---

*v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005).

ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION ~ 31