1  Thomas G. Jarrard
   The Law Office of Thomas G. Jarrard, PLLC
2  1020 N. Washington
   Spokane, WA 99201
3  Telephone: (425) 239-7290
   Email: tjarrard@att.net
4

5

6

7              **UNITED STATES DISTRICT COURT**
               **EASTERN DISTRICT OF WASHINGTON**
8
   Jade Wilcox, on behalf of herself and     )   Case No. 2:17-cv-275-RMP
9  all others similarly situated,            )
                                             )   Related to Case No. 2:17-cv-122-
10            Plaintiffs,                     )   RMP
                                             )
11        v.                                  )   **PLAINTIFF'S UNOPPOSED**
                                             )   **MOTION FOR PRELIMINARY**
12 Swapp Law, PLLC, d/b/a Craig              )   **APPROVAL OF CLASS ACTION**
   Swapp and Associates, and James          )   **SETTLEMENT**
13 Craig Swapp, individually,                )
                                             )   11/25/2019
14            Defendants                      )   With Oral Argument: 1:30 p.m.
                                             )   920 West Riverside Ave., Rm. 901
15                                            )   Spokane, Washington
                                             )
16 _____         )

17

18

19

20

21

1

## TABLE OF CONTENTS

2

**Memorandum of Points and Authorities** ...................................................**2**

    **I.**    **History and Status of the Case** ..................................................**3**

           **A.**   **Statement of Facts** ..................................................**3**

           **B.**   **The Claim and Relief Requested** ...........................**5**

           **C.**   **Procedural History** .................................................**6**

    **II.**   **Terms of the Settlement** ..........................................................**8**

    **III.**  **The Proposed Settlement Merits Preliminary Approval** ...........**10**

           **A.**   **The Settlement is a Result of Serious, Informed, and Non-Collusive Negotiations** ...........................**12**

           **B.**   **The Settlement Provides Significant Benefits to the Class and is Well Within the Range of Reasonableness** ...........**14**

           **C.**   **The Settlement has No Obvious Deficiencies** .......................**18**

    **IV.**  **The Notices and Plan of Notice Should be Approved** ...................**22**

    **V.**   **The Court Should Establish Dates for Effectuating Final Approval of the Settlement** ...............................................**25**

**Conclusion** ....................................................................................**25**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Anderson-Butler v. Charming Charlie Inc.*,
   No. 14 CV 1921, 2015 WL 4599420 (E.D. Cal. July 29, 2015) .......................21

5

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................................................19

6

*Burnett v. W. Customer Mgmt. Grp., LLC*,
   No. 10 CV 56, 2011 WL 13290339 (E.D. Wash. Feb. 22, 2011) ...............14, 23

7

*Carideo v. Dell Inc.*,
   No. 06 CV 1772, 2010 WL 11530601 (W.D. Wash. Sept. 13,
   2010) .....................................................................................................................12

8

9

*De La O v. Arnold-Williams*,
   No. 04 CV 192, 2008 WL 11426817 (E.D. Wash. Aug. 12, 2008) ...................24

10

*Dennings v. Clearwire Corp.*,
   No. 10 CV 1859, 2013 WL 1858797 (W.D. Wash. May 3, 2013),
   *aff'd* No. 13-35491 (9th Cir. Sept. 9, 2013) ........................................................20

11

12

*Dunakin v. Quigley*,
   No. 14 CV 567, 2017 WL 123011 (W.D. Wash. Jan. 10, 2017).......................12

13

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974).............................................................................................24

14

15

*Fresco v. Auto. Directions, Inc.*,
   No. 03 CV 61063, 2009 WL 9054828 (S.D. Fla. Jan. 20, 2009) ................16, 20

16

*Gabriel v. Nationwide Life Ins. Co.*,
   No. 09 CV 508, 2010 WL 11684279 (W.D. Wash. May 17, 2010)............11, 14

17

*Hall v. L-3 Commc'ns Corp.*,
   No. 15 CV 231, 2019 WL 3845462 (E.D. Wash. Jan. 25, 2019) ................11, 15

18

19

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) ...............................................................................18

20

21

*Logan v. Hargraves*,
    No. 04 CV 214, 2008 WL 11425713 (E.D. Wash. Sept. 25, 2008) .................22

*Maracich v. Spears*,
    570 U.S. 48 (2013)......................................................................................5

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) .............................................................10

*Peters v. Nat'l R.R. Passenger Corp.*,
    966 F.2d 1483 (D.C. Cir. 1992).........................................................24

*Rinky Dink, Inc. v. World Bus. Lenders, LLC*,
    No. 14 CV 268, 2016 WL 4052588 (W.D. Wash. Feb. 3, 2016) ..........12, 14, 16

*Roberts v. Source for Pub. Data, LP*,
    No. 08 CV 4167, 2010 WL 2195523 (W.D. Mo. May 28, 2010) ....................17

*Rosas v. Sarbanand Farms, LLC*,
    No. 18 CV 112, 2019 WL 859225 (W.D. Wash. Feb. 22, 2019)................23, 24

*Scott v. United Servs. Auto. Ass'n*,
    No. 11 CV 1422, 2013 WL 12251170 (W.D. Wash. Jan. 7, 2013)..............11, 19

*Smith v. Legal Helpers Debt Resolution, LLC*,
    No. 11 CV 5054, 2012 WL 12863173 (W.D. Wash. Aug. 30, 2012) ...............10

*Taylor v. City of Amboy*,
    No. 14 CV 722, 2017 WL 4075163 (D. Minn. Sept. 14, 2017) ........................20

*Util. Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) .............................................................10

*Vinh Nguyen v. Radient Pharm. Corp.*,
    No. 11 CV 406, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ..........................22

*Wilcox v. Bastiste*,
    No.17 CV 122, 2017 WL 2525309 (E.D. Wash. June 9, 2017) ........................4

*Wiles v. Sw. Bill Tel. Co.*,
    No. 09 CV 4236, 2011 WL 2416291 (W.D. Mo. June 9, 2011) ......................15

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - iv

*Zamora Jordan v. Nationstar Mortg., LLC*,
No. 14 CV 175, 2019 WL 1966112 (E.D. Wash. May 2, 2019) ........................12

**Statutes**

18 U.S.C. § 2721 .............................................................................................5

18 U.S.C. § 2721(b) .......................................................................................5, 6

18 U.S.C. § 2721(b)(4) .....................................................................................5

18 U.S.C. § 2722(a) .......................................................................................5, 6

18 U.S.C. § 2724(b) .....................................................................................16, 20

18 U.S.C. § 2724(b)(1) .....................................................................................6

18 U.S.C. § 2725 .............................................................................................5

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...................................................................................6

Fed. R. Civ. P. 23 ...................................................................................1, 24, 25

Fed. R. Civ. P. 23(b)(3) ...................................................................................23

Fed. R. Civ. P. 23(c)(2) ...............................................................................1, 24

Fed. R. Civ. P. 23(c)(2)(B) .........................................................................23, 24

Fed. R. Civ. P. 23(c)(3) ...................................................................................23

Fed. R. Civ. P. 23(d) .........................................................................................1

Fed. R. Civ. P. 23(e) ...........................................................................1, 2, 10, 22

Fed. R. Civ. P. 23(e)(1)(B) ...........................................................................1, 24

Fed. R. Civ. P. 23(f) .....................................................................................8, 16

Fed. R. Civ. P. 30(b)(6) .....................................................................................6

*Manual for Complex Litigation* (4th ed. 2004)............................................11, 23, 24

William B. Rubenstein *et al.*, *Newberg on Class Actions* § 13:10 (5th ed. 2013) ...........................................................................................19

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - vi

1

## INDEX OF EXHIBITS

2

**Declaration of R. Joseph Barton with the following attachments:**

3

     **Exhibit A**   Settlement Agreement;

     **Exhibit B**   Proposed Class Notice; and

4

     **Exhibit C**   Plan of Allocation.

5

**Declaration of Colin M. Downes with the following attachments:**

6

     **Exhibit A**   Proposal for Settlement Administration Services Submitted by Angeion Group; and

7

     **Exhibit B**   Proposal for Settlement Administration Services Submitted by RG/2 Claims Administration.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - vii

Plaintiff Jade Wilcox moves this Court to enter an order under Rule 23 of the Federal Rules of Civil Procedure:

1. Preliminarily approving the Settlement Agreement between Plaintiff and Defendants (attached as Exhibit A) as fair, reasonable, and adequate under Rule 23(e) of the Federal Rules of Civil Procedure;

2. Approving the proposed Class Settlement Notice (attached as Exhibit B) as to form and content and the plan for dissemination of notice to the Class as satisfying the requirements of Rule 23(c)(2) and (e)(1) and appointing the Settlement Administrator;

3. Approving the proposed Plan of Allocation; and

4. Setting dates and deadlines under Rule 23(d) and (e) of the Federal Rules of Civil Procedure in order for the Court to evaluate whether the settlement should be given final approval (after distribution of the proposed class notices to the Class and submission of any objections to or requests for exclusion from the settlement, and for a fairness hearing on final approval of the settlement), to evaluate Class Counsel's request for an award of attorneys' fees and reimbursement of costs and expenses and Plaintiff's request for a service award as follows:

| | |
|---|---|
| Deadline for Settlement Administrator to provide notice to the Class | 30 days after the Preliminary Approval Date |
| Deadline for Class Counsel to file | 14 days before deadline for date for |

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 1

| motion for award of attorneys' fees and costs for Service Award for Class Representative | objections or exclusions |
| Last day for requests for exclusion from the Class to be submitted by Class Members | 90 days after the Preliminary Approval Date |
| Last day for Class Members to file objections to the Settlement | 90 days after the Preliminary Approval Date |
| Last day for Class Counsel to file Motion for Final Approval of Settlement | 105 days after the Preliminary Approval Date |
| Hearing on motion for final approval of settlement and application for attorneys' fees and costs | At least 120 days after the Preliminary Approval Date |

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Jade Wilcox respectfully submits this Memorandum in support of her motion to preliminarily approve the proposed Class Action Settlement with Defendants pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, to approve the proposed notice to the Class, and to set various dates related to the approval of the Settlement.

Pursuant to the Settlement, Defendants have agreed, to (1) pay $2 million, (2) cease making use of the personal information of the Class, (3) destroy any records containing personal information of the Class obtained from police traffic collision reports ("PCTRs"), (4) cease purchasing police traffic collision reports in or from the state of Washington for the purpose of acquiring contact information for potential clients, (5) identify any third parties to whom they provided any records containing the personal information of Class Members, and (6) advise any

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 2

such third parties that Plaintiff and the Class consider those records to contain

information protected by the DPPA. Given the uncertainty of establishing both

liability and damages, the risk on appeal, and uncertainty regarding the ability of

Defendants to satisfy a judgment reached at trial, the Settlement should be

preliminarily approved by the Court.

**I.      History and Status of the Case**

      **A.      Statement of Facts**

      In the State of Washington, law enforcement officers use standard PTCRs to

document vehicle accidents. ECF No. 62-2 at 8:9-16; ECF No. 61-2 at 23:5-8. In

collecting information for the PTCR, officers are trained to and do ask drivers for

their licenses, registrations, and insurance information and then ask if the

information on the registration and drivers' licenses is current. ECF No. 61-3 at

13:15-21; ECF No. 61-4 at 41:2-9; Declaration of Pete Cozzitorto ¶ 3, *Wilcox v.*

*Batiste*, No. 17-cv-00122-RMP (E.D. Wash.). If the information is current, officers

scan the barcode on a license or registration and if the barcode is scannable, a

software application—SECTOR—auto-populates the PTCR with information from

those documents, including the names and addresses of the driver. ECF No. 61-3 at

13:13-25; ECF No. 61-4 at 42:18-43:8; Declaration of Pete Cozzitorto ¶ 4, *Wilcox*

*v. Batiste*, No. 17-cv-00122-RMP (E.D. Wash.). If the barcode is not scannable,

officers manually enter the information from the license or registration (whichever

1    is current). ECF No. 61-8 at 17-18.

2        Once officers complete their PTCRs, SECTOR transmits the PTCRs to the

3    Department of Transportation and to the Washington State Patrol ("WSP"). ECF

4    No. 61-3 at 37:9-38:2; ECF No. 62-2 at 13:13-17. WSP's Collision Records

5    Section maintains all PTCRs for the State of Washington, regardless of whether

6    they were prepared by WSP troopers, or local law enforcement. ECF No. 62-2 at

7    8:9-16. At least prior to June 9, 2017, the WSP routinely sold PTCRs – containing

8    drivers' names and addresses – to anyone who wished to buy them through the

9    WSP website. ECF No. 62-2 at 25:21-26:22; *see Wilcox v. Bastiste*, No.17 CV 122,

10   2017 WL 2525309 at *4 (E.D. Wash. June 9, 2017).

11       Defendants, a personal injury attorney and his law firm, purchased 10,555

12   PTCRs between September 1, 2017 and June 23, 2017, of which 8,835 involved

13   individuals who were not then – and never became – clients of Swapp Law. ECF

14   No. 61-7 at Nos. 2(a), (b) and (c). Two of these PCTRs contained the personal

15   information of Plaintiff, who was involved in car accidents in 2015 and 2016. After

16   her 2016 accident, Ms. Wilcox received a letter from Defendants that offered their

17   legal services and stated they learned "from Washington public records" that she

18   was "involved in a serious accident on July 9." ECF No. 62-1 at 1. The letter also

19   enclosed a booklet advertising Defendants' firm. *Id*. Ms. Wilcox considered the

20   way "they got my address" to be "an invasion of [her] privacy." ECF No. 62-3 at

21   Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 4

1   94:19-24.

2   **B.     The Claim and Relief Requested**

3         The Complaint alleges a single claim under the Driver's Privacy Protection

4   Act, 18 U.S.C. § 2721, *et seq*. Am. Compl. ¶¶ 6.1-6.11. The DPPA makes it

5   "unlawful for any person knowingly to obtain or disclose personal information,

6   from a motor vehicle record, for any use not permitted under Section 2721(b)" of

7   the DPPA. 18 U.S.C. § 2722(a). The DPPA defines personal information to mean

8   "information that identifies an individual, including an individual's photograph,

9   social security number, driver identification number, name, [and] address…."18

10   U.S.C. § 2725. A "motor vehicle record" is defined as "any record that pertains to

11   a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or

12   identification card issued by a department of motor vehicles." *Id*. Because PTCRs

13   contain information identifying individuals, including names and addresses, and

14   this information is from the motor vehicle records used by police to prepare

15   PTCRs, the PTCRs obtained by Defendants contained personal information of

16   Class Members under the DPPA. The marketing of legal services is not a

17   "permissible use" of personal information under the DPPA. 18 U.S.C. § 2721(b);

18   *see Maracich v. Spears*, 570 U.S. 48, 61, (2013) (holding bulk attorney solicitation

19   of clients not a proper purpose under 18 U.S.C. § 2721(b)(4)). Thus, Defendants

20   undisputedly had no permissible purpose, within the meaning of 18 U.S.C. §

21

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 5

2722(a) or § 2721(b), to obtain the personal information of Plaintiff or the Class.

The Complaint requested relief on behalf of Plaintiff and a Class of other drivers whose personal information was illegally obtained or used by Defendants consisting of declaratory and injunctive relief aimed at preventing and restraining Defendants' practice of illegally obtaining PCTRs, an injunction preventing and restraining Defendants from disclosing or using the DPPA-protected information in their possession, an injunction requiring Defendants to destroy such information, an injunction requiring Defendants to identify under oath how and to who such information was disclosed, and monetary damages in the amount of the statutorily provided liquidated damages of $2500 for each violation of the DPPA under 18 U.S.C. 2724(b)(1). Am Compl. at Prayer for Relief ¶¶ A-I.

## C.    Procedural History

The original complaint was filed on August 9, 2017. ECF No. 1. Defendants responded by filing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which the Court denied, ECF No. 21. Defendants then answered the Complaint and asserted 14 defenses. ECF No. 22. Class Counsel issued 24 interrogatories and 33 documents requests to Defendants, and reviewed thousands of pages produced by Defendants and non-parties in discovery. Barton Decl. ¶ 3. Class Counsel took depositions under Rule 30(b)(6) of the Washington Department of Licensing, the Washington State Patrol, the Washington State

1    Criminal Justice Training Commission, and the Spokane Police Department.

2    Barton Decl. ¶ 5. Class Counsel also defended Defendants' deposition of Plaintiff.

3    *Id.* Class Counsel filed two motions to compel seeking responses to interrogatories,

4    which were granted in part. Barton Decl. ¶ 3; ECF Nos. 65 & 79. Class Counsel

5    also successfully opposed Defendants motion to compel discovery from one of

6    Plaintiffs' counsel. Barton Decl. ¶ 4; ECF Nos. 75, 84, 106.

7        Based on information obtained in discovery, Plaintiff filed an Amended

8    Complaint that added to the factual allegations, but did not add any new legal

9    claim. ECF No. 69. Defendants moved to dismiss the Amended Complaint, which

10   the Court denied. ECF Nos. 80, 108. After extensive discovery, Plaintiff moved for

11   Class Certification of the Class, which the Court granted. ECF Nos. 61 & 109. The

12   Class certified by the Court is defined as:

13   
14       All drivers identified in Police Traffic Collision Reports whose
         Personal Information, as defined by the DPPA, was derived from a
         Department of Licensing record (e.g. license, registration or database)
15       and the Report was obtained or used by the Swapp Law Firm (d/b/a
         Craig Swapp & Associates) or Mr. Swapp from the Washington State
         Patrol between September 1, 2013 and June 23, 2017.
16

17       Excluded from the Class are (a) current and former clients of
         Defendants; (b) individuals identified on the same PTCRs as
18       Defendants' clients; (c) individuals who provided written consent to
         Defendants for the disclosure of their Personal Information (as defined
         by the DPPA) prior to Defendants obtaining their personal information;
19       (d) employees (and attorneys) of Defendants and members of their
         immediate families; and (e) the presiding judge and anyone working in
20       the presiding judge's chambers and the members of their families.

21   Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 7

*Id.* at 30. Defendants subsequently filed motions to reconsider class certification, to certify the order on the Second Motion to Dismiss for interlocutory review, and announced the intention to seek interlocutory review of class certification by the Ninth Circuit under Rule 23(f), ECF No. 113, 115 at 3 n.1.

At the request of the parties, the case was stayed and referred to Hon. Lonny Suko for mediation. ECF No. 117. Before mediation, Class Counsel requested, obtained and reviewed a significant amount of financial materials from Defendants in order to evaluate Defendants' ability to satisfy a potential judgment in this case. Barton Decl. ¶ 7. As part of the review of those materials, Class Counsel hired an economist to assist them in reviewing and understanding Defendants' financial information. *Id.*. The Parties exchanged pre-mediation settlement offers and then attended an in-person mediation session on May 23, 2019 with Senior Judge Lonny Suko. *Id.* ¶ 9. An agreement in principle was reached only at the end of the all-day mediation session. *Id.* The parties then entered into the formal Settlement Agreement.

## II.    Terms of the Settlement

The terms of the proposed settlement between Plaintiff and Defendants provide both a monetary and non-monetary consideration. Agmt. §§ 4, 6. Under the Settlement, effective as of the execution of the Settlement Agreement, Defendants agree that they will refrain from purchasing PTCRs in or from the State

of Washington for the purpose of acquiring contact information for potential clients and sending marketing materials to them. *Id.* § 6.1. Defendants also agree that they will cease using any such PTCRs for those purposes, and will, within 120 days after the final distribution to the Class Members, destroy all such PTCRs and personal information taken from them. *Id.* § 6.3-4. Defendants also agreed to notify Class Counsel of any third parties to whom Defendants have provided such PTCRs (or personal information from the PTCRs), and will notify such third parties that Plaintiff and the Class consider those records to contain information protected by the DPPA. *Id.* § 6.5-6

In addition to this non-monetary consideration, Defendants have agreed to pay the following amounts: (1) $950,000 into a Settlement Fund, which minus only settlement administration expenses, will be paid to the Class (and which will be fully funded by no later than June 1, 2020); and (2) between $900,000 and $1.05 million (depending on whether the amount is paid by December 1, 2020 or paid over three years), out of which any award of attorneys' fees, litigation expenses and class representative service award, and if there are any remaining amounts, the remainder will be paid to the Settlement Fund.

The Net Settlement Fund will be paid to the Class Members pursuant to a Plan of Allocation that proposes that Settlement Fund will be evenly divided among all Class Members and that Class Members will receive a payment without

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 9

needing to complete a claim form. The benefit of being able to distribute the Settlement Funds to Class Members is that it should greatly increase the number of persons who actually benefit from the Settlement.

In exchange for these benefits, the Class will release and dismiss with prejudice all claims arising out of Defendants' acquisition and use of PCTRs that Defendants have identified as involving Class Members and will dismiss with prejudice their claims asserted in this action. Defendants will likewise release Plaintiff and each Class Member from all claims that could have been asserted in this case, including any claims for attorneys' fees, costs, expenses, or sanctions, that relate to the filing, commencement, prosecution, or settlement of this case.

## III.    The Proposed Settlement Merits Preliminary Approval

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in class actions. *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982); *Smith v. Legal Helpers Debt Resolution, LLC*, No. 11 CV 5054, 2012 WL 12863173, at *3 (W.D. Wash. Aug. 30, 2012) ("Strong judicial policy favors settlements, particularly where complex class action litigation is concerned."). To protect the interests of the class, Rule 23(e) provides that a class action cannot be settled without court approval. Fed. R. Civ. P. 23(e). "At this stage of the

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 10

proceedings, the Court must initially consider whether to grant preliminary approval of the settlement as a first step toward final approval." *Hall v. L-3 Commc'ns Corp.*, No. 15 CV 231, 2019 WL 3845462, at *3 (E.D. Wash. Jan. 25, 2019).

The request for preliminary approval only requires an "initial evaluation" of the fairness of the proposed settlement. *Manual for Complex Litigation* § 21.632 (4th ed. 2004). The purpose of preliminary approval is to determine "whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a fairness hearing." William B. Rubenstein *et al.*, *Newberg on Class Actions* § 13:10 (5th ed. 2013). Because the approval is only preliminary, courts generally undertake a limited review of the proposed settlement. *Id.* "The general rule is that a court will grant preliminary approval where the proposed settlement is neither illegal nor collusive and is within the range of possible approval." *Id.* "In granting preliminary approval, the Court considers whether the Settlement Agreement appears to be the product of serious, informed, non-collusive negotiations; has no obvious deficiencies; does not grant preferential treatment to class representatives, and falls within the range of possible approval." *Hall*, 2019 WL 3845462, at *3; *Scott v. United Servs. Auto. Ass'n*, No. 11 CV 1422, 2013 WL 12251170, at *1 (W.D. Wash. Jan. 7, 2013) (same); *Gabriel v. Nationwide Life Ins. Co.*, No. 09 CV 508, 2010 WL 11684279, at *6 (W.D. Wash. May 17, 2010)

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 11

1    (same). The Settlement readily satisfies the requirements for preliminary approval.

2    ###    A.    The Settlement is a Result of Serious, Informed, and Non-Collusive Negotiations

3    "A presumption of fairness and adequacy attaches to a class action

4    settlement reached in arm's-length negotiations by experienced class counsel after

5    meaningful discovery." *Dunakin v. Quigley*, No. 14 CV 567, 2017 WL 123011, at

6    *2 (W.D. Wash. Jan. 10, 2017). The fact that experienced counsel has been

7    actively engaged in the litigation and has diligently pursued the necessary

8    discovery evidences the non-collusive nature of the settlement. *Rinky Dink, Inc. v.*

9    *World Bus. Lenders, LLC*, No. 14 CV 268, 2016 WL 4052588, at *5 (W.D. Wash.

10   Feb. 3, 2016) ("The presence of substantial formal discovery is an indicator that

11   the parties were informed regarding the wisdom of settlement and engaged in

12   arms-length bargaining."). The assistance of a neutral mediator in the settlement

13   negotiations further evidences the non-collusive nature of the negotiations. *Zamora*

14   *Jordan v. Nationstar Mortg., LLC*, No. 14 CV 175, 2019 WL 1966112, at *3 (E.D.

15   Wash. May 2, 2019) (finding no collusion where "the Settlement Agreement was

16   achieved under the supervision of a trusted third-party mediator following

17   extensive settlement negotiations"); *Carideo v. Dell Inc.*, No. 06 CV 1772, 2010

18   WL 11530601, at *3 (W.D. Wash. Sept. 13, 2010) ("The assistance of an

19   experienced mediator … confirms that the settlement is non-collusive.").

20   In this case, a settlement was not reached until Plaintiff's counsel had

21   Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 12

1   conducted substantial discovery. Plaintiff's counsel did not only seek, obtain, and

2   review thousands of pages of documents and answers to interrogatories, but also

3   met and conferred with Defendants on numerous discovery matters and, ultimately,

4   twice moved to compel Defendants to provide futher responses to interrogatories.

5   Barton Decl. ¶ 3. Plaintiff's counsel also took the depositions of the Washington

6   Department of Licensing, the Washington State Patrol, the Washington State

7   Criminal Justice Training Commission, and the Spokane Police Department, and

8   defended the deposition of Ms. Wilcox. Barton Decl. ¶ 5.

9   　　　The terms of the Settlement resulted from hard-fought negotiations. *Id*. ¶¶ 6-

10  13. The Parties negotiated the principal terms of the agreement in an in-person

11  mediation facilitated by Senior Judge Hon. Lonny Suko on May 23, 2019, in

12  Yakima, Washington. *Id*. ¶ 9. The Parties reached the principal terms of the

13  Settlement only after Plaintiff had received and reviewed documents produced by

14  Defendants regarding their financial circumstances and ability to satisfy a potential

15  judgment in this case. Barton Decl. ¶ 7. After reaching the principal terms of the

16  Settlement at the May 23 session, Plaintiff and Defendants spent additional time

17  crafting the detailed terms of a formal agreement and finalizing them in the

18  Settlement Agreement. Barton Decl. ¶ 11.

19  　　　The opinion of experienced class action attorneys is to be considered on

20  preliminary approval. *See Burnett v. W. Customer Mgmt. Grp., LLC*, No. 10 CV

21  Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 13

56, 2011 WL 13290339, at *6 (E.D. Wash. Feb. 22, 2011). As previously

demonstrated on their Motion for Class Certification, Class Counsel are

experienced in class action litigation. Pl.'s Mot. for Class Cert. (ECF No. 61).

Class Counsel believe that the proposed Settlement is a very good result and that

they received sufficient discovery to reach that conclusion. Barton Decl. ¶¶ 3-5, 12.

Accordingly, as a product of extensive negotiations aided by a neutral

professional mediator and conducted by informed and experienced counsel over 26

months of hard-fought litigation, the Settlement Agreement is the product of

informed, vigorous, arms-length bargaining.

### B. The Settlement Provides Significant Benefits to the Class and is Well Within the Range of Reasonableness

While the Court's ultimate assessment of whether the proposed settlement is

fair, reasonable, and adequate depends on many factors, at preliminary approval,

the Court must only be satisfied that the settlement "falls within the range of

*possible* approval" and has no "obvious deficiencies." *Gabriel v. Nationwide Life

Ins. Co.*, No. 09 CV 508, 2010 WL 11684279, at *6 (W.D. Wash. May 17, 2010)

(emphasis added); *Rinky Dink, Inc. v. World Bus. Lenders*, LLC, No. 14 CV 268,

2016 WL 4052588, at *4 (W.D. Wash. Feb. 3, 2016) ("[A]t this preliminary

approval stage, the Court conducts a less searching inquiry of each factor and only

requires that the proposed settlement be within the range of final approval"). "To

determine whether a settlement amount falls within the range of reasonableness,

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 14

courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Hall*, 2019 WL 3845462, at *4 (citations and quotation marks removed). Here, the Settlement Agreement will provide for at least $950,000 to be paid into a Settlement Fund for the benefit of the Class, which results in at least a per Class Member value of $ 29.41 (before settlement administration expenses) and $26.34 (after payment of estimated settlement administration expenses).[1] Agmt. § 4.1. The total amount is in line with class settlements approved in DPPA cases by other courts. *E.g. Wiles v. Sw. Bill Tel. Co.*, No. 09 CV 4236, 2011 WL 2416291, at *1 (W.D. Mo. June 9, 2011) (finding a $900,000 settlement reasonable for a class of all drivers licensed in Missouri). Particularly in light of the other factors, this Settlement is a very good result for the Class.

First, the expense, risk, and length of continued proceedings necessary to prosecute the litigation against Defendants through trial and appeals, including the risk that the claim might fail on a motion for summary judgment, following a trial on the merits, or on appeal, weighs in favor of settlement. Defendants filed

---

[1] Defendants purchased 10,555 PTCRs between September 1, 2017 and June 23, 2017, of which 8,835 involved individuals who were not then – and never became – clients of Swapp Law. ECF No. 61-7 at Nos. 2(a), (b) and (c). After reviewing the data, eliminating duplicates, eliminating persons excluded from the Class, Class Counsel estimates the Class to consist of approximately 32,300 individuals. Barton Decl. ¶13. An express condition of the Settlement is that Defendants purchased no more than 9,000 PCTRs during the Class Period. Agrmt. § 14.2.

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 15

motions for reconsideration and interlocutory appeal of this Court's order

certifying the Class, and stated the intention to pursue a petition to the Ninth

Circuit for review of the same under Rule 23(f). ECF No. 113, 115 at 3 n.1.

Second, the uncertainty introduced by the remedial provisions of the DPPA

weighs in favor of settlement. The DPPA provides that "[t]he court may award—

(1) actual damages, but not less than liquidated damages in the amount of $2,500;

(2) punitive damages upon proof of willful or reckless disregard of the law; (3)

reasonable attorney's fees and other litigation costs reasonably incurred; and (4)

such other preliminary and equitable relief as the court determines to be

appropriate." 18 U.S.C. § 2724(b). Some courts have taken the position that relief

is awarded "at the discretion of the district court," and "statutory damages are not

mandatory recovery in a DPPA case." *Fresco v. Auto. Directions, Inc.*, No. 03 CV

61063, 2009 WL 9054828, at *4 (S.D. Fla. Jan. 20, 2009) (holding proposed

DPPA settlement within range of potential recovery). In that case, the Class may

receive far less than the $25 million and the jury may award far less than $25

million or perhaps nothing at all.

Third, there is a substantial risk that even if the Class obtained a judgment

against Defendants, Defendants would not be able to satisfy the judgment. Barton

Decl. ¶ 8. In *Rinky Dink, Inc. v. World Bus. Lenders*, LLC, No. 14 CV 268, 2016

WL 4052588 (W.D. Wash. Feb. 3, 2016), the court recognized that prior to seeking

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 16

preliminary approval, class counsel had reviewed detailed financial documents

establishing that defendants "d[id] not have the ability to pay a larger settlement,"

and held that "[t]his factor weighs in favor of preliminary approval." *Id*. at *4.

Here, Defendants produced a substantial volume of financial records to allow Class

counsel to assess the financial position of the Defendants and their ability to satisfy

a judgment. Barton Decl. ¶ 7. Based on those records, Defendants do not have the

capacity to pay anything more than a fraction of the judgement. *Id.* ¶ 8. A

judgment of full damages for the Class would likely bankrupt Defendants and

require liquidation of the Defendants' assets in court proceedings (further depleting

the funds available to satisfy the judgment and placing the Class in the position of

junior, unsecured creditors). *Id*.

Additionally, non-monetary relief in the form of changes to business

practices and the removal of protected information from the possession of

Defendants accomplishes the privacy purposes of the DPPA. *See Roberts v. Source*

*for Pub. Data, LP*, No. 08 CV 4167, 2010 WL 2195523, at *3 (W.D. Mo. May 28,

2010*) (holding return and removal of DPPA-protected information alone, even

with no monetary component, constituted reasonable and satisfactory terms of

settlement). Under the terms of the Settlement, Defendants will be required to

destroy the PTCRs or other records in their possession containing the personal

information of Class Members and to cease and refrain from using that personal

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 17

information for any purpose. Agmt. § 6.2-4. Defendants are also required to notify third parties to whom they have transmitted the personal information of Class Members that the Class consider that information protected by the DPPA. Agmt. § 6.6. And Defendants will no longer purchase PCTRs in or from the State of Washington for the purpose of soliciting clients. Agmt. § 6.1. Accordingly, both the monetary and the non-monetary component of the Settlement are well within the range of reasonableness.

The scope of the releases in a proposed settlement is acceptable where the claims released are limited to those based upon the facts set forth in the complaint. *Hesse v. Sprint Corp*., 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action"). Here, the Settlement only releases claims based on allegations in the Amended Complaint. Agmt. § 12.2.

## C.    The Settlement has No Obvious Deficiencies

The final factor considered on preliminary approval is whether the agreement has any obvious deficiencies, such as "unduly preferential treatment of class representatives or of segments of the class, or excessive compensation of attorneys." *Scott v. United Servs. Auto. Ass'n*, No. 11 CV 1422, 2013 WL

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 18

12251170, at *1 (W.D. Wash. Jan. 7, 2013); *Newberg on Class Actions* § 11:25 (4th ed. 2010). The Ninth Circuit has advised courts to be concerned (a) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (b) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries 'the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class'"; and (c) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Such signs do not necessarily mean that a settlement is improper, but only that it is supported by an explanation of why the fee is justified and does not betray the class's interests. *Id.* at 949.

With respect to the first potential area of concern, the Class is to receive a monetary distribution and counsel's distribution will not be disproportionate. The Settlement Agreement provides for the prompt payment of equal amounts to Class Members out of an $950,000 Settlement Fund. Agmt. § 4.1. In light of the limits of Defendants financial capacities, it was necessary in order to reach Settlement for the monetary component of the Settlement to be paid over time. Barton Decl. ¶ 10. The structure of the Settlement requires payment to the Class before Class Counsel

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 19

will be paid. *Compare* Agmnt §§ 4.1, 10.3. Class Counsel agreed to allow fee and expense amounts paid over time in order to accomplish the settlement and negotiated the terms of fees and expenses only after agreement had been reached on the underlying settlement for the Class. Barton Decl. ¶ 10. Class Counsel will also only seek attorneys' fees calculated under the lodestar method. *Id*. Plaintiff would have been entitled to attorneys' fees and expenses as a remedy if Plaintiff prevailed at trial. *See* 18 U.S.C. § 2724(b) ("The Court may award… reasonable attorneys fees and other litigation costs reasonably incurred…."); *Taylor v. City of Amboy*, No. 14 CV 722, 2017 WL 4075163, at *1 (D. Minn. Sept. 14, 2017) (applying lodestar method to award attorneys fees in DPPA case); *Fresco*, 2009 WL 9054828, at *8 (same).

While the Settlement Agreement does provide for payment of attorneys' fees separate from class funds, this structure is appropriate in this case and does not raise concerns that Plaintiff's counsel is accepting an unfair settlement on behalf of the class. Paying the Class from the Settlement Fund and paying Plaintiff's counsel from the later payments ensures both that the Class will be promptly paid and that Class Counsel—not the Class—will bear the default risk for these later payments by Defendants. In *Dennings v. Clearwire Corp.*, No. 10 CV 1859, 2013 WL 1858797, at *9 (W.D. Wash. May 3, 2013), *aff'd* No. 13-35491 (9th Cir. Sept. 9, 2013), the court held that there was no evidence of collusion despite the existence

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 20

of a "clear sailing" provision. *Id*. at 8. Specifically, the Court noted that the negotiations had been conducted at arm's length with the assistance of a mediator, as here. *Id*. And the Court also held that where the "clear sailing" feature provides any amounts not awarded will revert to the Class that there is no indication of collusion. *Id*. at 9. Here the settlement likewise provides that any amount of these later payments by Defendants that the Court does not award as attorneys fees will revert to the Settlement Fund. Agmt § 4.2.

At this point, the question is merely whether the agreement is preliminarily fair. In *Anderson-Butler v. Charming Charlie Inc*., No. 14 CV 1921, 2015 WL 4599420 (E.D. Cal. July 29, 2015), proposed class settlement allowed plaintiff's counsel to apply for a fee award to be paid by the defendant separate and apart from the recovery of the class, which defendant had agreed not to oppose. *Id.* at *2. The court preliminarily approved the settlement, and declined to "evaluate the fee award at length" in "considering whether the settlement is adequate," because "[i]f the court, in ruling on the fees motion, finds that the amount of the settlement warrants a fee award at a rate lower than what plaintiff's counsel requested" the court had the power to reduce the award accordingly. *Id.* at 11. Likewise, here the specific amounts of attorneys' fees and any class representative incentive award can be reserved on this preliminary approval motion to the final approval hearing and the discretion of the Court.

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 21

No Class Member or group of Class Members will receive unduly favorable treatment under the terms of the Settlement. The Plan of Allocation proposes that the Settlement Fund will be equally divided among all Class Members. See Barton Decl. Ex. C at ¶ 3. "[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Vinh Nguyen v. Radient Pharm. Corp.*, No. 11 CV 406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) (internal quotation marks and modifications omitted). Here the Plan of Allocation has a reasonable basis because Class Members would each be entitled to seek liquidated damages in the amount of $2,500 in the event their respective claims succeeded on the merits. While Plaintiff will be entitled to apply for an incentive award, the amount will be in the discretion of the Court and will come from the funds marked for application for attorneys' fees, not the Settlement Fund. Agmt. § 4.2.

## IV.    The Notices and Plan of Notice Should be Approved

Once the parties obtain preliminary approval of the settlement, Rule 23(e) requires that the court to direct notice in a reasonable manner to all Class Members who would be bound by the settlement. *Logan v. Hargraves*, No. 04 CV 214, 2008 WL 11425713, at *3 (E.D. Wash. Sept. 25, 2008). A proper notice should (1) describe the facts underlying the action and the class, (2) describe the terms of the settlement, (3) disclose any benefits provided to class representatives, (4) provide

information regarding attorney's fees, (5) state the time and place of the final

hearing, (6) provide counsel's contact information and instructions on how to

object and/or make inquiries, and (7) explain the procedure for allocation. *Manual*

*for Complex Litigation, supra,* § 21.312; *see Rosas v. Sarbanand Farms, LLC*, No.

18 CV 112, 2019 WL 859225, at *3 (W.D. Wash. Feb. 22, 2019) (approving notice

that provided such information); *Burnett v. W. Customer Mgmt. Grp., LLC*, No. 10

CV 56, 2011 WL 13290339, at *4 (E.D. Wash. Feb. 22, 2011) (same). Here, the

proposed notice to the Class provides information on all of these subjects and

informs Class Members about their rights under the Settlement as well as their

right to be heard at the final fairness hearing. See Barton Decl. Ex. B at 8.

For any class certified under Rule 23(b)(3), Rule 23(c)(3) requires that the

notice inform class members of the following: "(i) the nature of the action; (ii) the

definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a

class member may enter an appearance through an attorney if the member so

desires; (v) that the court will exclude from the class any member who requests

exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding

effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P.

23(c)(2)(B). Here, the proposed notice to the Class meets these requirements. See

Barton Decl. Ex. B at 1, 6-8. Thus the form of the proposed notice to the Class

should be approved.

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 23

"District courts possess broad discretion to shape such notice to comply with Rule 23." *Rosas*, 2019 WL 859225, at *1; Fed. R. Civ. P. 23(e)(1)(B); *see* Fed. R. Civ. P. 23(c)(2)(B) (requiring "the best notice practicable under the circumstances"). It is well-established that notice sent by first class mail is sufficient when the names and addresses of the class members are known. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77 (1974); *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("It is beyond dispute that notice by first class mail ordinarily satisfies rule 23(c)(2)'s requirement that class members receive 'the best notice practicable under the circumstances.'"); *see Manual for Complex Litigation*, supra, § 21.311 (explaining that individual notice via mail is preferred when names and addresses are known). In such circumstances, courts have authorized notice only by mail. *See De La O v. Arnold-Williams*, No. 04 CV 192, 2008 WL 11426817, at *5 (E.D. Wash. Aug. 12, 2008). Here, the members of the Class will receive notice by U.S. Mail. Agmt. § 3.3.[2] Thus, these procedures satisfy due process, meet the requirements of Rule 23, and should be approved.

Publication notice is not necessary in this case, because data identifies the

---

[2] Class Counsel has analyzed data produced by Defendants identifying the individuals appearing on PTCRs they purchased during the class period. Downes Decl. ¶ 4. By running searches over this data, Class Counsel has excluded entries that are duplicative, excluded from the class definition (e.g., business or government entities rather than individuals), or bear indicia that a driver's personal information was not sourced from a motor vehicle record (e.g., an address of "UNKNOWN"). Downes Decl. ¶ 5.

names and addresses of Class Members. Due to the nature of this case, many Class Members are unlikely to know that Defendants possess their personal information, ECF No. 85 at 27. Not only would publication notice be of minimal value in alerting potential Class Members, but it would likely increase the costs of administration and decrease the benefits available to pay Class Members.

Class Counsel has solicited bids for class notice and administration services through a competitive process. Class Counsel solicited responses to a request for proposals from six reputable service providers, of which four submitted bids. Downes Decl. ¶ 2-3. Following extensive discussion with the respondents to ensure an apples to apples comparison of services, Class Counsel has submitted the two lowest priced bids for this Court's consideration. *See* Downes Decl. ¶ 7 and Exs. A and B. The Court should appoint either RG/2 Claims Administration or Angeion Group as the Settlement Administrator under the Settlement Agreement.

## V.    The Court Should Establish Dates for Effectuating Final Approval of the Settlement

In order to send out an effective Notice, Plaintiff requests that the Court establish the dates set forth in Plaintiff's motion.

## CONCLUSION

For the forgoing reasons, the Court should grant Plaintiff's motion to preliminarily approve the proposed Settlement, approve the proposed Class notice, authorize its distribution to the Class, and set dates outlined above.

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 25

1    Dated: October 25, 2019            Respectfully submitted,

2

                                       */s/ Thomas G. Jarrard*
3                                      Thomas G. Jarrard
                                       The Law Office of Thomas G. Jarrard, PLLC
4                                      1020 N. Washington
                                       Spokane, WA 99201
5                                      Telephone: (425) 239-7290
                                       Email: tjarrard@att.net
6
                                       R. Joseph Barton
7                                      Block & Leviton LLP
                                       1735 20th Street, N.W.
8                                      Washington D.C. 20009
                                       Telephone: 202-734-7046
9                                      Email: jbarton@blockesq.com

10                                     Jason Leviton
                                       Block & Leviton LLP
11                                     155 Federal Street, Suite 400
                                       Boston MA 02110
12                                     Telephone: 617-398-5660
                                       Email: jason@blockesq.com
13
                                       James R. Sweetser
14                                     Marcus Sweetser
                                       Sweetser Law Office
15                                     1020 N. Washington St.
                                       Spokane WA 99201
16                                     Telephone: 509-328-0678
                                       Email: jsweets@sweetserlawoffice.com
17                                     Email: marcussweetser@gmail.com

18                                     *Attorneys for Plaintiff and the Class*

19

20

21

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 26

1

## CERTIFICATE OF SERVICE

2          I hereby certify that on October 25, 2019 I caused to be filed electronically a

3   true copy of the foregoing document using the CM/ECF system which effected

4   service of the same upon all counsel of record.

5                                        */s/ Thomas G. Jarrard*
                                         Thomas G. Jarrard
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21