1   Thomas G. Jarrard
    The Law Office of Thomas G. Jarrard, PLLC
2   1020 N. Washington
    Spokane, WA 99201
3   Telephone: (425) 239-7290
    Email: tjarrard@att.net
4

5

6

7                   **UNITED STATES DISTRICT COURT**
                    **EASTERN DISTRICT OF WASHINGTON**
8
    JADE WILCOX, on behalf of herself      )   Case No. 2:17-cv-275-RMP
9   and all others similarly situated,     )
                                           )   Related to Case No. 2:17-cv-122-
10                Plaintiffs,              )   RMP
                                           )
11        v.                               )   **CLASS COUNSELS' MOTION**
                                           )   **FOR ATTORNEYS' FEES AND**
12  SWAPP LAW, PLLC, d/b/a CRAIG           )   **LITIGATION EXPENSES**
    SWAPP AND ASSOCIATES, and              )
13  JAMES CRAIG SWAPP,                     )
    individually,                          )
14                                         )
                  Defendants               )
15                                         )
                                           )
16  _____       )

17

18

19

20

21

# **TABLE OF CONTENTS**

Table of Authorities ......................................................Error! Bookmark not defined.

Index of Exhibits .................................................................. vii

Summary of Counsel's Rates, Hours, and Expenses ......................................... viii

Memorandum of Points and Authorities ...................................................1

    I.    Background Facts..........................................................1

        A.    The Investigation .................................................1

        B.    Procedural History..................................................3

        C.    Settlement Negotiations and the Settlement Agreement.......5

        D.    Notice to Class Members ............................................7

    II.    Class Counsel are Entitled to their Lodestar Fees .....................7

        A.    The Hourly Rates of Plaintiff's Counsel are Reasonable......9

        B.    The Hours Expended by Plaintiff's Counsel are Reasonable ......................................................13

        C.    The Benefit Obtained for the Class is Significant...............16

        D.    There is No Collusion Between the Parties............................19

    III.    Alternatively, the Court Can Award Fees Based on the Common Fund ....................................................................22

    IV.    Plaintiff's Counsel's Cost Request Should be Approved ..............23

Conclusion...........................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989)....................................................22

*Anderson v. AB Painting & Sandblasting, Inc.*,
  578 F.3d 542 (7th Cir. 2009) .........................................................20

*Andrews v. Sirius XM Radio Inc.*,
  932 F.3d 1253 (9th Cir. 2019) .......................................................19

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ..............................................8, 9, 17, 19

*Blum v. Stenson*,
  465 U.S. 886 (1984)......................................................................10

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)......................................................................22

*Bravo v. City of Santa Maria*,
  810 F.3d 659 (9th Cir. 2016) .....................................................9, 17

*Camacho v. Bridgeport Fin. Inc.*,
  523 F.3d 973 (9th Cir. 2008) ........................................................10

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. 07 CV 5944, 2016 WL 4126533 (N.D. Cal. Aug. 3, 2016)........................24

*Charlebois v. Angels Baseball LP*,
  993 F. Supp. 2d 1109 (C.D. Cal. 2012) ...........................................13

*Chaudhry v. City of Los Angeles*,
  751 F.3d 1096 (9th Cir. 2014) ......................................................10

*Chrapliwy v. Uniroyal, Inc.*,
  670 F.2d 760 (7th Cir. 1982) ........................................................12

*Craft v. Cty. of San Bernardino*,
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................................................23

*Davis v. City & County of San Francisco*,
    976 F.2d 1536 (9th Cir. 1992), *vacated in other part by* 984 F.2d
    345 (9th Cir. 1993) ..................................................................................................24

*Dowd v. City of Los Angeles*,
    28 F. Supp. 3d 1019 (C.D. Cal. 2014) ..................................................................21

*In re Facebook Privacy Litig.*,
    572 F. App'x 494 (9th Cir. 2014) ..........................................................................18

*Fair Hous. v. Combs*,
    285 F.3d 899 (9th Cir. 2002) ..................................................................................20

*In re Ferrero Litig.*,
    583 F. App'x 665 (9th Cir. 2014) ..........................................................................21

*Fresco v. Auto. Directions, Inc.*,
    No. 03 CV 61063, 2009 WL 9054828 (S.D. Fla. Jan. 20, 2009) ..........................8

*G. F. v. Contra Costa Cty*,
    No. 13 CV 3667, 2015 WL 7571789 (N.D. Cal. Nov. 25, 2015)................20, 21

*Gordon v. Virtumundo, Inc.*,
    No. 06 CV 204, 2007 WL 2253296 (W.D. Wash. Aug 1. 2007) ..........................24

*Guerrero v. Cal. Dep't of Corr. & Rehab.*,
    No. 13 CV 5671, 2016 WL 3360638 (N.D. Cal. June 16, 2016) ..........................20

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ......................................................................................24

*Harris v. Amgen Inc.*,
    No. CV075442PSGPLAX, 2017 WL 6048215 (C.D. Cal. Apr. 4,
    2017) .........................................................................................................................24

*Hartford Cas. Ins. v. Swapp Law, PLLC*,
    No. 17 CV 1130, 2019 WL 3500520 (D. Utah Aug. 1, 2019) ..............................12

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)..............................................................................8, 9, 10, 13

*Jacobson v. Wash. State Univ.*,
  No. 05 CV 92, 2007 WL 9717373 (E.D. Wash. Nov. 16, 2007) .......................20

*Kelly v. Wengler*,
  822 F.3d 1085 (9th Cir. 2016) ...........................................................................8

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) .............................................................................7

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996), *amended,* 108 F.3d 981 (9th Cir.
  1997) ..................................................................................................................21

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) .....................................................................10, 13

*Muniz v. United Parcel Serv., Inc.*,
  738 F.3d 214 (9th Cir. 2013) ...........................................................................20

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008)............................................................22

*Pavone v. Meyerkord & Meyerkord, LLC*,
  321 F.R.D. 314 (N.D. Ill. 2017)........................................................................18

*Roberts v. Source for Pub. Data, LP*,
  No. 08 CV 4167, 2010 WL 2195523 (W.D. Mo. May 28, 2010*)* .....................17

*Sako v. Wells Fargo Bank. N.A.*,
  No. 14 CV 1034, 2016 WL 2745346 (S.D. Cal. May 11, 2016).......................21

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ......................................................................8, 23

*Spell v. McDaniel*,
  616 F. Supp. 1069 (E.D.N.C. 1985) .................................................................12

*Stanger v. China Elec. Motor, Inc.*,
  812 F.3d 734 (9th Cir. 2016) ...........................................................................8, 9

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .............................................................................7

*Svenson v. Google Inc.*,
  No. 13 CV 4080, 2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) .........................18

*Taylor v. City of Amboy*,
  No. 14 CV 722, 2017 WL 4075163 (D. Minn. Sept. 14, 2017) ..........................8

*Trs. of the Const. Indus. and Laborers Health and Welfare Tr. v.*
  *Redland Ins. Co.*,
  460 F.3d 1253 (9th Cir. 2006) ..........................................................................24

*Truesdell v. Thomas*,
  No. 13 CV 552, 2015 WL 12681655 (M.D. Fla. Feb. 13,
  2015), *report and recommendation adopted,* 2015 WL 12698396
  (M.D. Fla. Mar. 17, 2015)..................................................................................18

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
  896 F.2d 403 (9th Cir. 1990) .............................................................................10

*Van Gerwen v. Guar. Mut. Life Co.*,
  214 F.3d 1041 (9th Cir. 2000) ..................................................................8, 10, 13

*Vedachalam v. Tata Consultancy Servs.*,
  No. 06 CV 963, 2013 WL 3941319 (N.D. Cal. July 18, 2013)..........................23

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ...........................................................................23

*Wallis v. BNSF Ry. Co.*,
  *No*. 13 CV 40, 2014 WL 1648472 (W.D. Wash. Apr. 23, 2014)......................21

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) .............................................................................11

*Wilcox v. Bastiste*,
  No. 17 CV 122, 2017 WL 2525309 (E.D. Wash. June 9, 2017).........................1

*Wren v. RGIS Inventory Specialists*,
  No. 06 CV 5778, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011),
  *supplemented*, 2011 WL 1838562 (N.D. Cal. May 13, 2011)....................13, 14

*Zamora Jordan v. Nationstar Mortg., LLC*,
  No. 14 CV 175, 2019 WL 1966112 (E.D. Wash. May 2, 2019)........................10

1

**Statutes**

2

18 U.S.C. § 2721 ........................................................................................2

3

18 U.S.C. § 2722(a) ...................................................................................2

18 U.S.C. § 2724(b)(1)...............................................................................3

4

18 U.S.C. § 2724(b)(3).........................................................................22, 23

5

18 U.S.C. § 2724(b)(4)...............................................................................8

6

18 U.S.C. § 2725(3) ...................................................................................2

7

**Other Authorities**

8

Fed. R. Civ. P. 12(b)(6)...............................................................................3

9

Fed. R. Civ. P. 23(f) ...................................................................................5

Fed. R. Civ. P. 23(h) ...............................................................................1, 7

10

Fed. R. Civ. P. 30(b)(6).........................................................................3, 14

11

12

13

14

15

16

17

18

19

20

21

Class Counsels' Motion for Attorneys' Fees and Litigation Expenses - vi

1

## INDEX OF EXHIBITS

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

**SUMMARY OF COUNSEL'S RATES, HOURS, AND EXPENSES**
**Block & Leviton LLP Rates and Hours[1]**

| Name | 2017 Rate | 2018 Rate | 2019 Rate | 2020 Rate | Hours | Total (current rates) | Total (historical rates |
|------|-----------|-----------|-----------|-----------|-------|----------------------|-------------------------|
| Joe Barton (Partner) | $710 | $750 | $825 | $875 | 451.3 | $394,887.50 | $342,059.50 |
| Jason Leviton (Partner) | $725 | $765 | $825 | $875 | 7.9 | $6,912.50 | $5,869.50 |
| Thomas Kirchofer (Associate, J.D. '06) | $600 | | | | 645.6 | $401,349.00 | $92,392.50 |
| Matt Smith (Associate, J.D. '11) | | $600 | | | 22.5 | $14,625.00 | $399,954.00 |
| Colin Downes (Associate, J.D. '15) | | $425 | $450 | $475 | 210.3 | $99,892.50 | $13,500.00 |
| Ming Siegel (Paralegal, B.A. '16) | $225 | $235 | $250 | $265 | 267.7 | $70,940.50 | $63,535.00 |
| **Total** | | | | | | $988,607.00 | $917,310.50 |

---

[1] Barton Decl. ¶ 2.

**Block & Leviton LLP Hours at Lane Powell Comparator Rates[2]**

| Name | Lane Powell (Comparator) Rate | Hours | Total |
|---|---|---|---|
| Joe Barton (Partner) | $645 (B. Duffy) | 451.3 | $291,088.50 |
| Jason Leviton (Partner) | $540 (R. McBride) | 7.9 | $4,226.50 |
| Thomas Kirchofer (Associate, J.D. '06) | $450 (T. Washburn) | 645.6 | $290,520.00 |
| Matt Smith (Associate, J.D. '11) | $450 (T. Washburn) | 22.5 | $10,125.00 |
| Colin Downes (Associate, J.D. '15) | $330 (A. Schaer) | 210.3 | $69,399.00 |
| Ming Siegel (Paralegal, B.A. '16) | $265[3] | 267.7 | $70,940.50 |
| **Total** | █████████████ | 1605.3 | **$736,339.00** |

**Law Office of Thomas G. Jarrard, PLLC Rates and Hours[4]**

| Name | Rate | Hours | Total |
|---|---|---|---|
| Thomas G. Jarrard (Partner) | $450 | 253 | $113,850.00 |
| Robert A. Jarrard (Legal Assistant) | $75 | 43.5 | $3,262.50 |
| **Total** | ████████ | 298.5 | $117,112.50 |

---

[2] Barton Decl. ¶ 2, 18; Barton Decl. Ex. A at 7, 18-24.

[3] Ms. Siegel's billing rates are below that of any paralegal Lane Powell staffed to this case. See Barton Decl. Ex. A at ¶¶ 20, 24.

[4] Jarrard Decl. ¶ 20.

## Sweetser Law Office [5]

| Name | Rate | Hours | Total |
|---|---|---|---|
| Jim Sweetser (Partner) | $550.00 | 173.85 | $95,617.00 |
| Marcus Sweetser (Partner) | $375.00 | 95.95 | $35,981.25 |
| Daniel Eigler (Associate) | $300.00 | 2.7 | $810.00 |
| Kizzie Johnson (Paralegal) | $200.00 | 61.71 | $9,256.50 |
| Total | ██████ | 334.21 | $141,665.75 |

## Summary of Combined Fee Requests

| Firm | Hours | Fees |
|---|---|---|
| Block & Leviton LLP | 1,605.3 | $988,607.00 |
| Law Office of Thomas G. Jarrard PLLC | 298.5 | $117,112.50 |
| Sweetser Law Office | 334.21 | $141,665.75 |
| Total | 2,238 | $1,247,385.25 |

## Summary of Combined Litigation Expenses

| Firm | Expenses |
|---|---|
| Block & Leviton LLP | $47,918.53 |
| Law Office of Thomas G. Jarrard PLLC | $2,401.03 |
| Sweetser Law Office | $5,139.56 |
| Total | $55,459.12 |

---

[5] Sweetser Decl. ¶ 15.

Class Counsels' Motion for Attorneys' Fees and Litigation Expenses - x

1    Pursuant to Fed. R. Civ. P. 23(h), Class Counsel hereby moves the Court for

2    an order (1) awarding Plaintiff's Counsel up to $1,247,385.25 in attorneys' fees; and

3    (2) reimbursement of litigation expenses incurred.

**MEMORANDUM OF POINTS AND AUTHORITIES**

4

5    **I.    Background Facts**

6        **A.    The Investigation**

7        In early 2015, Plaintiff's counsel James Sweetser began investigating the

8    business practices of James Craig Swapp and his law firm, Craig Swapp and

9    Associates ("Swapp"). In the State of Washington, law enforcement officers use

10    standard PTCRs to document vehicle accidents. ECF No. 62-2 at 8:9-16; ECF No.

11    61-2 at 23:5-8. Before June 9, 2017, the Washington State Patrol ("WSP")

12    routinely sold PTCRs—containing drivers' names and addresses—to anyone who

13    wished to buy them through the WSP website. ECF No. 62-2 at 25:21-26:22; *see*

14    *Wilcox v. Bastiste*, No. 17 CV 122, 2017 WL 2525309 at *4 (E.D. Wash. June 9,

15    2017). Mr. Sweetser learned that Swapp routinely purchased thousands of PTCRs

16    for the purpose of soliciting potential clients for personal injury work. ECF No. 61-

17    7 at Nos. 2(a), (b) and (c). The Sweetser Law Office conducted an investigation

18    into the practices and policies of the WSP in connection with the collection and

19    dissemination of PTCRs. Sweetser also investigated the nature and extent of

20    Swapp Law's PTCR-driven marketing practices and whether they complied with

21

Class Counsels' Motion for Attorneys' Fees and Litigation Expenses - 1

relevant law and ethics rules, including the Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et seq*. ("DPPA). Sweetser Decl. ¶ 7.

The DPPA makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under Section 2721(b)" of the DPPA. 18 U.S.C. § 2722(a). The DPPA defines personal information to mean "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, [and] address...."18 U.S.C. § 2725(3). The PTCRs contain information identifying individuals, including names and addresses, and the police generally obtain this information from drivers' licenses or registrations to prepare PTCRs. Based on his firm's investigation and analysis, Mr. Sweetser concluded Swapp's practices violated the DPPA.

Plaintiff Jade Wilcox consulted with and retained the Sweetser Law Office on August 10, 2016, for injuries related to two traffic collisions on August 1, 2015 and July 9, 2016. But prior to retaining Sweetser Law Office, Ms. Wilcox had received a received a letter from Swapp that offered legal services and stated they learned "from Washington public records" that she was "involved in a serious accident on July 9." ECF No. 62-1 at 1. The letter enclosed a booklet advertising Swapp. *Id*. Ms. Wilcox considered the way "they got my address" to be "an invasion of [her] privacy." ECF No. 62-3 at 94:19-24. Ms. Wilcox then also

retained Sweetser to bring a class action lawsuit against Swapp for violations of the DPPA on August 3, 2017.

### B.    Procedural History

The initial complaint was filed on August 9, 2017. ECF No. 1. The Complaint requested relief on behalf of a Class of other drivers whose personal information was obtained or used by Defendants consisting of declaratory and injunctive relief aimed at preventing and restraining Defendants' practice of illegally obtaining PCTRs, and from disclosing or using the DPPA-protected information in their possession, statutorily provided liquidated damages of $2,500 for each violation of the DPPA under 18 U.S.C. § 2724(b)(1). Am Compl. at Prayer for Relief ¶¶ A-I.

Defendants responded to the Complaint by filing a motion to dismiss under Rule 12(b)(6), which the Court denied, ECF No. 21. Defendants then answered the Complaint and asserted 14 affirmative defenses. ECF No. 22. During the course of discovery, Class Counsel issued 24 interrogatories and 33 documents requests to Defendants and reviewed more than 40,000 pages of documents produced by them. ECF No. 139-1 ¶ 3; Barton Decl. ¶ 15. Class Counsel took depositions under Rule 30(b)(6) of the Washington Department of Licensing, the Washington State Patrol (in depositions spanning two days), the Washington State Criminal Justice Training Commission, and the Spokane Police Department. ECF No. 139-1 ¶ 5.

1    Class Counsel also defended Defendants' deposition of Plaintiff Jade Wilcox. *Id.*

2    Class Counsel filed two motions to compel seeking responses to interrogatories,

3    which were granted in part. ECF No. 139-1 ¶ 3; ECF Nos. 65 & 79. Class Counsel

4    also successfully opposed Defendants motion to compel discovery from one of

5    Plaintiffs' counsel. ECF No. 139-1 ¶ 4; ECF Nos. 75, 84, 106.

6        Based on information obtained in discovery, Plaintiff filed an Amended

7    Complaint that added to the factual allegations, but did not add any new legal

8    claim. ECF No. 69. Defendants moved to dismiss the Amended Complaint, which

9    the Court denied. ECF Nos. 80, 108. After extensive discovery, Plaintiff moved for

10   Class Certification of the Class, which the Court granted. ECF Nos. 61 & 109. The

11   Class certified by the Court is defined as:

12       All drivers identified in Police Traffic Collision Reports whose
         Personal Information, as defined by the DPPA, was derived from a
13       Department of Licensing record (e.g. license, registration or database)
         and the Report was obtained or used by the Swapp Law Firm (d/b/a
14       Craig Swapp & Associates) or Mr. Swapp from the Washington State
         Patrol between September 1, 2013 and June 23, 2017.[6]
15
     *Id.* at 30. Defendants subsequently filed motions to reconsider class certification, to
16

17       [6] Excluded from the Class are (a) current and former clients of
     Defendants; (b) individuals identified on the same PTCRs as Defendants'
18   clients; (c) individuals who provided written consent to Defendants for the
     disclosure of their Personal Information (as defined by the DPPA) prior to
19   Defendants obtaining their personal information; (d) employees (and
     attorneys) of Defendants and members of their immediate families; and (e)
20   the presiding judge and anyone working in the presiding judge's chambers
     and the members of their families.

21   Class Counsels' Motion for Attorneys' Fees and Litigation Expenses - 4

1    certify the order on the Second Motion to Dismiss for interlocutory review, and

2    announced the intention to seek interlocutory review of class certification by the

3    Ninth Circuit under Rule 23(f), ECF No. 113, 115 at 3 n.1. At the request of the

4    parties and with these motions pending, the case was stayed and referred to Hon.

5    Lonny Suko for mediation. ECF No. 117.

6    **C.    Settlement Negotiations and the Settlement Agreement**.

7    Plaintiff's counsel sent a settlement demand to Defendants in May of 2018.

8    Barton Decl. ¶ 16. Defendants did not respond to that demand until after the Parties

9    had requested mediation with Judge Suko. *Id.* Before mediation, Class Counsel

10    requested, obtained and reviewed a significant amount of financial materials in

11    order to evaluate Defendants' ability to satisfy a potential judgment in this case.

12    ECF No. 139-1 at ¶ 7. As part of their review, Class Counsel hired an economist to

13    assist in understanding the documents and evaluating Defendants' finances. *Id*. The

14    Parties exchanged pre-mediation settlement offers and then attended an in-person

15    mediation session on May 23, 2019 with Senior Judge Lonny Suko. *Id.* ¶ 9. An

16    agreement in principle was reached only at the end of the all-day mediation

17    session. *Id.*

18    Following further negotiation, the parties then entered into the formal

19    Settlement Agreement on October 25, 2019. The Court granted preliminary

20    approval to the Settlement Agreement on November 27, 2019. ECF No. 141.

21

Class Counsels' Motion for Attorneys' Fees and Litigation Expenses - 5

1    The terms of the proposed settlement between Plaintiff and Defendants

2    provide both a monetary and non-monetary consideration. ECF No. 139-2

3    ("Agmt.") §§ 4, 6. Under the Settlement, Defendants agreed to refrain from

4    purchasing PTCRs in or from the State of Washington for the purpose of acquiring

5    contact information for potential clients and sending marketing materials to them.

6    *Id*. § 6.1. Defendants also agree that they will cease using any such PTCRs for

7    those purposes, and will, within 120 days after the final distribution to the Class

8    Members, destroy all such PTCRs and personal information taken from them. *Id*. §

9    6.3-4. Defendants also agreed to notify Class Counsel of any third parties to whom

10   Defendants have provided such PTCRs (or personal information from the PTCRs),

11   and will notify such third parties that Plaintiff and the Class consider those records

12   to contain information protected by the DPPA. *Id*. § 6.5-6. In short, the Settlement

13   Agreement provides all of the non-monetary relief requested in the Complaint.

14       Defendants agreed to pay (1) $950,000 into a Settlement Fund, which minus

15   only settlement administration expenses, will be paid to the Class (and which will

16   be fully funded by June 1, 2020); and (2) between $900,000 and $1.05 million

17   (depending on whether the amount is paid by December 1, 2020 or paid over three

18   years), out of which any award of attorneys' fees, litigation expenses and class

19   representative service award, and if there are any remaining amounts, the

20   remainder will be paid to the Settlement Fund. Agmt. §§ 4.1, 4.2.

21

Class Counsels' Motion for Attorneys' Fees and Litigation Expenses - 6

1    The Net Settlement Fund will be paid to the Class Members pursuant to a

2    Plan of Allocation that proposes that Settlement Fund will be evenly divided

3    among all Class Members and that Class Members will receive a payment without

4    needing to complete a claim form. ECF No. 139-4 at 3. Distribution of the

5    Settlement Funds to Class Members without a claims process should greatly

6    increase the number of persons who actually benefit from the Settlement.

7                          **D. Notice to Class Members**

8         The Class Notice, which describes Plaintiffs' request for attorneys' fees and

9    litigation expenses, was sent to Class Members by U.S. Mail on January 8, 2020

10   and posted on the settlement website. ECF No. 142. No objections have been

11   received.

12   **II.    Class Counsel are Entitled to their Lodestar Fees**

13        "Attorneys' fees provisions included in proposed class action settlement

14   agreements are, like every other aspect of such agreements, subject to the

15   determination of whether the settlement is 'fundamentally fair, adequate, and

16   reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting

17   Fed. R. Civ. P. 23(e)). Rule 23(h) "requires that any class member be allowed an

18   opportunity to object to the fee 'motion' itself." *In re Mercury Interactive Corp.*

19   *Sec. Litig.*, 618 F.3d 988, 993-994 (9th Cir. 2010). This Court's Preliminary

20   Approval Order set the date consistent with that requirement. ECF No. 141 at 6.

21

Class Counsels' Motion for Attorneys' Fees and Litigation Expenses - 7

Courts generally use the lodestar method to award fees under statutes like

the DPPA, which provide for fee shifting. *In re Bluetooth Headset Prods. Liab.*

*Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("The 'lodestar method' is appropriate in

class actions brought under fee-shifting statutes"); *Six (6) Mexican Workers v. Ariz.*

*Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (explaining that "statutory

awards of attorneys' fees are subject to 'lodestar' calculation procedures"); *see*

*Taylor v. City of Amboy*, No. 14 CV 722, 2017 WL 4075163, at *1 (D. Minn. Sept.

14, 2017) (applying lodestar method to award fees in DPPA case); *Fresco v. Auto.*

*Directions, Inc.*, No. 03 CV 61063, 2009 WL 9054828, at *8 (S.D. Fla. Jan. 20,

2009) (same); *see also* 18 U.S.C. § 2724(b)(4) (providing court may award

"reasonable attorneys' fees and other litigation costs reasonably incurred").

The lodestar method consists of two steps. *Kelly v. Wengler*, 822 F.3d 1085,

1099 (9th Cir. 2016). *First*, a court multiplies a reasonable number of hours

expended on the litigation by a reasonable hourly rate to arrive at a lodestar figure.

*Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016); *Kelly*, 822

F.3d at 1099. *Second,* the court determines whether to adjust the lodestar figure

upward or downward using a multiplier based on factors not subsumed in the

lodestar calculation. *Id.*; *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045

(9th Cir. 2000).[7] Among those factors, "the degree of success obtained is the most

---

[7] Under *Hensley v. Eckerhart*, 11 factors are relevant to the determination of the

Class Counsels' Motion for Attorneys' Fees and Litigation Expenses - 8

critical factor in determining the reasonableness of a fee award." *Bravo v. City of Santa Maria*, 810 F.3d 659, 666 (9th Cir. 2016); *In re Bluetooth,* 654 F.3d at 942 (the most crucial factor is "the benefit obtained for the class"). "Because there is a strong presumption that the lodestar represents a reasonable fee, adjustments to the lodestar are the exception rather than the rule." *Stanger*, 812 F.3d at 738. If there be "warning signs" of collusion the court must examine whether the settlement "does not betray the class's interests." *In re Bluetooth*, 654 F.3d at 947, 949.

Here, the claims of the Class are brought under a fee-shifting statute, and the lodestar method applies. Because the hourly rates of Plaintiff's counsel and the hours expended on this litigation are reasonable, the lodestar is reasonable. As the monetary and non-monetary benefits obtained for the Class are significant, the lodestar figure should not be adjusted downward. Further, there is no collusion between the parties.

### A. The Hourly Rates of Plaintiff's Counsel are Reasonable

A reasonable number of hours expended by a party's counsel "is calculated

---

amount of attorney's fees: (1) time and labor required; (2) novelty and difficulty of the issues; (3) skill requisite to perform the legal service properly; (4) preclusion of employment by the attorney due to acceptance of the case; (5) customary fee; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and the results obtained; (8) experience, reputation and ability of the attorneys; (9) "undesirability" of the case; (10) nature and length of the professional relationship with the client; and (11) awards in similar cases. 461 U.S. 424, 430 n.3 (1983).

by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Counsel are expected to "make a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *Van Gerwen*, 214 F.3d at 1045 (citing *Hensely*). The established standard for determining a reasonable hourly rate is the rate "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Camacho v. Bridgeport Fin. Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). A reasonable hourly rate should account for factors such as the attorney's customary hourly billing rate, the level of skill required by the litigation, the time limitations imposed on the litigation, the amount of potential recovery, the attorney's reputation, and the undesirability of the case. *Zamora Jordan v. Nationstar Mortg., LLC,* No. 14 CV 175, 2019 WL 1966112, at *8 (E.D. Wash. May 2, 2019). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014).

　　Here, the hourly rates charged by Plaintiff' counsel are based on each

Class Counsels' Motion for Attorneys' Fees and Litigation Expenses - 10

professional's position, experience, and expertise. Block & Leviton LLP's rates fall between $225 and $875. Barton Decl. ¶ 2-3. These rates represent the customary billing rates for the firm's professionals and the level of skill required in a complex class action case of this type. Barton Decl. ¶ 3. Historical rates for all years in which professionals billed time to this case are provided along with current rates for all professionals still employed by Block & Leviton LLP. A "district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of the litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement." *In re Washington Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1305 (9th Cir. 1994).

Courts have recognized Block & Leviton's and specifically Mr. Barton's significant experience with complex class action litigation and approved their customary rates in other cases. Barton Decl. ¶ 7. Comparisons to Block & Leviton's paying clients and to opposing counsel also establish the reasonableness of Block & Leviton's billing rates. Not only have Mr. Barton's and Block & Leviton's customary rates been repeatedly approved by courts, but private clients pay them. Both a Fortune 100 company and a major private insurer have previously retained Mr. Barton and Block & Leviton at their customary rates. Barton Decl. ¶ 6. Both sides in this litigation recognized this case was complex and

Class Counsels' Motion for Attorneys' Fees and Litigation Expenses - 11

sought specialized counsel from outside the jurisdiction: Defendants lead counsel

in this litigation, Seattle-based Barbara Duffy of Lane Powell, billed for her and

her team's time at a similar payscale of $540-$645 for partners and $330-$450

associates. Barton Decl. Ex. A ¶ 19-24. *Hartford Cas. Ins. v. Swapp Law, PLLC*,

No. 17 CV 1130, 2019 WL 3500520, at *2 (D. Utah Aug. 1, 2019); s*ee Chrapliwy

v. Uniroyal, Inc.*, 670 F.2d 760, 768 n.18 (7th Cir. 1982) ("The rates charged by

the defendant's attorneys provide a useful guide to rates customarily charged in

this type of case" and when "defendant has hired expensive, out of town counsel,

the plaintiffs seem justified in saying that the nature of the case required the skills

of out of town specialists."); *Spell v. McDaniel*, 616 F. Supp. 1069, 1092

(E.D.N.C. 1985) (rejecting attempt by "defendants … to invoke a double standard

for this fee litigation—one set of rules governing payment of defense counsel and

quite another for plaintiff's counsel."). Block & Leviton has provided an

alternative payscale using similarly experienced attorneys at Lane Powell as

comparators. Barton Decl. ¶ 18.

Thomas G. Jarrard's hourly rate of $450 for Thomas G. Jarrard (Partner) and

$75 for Robert A. Jarrard (Legal Assistant). These rates represent the customary

billing rates for the firm in federal court class litigation over the past several years.

Jarrard Decl. ¶ 16. Numerous courts have approved these rates, including in class

litigation in this district. Jarrard Decl. ¶ 17.

The Sweetser Law Offices rates for professionals associated with the firm who have performed work on this case from between $150 and $550. These rates are commensurate with other attorneys and professionals billing for federal class litigation done in the Spokane community with a similar level of experience. Sweetser Decl. ¶ 10.

## B. The Hours Expended by Plaintiff's Counsel are Reasonable

A reasonable number of hours expended by a party's counsel "is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno*, 534 F.3d at 1111. Counsel are expected to "make a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *Van Gerwen*, 214 F.3d at 1045 (citing *Hensely*). "To reduce the number of hours worked, it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1123 (C.D. Cal. 2012). In assessing the reasonableness of the hours expended, courts have taken into account the fact that the amount of time billed by a plaintiff's counsel "is in large part a result of [a defendant's] aggressive defense strategy." *E.g.*, *Wren v. RGIS Inventory Specialists*, No. 06 CV 5778, 2011 WL 1230826, at *26 (N.D. Cal. Apr. 1, 2011), *supplemented*, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

Class Counsels' Motion for Attorneys' Fees and Litigation Expenses - 13

Plaintiff's counsel performed significant work to litigate this case vigorously and efficiently. For purposes of preparing the Complaint and the Amended Complaint, Plaintiff's counsel conducted extensive factual and legal investigations of the Washington State Patrol's processes for recording, collecting, storing, and disseminating PTCRs. Sweetser Decl. ¶ 7. During the course of this contentious and complex case, Class Counsel briefed and argued Plaintiff's oppositions to Defendants' two motions to dismiss. Barton Decl. ¶ 3.

Plaintiff's counsel also engaged in extensive discovery. Plaintiff issued 24 interrogatories and 33 document requests to Defendants. Class Counsel reviewed more than 40,000 pages produced by Defendants and non-parties in discovery, and produced more than 11,000 pages. Plaintiff's counsel took five days of depositions: Rule 30(b)(6) depositions of the Washington Department of Licensing, the Washington State Patrol, the Washington State Criminal Justice Training Commission, and the Spokane Police Department. ECF No. 139-1 ¶ 5. Class Counsel filed two motions to compel seeking responses to interrogatories, which were granted in part. ECF No. 139-1 ¶ 3; ECF Nos. 65 & 79. Class Counsel defended Defendants' deposition of Jade Wilcox and responded to 18 requests for production of documents and 13 interrogatories. *Id.* Class Counsel also briefed, argued, and secured certification of the class.

1    Only after a Class was certified and Defendants' second motion to dismiss

2 was denied were Defendants interested in discussing settlement. Class Counsel

3 then negotiated the Settlement at an all-day mediation. ECF No. 139-1 ¶ 11.

4 Preparation for this mediation included requesting and reviewing extensive

5 financial records in order understand the realistic ability of Defendants to satisfy a

6 judgment were the case to proceed to trial. *Id.* at ¶¶ 7-8.

7    Wide-scale class discovery, class certifications, and dispositive motions are

8 routine in class actions. But this case presented complicated legal issues in the

9 unsettled area of interpretation of the DPPA. These included whether drivers'

10 licenses and motor vehicle registrations are motor vehicle records for purposes of

11 the DPPA and whether a plaintiff need show actual pecuniary harm in order to

12 establish entitlement to liquidated damages. Furthermore, the complexity of factual

13 issues relating to the WSP and other state law enforcement's policies and

14 procedures in the creation, collection, and dissemination of PTCRs made these

15 litigation components contentious and demanding. Barton Decl. ¶¶ 3, 8. And the

16 time spent by Class Counsel was in part caused by Defense counsel's aggressive

17 defense: while the total attorneys' fees and number of hours spent by Defendants'

18 counsel to date in defending this case are not known to Plaintiff, Defendant had

19 amassed approximately $718,000 in legal bills as of November 6, 2018. Barton

20 Decl. Ex. A ¶ 26. Thus, the amount of time expended by Plaintiff's counsel to

21

Class Counsels' Motion for Attorneys' Fees and Litigation Expenses - 15

litigate this case, including the time spent on opposing Defendants' motions to dismiss and moving to compel discovery responses and for class certification, was necessary.

To litigate this case efficiently, Class Counsel assigned work to junior attorneys and paralegals with lower hourly rates as appropriate. Barton Decl. ¶ 4; Jarrard Decl. ¶ 18; Sweetser Decl. ¶¶ 13-14. The Co-Class Counsel coordinated their work to avoid unnecessary duplication of effort. Barton Decl. ¶ 4; Jarrard Decl. ¶ 18. Attorneys from only one of the two Class Counsel appeared at any deposition and many of the depositions were taken by a Block & Leviton associate. Barton Decl. ¶ 4; Jarrard Decl. ¶ 18. Prior to filing their motion for attorneys' fees, counsel from each firm reviewed time entries, and, just as counsel would prior to sending bills to paying clients, removed time entries for duplicative or unnecessary work that ordinarily would not be billed client. Barton Decl. ¶ 5; Jarrard Decl. ¶ 18; Sweetser Decl. ¶ 16. The lodestar figure submitted by Plaintiff's counsel in support of their request for fees reflects these adjustments. In light of efforts by Plaintiff's counsel to litigate this case efficiently, as well as the significant work performed over the past two and a half years, the complexity of the legal issues presented, and Defendants' aggressive defense, the 2,238 hours expended by Plaintiff's counsel to date are reasonable.

**C. The Benefit Obtained for the Class is Significant**

A court may adjust a lodestar figure upward or downward by considering "the benefit obtained for the class." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942; *Bravo*, 810 F.3d at 666 ("the degree of success obtained is the most critical factor"). Here, Plaintiff's counsel does *not* seek an enhancement of lodestar, although the benefit obtained for the Class is significant, particularly in light of the uncertainties of establishing liability and relief.

Non-monetary relief in the form of changes to business practices and removal of protected information from the possession of Defendants accomplishes the privacy purposes of the DPPA. *See Roberts v. Source for Pub. Data, LP*, No. 08 CV 4167, 2010 WL 2195523, at *3 (W.D. Mo. May 28, 2010) (holding return and removal of DPPA-protected information alone, with no monetary component, constituted reasonable and satisfactory terms of settlement). Under the Settlement, Swapp is required to destroy the PTCRs or other records containing the personal information of Class Members and cannot use that personal information for any purpose. Agmt. § 6.2-4. Swapp is also required to notify third parties to whom they have transmitted the personal information of Class Members that the Class consider that information protected by the DPPA. Agmt. § 6.6. Swapp will no longer purchase PTCRs in or from the State of Washington for the purpose of soliciting clients. Agmt. § 6.1. This relief has value to the Class as courts have recognized that personal information has economic value. *In re Facebook Privacy*

*Litig.*, 572 F. App'x 494 (9th Cir. 2014) (holding allegation of loss of sales value of personal information sufficient to plead damages); *Svenson v. Google Inc.*, No. 13 CV 4080, 2015 WL 1503429, at *5 (N.D. Cal. Apr. 1, 2015) (same).

The monetary component of the Settlement is also substantial. The Class will receive at least $950,000 (minus settlement administration costs), or $30.77 per Class member. While a judgment for the Class at trial could have been up to $25 million, Swapp would not be unlikely to be able to pay anything more than a fraction of the potential damages. ECF No. 139-1 ¶¶ 7- 8.

Given the major factual and legal disputes in this litigation, the complexity of litigating pattern or practice discrimination actions, and the low success rate of class actions brought under the DPPA, the result in this case is outstanding. *See Pavone v. Meyerkord & Meyerkord, LLC,* 321 F.R.D. 314 (N.D. Ill. 2017) (denying motion for class certification in DPPA case); *Truesdell v. Thomas*, No. 13 CV 552, 2015 WL 12681655, at *11 (M.D. Fla. Feb. 13, 2015), *report and recommendation adopted,* 2015 WL 12698396 (M.D. Fla. Mar. 17, 2015) (same).

These results are particularly favorable in light of caselaw decided after the mediation. The Ninth Circuit held that where the "source of personal information is a record in the possession of an individual, rather than a state DMV, then use or disclosure of that information does not violate the DPPA." *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1260 (9th Cir. 2019). While not dispositive of this case

Class Counsels' Motion for Attorneys' Fees and Litigation Expenses - 18

1    given the different factual record, the holding in *Andrews* would have posed a

2    substantial challenge to Plaintiff and the Class at summary judgment.

3    **D. There is No Collusion Between the Parties**

4    The Ninth Circuit has advised courts to be concerned when the following are

5    present: (a) "when counsel receive a disproportionate distribution of the settlement,

6    or when the class receives no monetary distribution but class counsel are amply

7    rewarded"; (b) "when the parties negotiate a clear sailing arrangement providing

8    for the payment of attorneys' fees separate and apart from class funds, which

9    carries the potential of enabling a defendant to pay class counsel excessive fees and

10   costs in exchange for counsel accepting an unfair settlement on behalf of the

11   class"; and (c) "when the parties arrange for fees not awarded to revert to

12   defendants rather than be added to the class fund." *In re Bluetooth Headset*, 654

13   F.3d at 947. These signs is not dispositive as they are merely "warning signs" that

14   indicate the potential for collusion, *id.*; it only means that the fee provision in the

15   settlement agreement must be supported by an explanation and "does not betray

16   the class's interests." *Id.* at 949. Factors weighing in favor of a finding of non-

17   collusiveness include that the parties worked with "a neutral mediator," *In re*

18   *Bluetooth Headset*, 654 F.3d at 948 and that the settlement "largely accomplish[es]

19   the injunctive relief sought." *G. F. v. Contra Costa Cty,* No. 13 CV 3667, 2015

20   WL 7571789, at *11 (N.D. Cal. Nov. 25, 2015).

21

Here, the factors demonstrate no collusion between the parties, and the fees provided are reasonable. *First*, the parties used a neutral mediator to negotiate the Settlement, including attorneys' fees. ECF No. 139-1 ¶ 9. *Second*, under fee-shifting statutes, the amount of attorneys' fees need not "be proportionate to the amount of damages recovered" and "fee awards that greatly exceed the damages recovered are not uncommon." *Jacobson v. Wash. State Univ.*, No. 05 CV 92, 2007 WL 9717373, at *5 (E.D. Wash. Nov. 16, 2007) (citing *Riverside v. Rivera*, 477 U.S. 561, 574 (1986)); *Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542, 545-46 (7th Cir. 2009) ("Fee-shifting statutes remove th[e] normative decision from the court" about proportionality of fees to amount of damages because "Congress has already determined that the claim was worth bringing" no matter how small in comparison to costs to bring claim). Courts in the Ninth Circuit have approved fee requests by plaintiffs' counsel under fee-shifting statutes where the requested fees were greater than the plaintiff's monetary recovery. *See Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 218, 225 (9th Cir. 2013) (affirming award of $696,162.78 in attorneys' fees where jury awarded $27,280 in damages); *Fair Hous. v. Combs*, 285 F.3d 899, 902 (9th Cir. 2002) (upholding fee award of $508,606.78 where damages recovered totaled $98,777); *Guerrero v. Cal. Dep't of Corr. & Rehab.*, No. 13 CV 5671, 2016 WL 3360638, at **3, 35, 38 (N.D. Cal. June 16, 2016) (awarding $1,186,307.70 in fees where plaintiff received

Class Counsels' Motion for Attorneys' Fees and Litigation Expenses - 20

1   $140,362 in backpay); *Sako v. Wells Fargo Bank. N.A*., No. 14 CV 1034, 2016 WL

2   2745346, at **2, 8 (S.D. Cal. May 11, 2016) (awarding $228,201 in fees under fee-

3   shifting provision where plaintiff received $35,000 settlement); *Wallis v. BNSF Ry.*

4   *Co., No*. 13 CV 40, 2014 WL 1648472, at **1, 7 (W.D. Wash. Apr. 23, 2014)

5   (awarding $231,306.66 in fees in employment case based on $20,000 in damages);

6   *Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019, 1029, 1031 (C.D. Cal. 2014)

7   (awarding $601,902.50 in fees where jury awarded plaintiffs in § 1983 civil rights

8   case $10 in nominal damages).

9       *Third*, the Settlement provides for significant injunctive relief. *Dowd*, 28 F.

10  Supp. 3d at 1063-64 (awarding fees where plaintiff successfully challenged city

11  policies and "secur[ing] important social benefits" not included in damages

12  award); *G. F*, 2015 WL 7571789, at **9, 16 (awarding $2.5 million in attorneys'

13  fees in class action where class relief was wholly injunctive); *In re Ferrero Litig.*,

14  583 F. App'x 665, 667, 668–69 (9th Cir. 2014) (affirming $985,920 fee award

15  where settlement provided significant injunctive relief and $550,000 fund for

16  class); *Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996), *amended,*

17  108 F.3d 981 (9th Cir. 1997) (finding significant non-monetary results should be

18  considered in determining reasonable fee award). Finally, Class Counsel structured

19  the Settlement to ensure that the Settlement Fund for the Class would be fully

20  funded before any amount would be paid by Defendants toward attorneys' fees and

21

Class Counsels' Motion for Attorneys' Fees and Litigation Expenses - 21

costs, and therefore having counsel, rather than the Class, bear the risk of non-payment and delayed payment. Thus, these factors demonstrate that the attorneys fees sought under the DPPA's fee-shifting provision, 18 U.S.C. § 2724(b)(3) are reasonable.

**III.    Alternatively, the Court Can Award Fees Based on the Common Fund**

If the Court declines to award Class Counsel fees on a lodestar basis, the Court should award fees under the common fund doctrine. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole"). The common fund doctrine rests on the understanding that unnamed class members who benefit from the fund without contributing to it would be unjustly enriched if attorneys' fees were not paid out of the common fund. *Id*. Here, the efforts of Class Counsel have generated an approximately $2 million fund.

The Ninth Circuit "benchmark" for attorneys' fee awards is 25 percent of the common fund, but in practice, "in most common fund cases, the award exceeds that benchmark." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989) (surveying cases and stating "[t]his court's review of recent reported cases discloses that nearly all common fund awards range around 30%"); *Vedachalam v. Tata Consultancy Servs.*, Ltd., No. 06 CV 963, 2013 WL 3941319, at *2 (N.D.

Cal. July 18, 2013) (collecting cases awarding 30% or more and describing a 30% fee as "well within the usual range of percentages awarded"); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (noting that "25% is substantially below the average class fund fee nationally"). Under the common fund doctrine, the Court should award at least 30% as attorney fees.

In awarding fees based on a percentage of a common fund, the factors to determine an appropriate fee are: (1) the result obtained for the Class; (2) counsel's efforts, experience, skill, and performance; (3) the complexity of the issues; (4) the risks of non-payment assumed by counsel; (5) the reaction of the class; and (6) non-monetary benefits. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *Six (6) Mexican Workers*, 904 F.2d at 1311. The first four factors strongly support Plaintiff's Counsel's fee as described above. *Supra* Part II.B-C. To date, no Class member has objected to the settlement or to Class Counsel's entitlement to fees. Barton Decl. ¶ 14. When as here the settlement provides significant non-monetary benefits for the Class, courts award even more than 30%. *See Harris v. Amgen Inc.*, No. CV075442PSGPLAX, 2017 WL 6048215, at *8 (C.D. Cal. Apr. 4, 2017) (awarding 45% common fund award reflecting non-monetary value of settlement).

**IV.    Plaintiff's Counsel's Cost Request Should be Approved**

1    Courts can award "litigation costs reasonably incurred" under 18 U.S.C. §

2    2724(b)(3). Reasonable out-of-pocket litigation expenses are those that "would

3    normally be charged to a fee paying client," *Trs. of the Const. Indus. and Laborers*

4    *Health and Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006);

5    Plaintiff's counsel request reimbursement of a total of $55,459.12 in costs,

6    which includes the following charges, all of which are recoverable in this Circuit:

7    court fees, deposition costs, electronic research costs, electronic discovery expenses,

8    process server fees, postage and courier fees, printing costs, conference call costs

9    and travel/lodging. Barton Decl. ¶ 11; Jarrard Decl. ¶ 22; Sweetser Decl. ¶ 16.[8] These

10   expenses were necessary to the successful prosecution of this case. Barton Decl. ¶

11   11; Jarrard Decl. ¶ 22; Sweetser Decl. ¶ 16. Further, Plaintiff's counsel advanced

12   these expenses without any guarantee that they would be recovered. Barton Decl. ¶

13   12; Jarrard Decl. ¶ 22.

14

15   [8] *See Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994) (holding that "expenses
     related to discovery" are recoverable expenses); *Davis v. City & County of San*
16   *Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992) (affirming that "out-of-pocket"
     expenses such as "travel, courier and copying costs" are reimbursable), *vacated in*
17   *other part by* 984 F.2d 345, 345 (9th Cir. 1993); *In re: Cathode Ray Tube (CRT)*
     *Antitrust Litig.*, No. 07 CV 5944, 2016 WL 4126533, at *11 (N.D. Cal. Aug. 3, 2016)
18   (approving recovery of costs including conference call expenses); *Gordon v.*
     *Virtumundo, Inc.*, No. 06 CV 204, 2007 WL 2253296, * 15 (W.D. Wash. Aug 1.
19   2007) (holding mediator fees a recoverable cost); *see also Redland Ins. Co.*, 460
     F.3d at 1258-1259 (holding that "reasonable charges for computerized research may
20   be recovered").

21

1

**CONCLUSION**

2

For the forgoing reasons, the Court should grant Plaintiff's motion for an

3

order awarding attorneys' fees and litigation expenses to Class Counsel and

4

Plaintiff's Counsel. [9]

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

---

[9] As Plaintiff's Counsel will incur additional time and expenses between now and the final approval, they will submit an updated summary prior to the final approval hearing and include the updated expense reimbursement request in the proposed final approval order.

Class Counsels' Motion for Attorneys' Fees and Litigation Expenses - 25

1 | Dated: February 24, 2020          Respectfully submitted,

2

3 | */s/ Thomas G. Jarrard*
Thomas G. Jarrard
The Law Office of Thomas G. Jarrard, PLLC
4 | 1020 N. Washington
Spokane, WA 99201
5 | Telephone: (425) 239-7290
Email: tjarrard@att.net

6
R. Joseph Barton
7 | Block & Leviton LLP
1735 20th Street, N.W.
8 | Washington D.C. 20009
Telephone: 202-734-7046
9 | Email: jbarton@blockesq.com

10 | Jason Leviton
Block & Leviton LLP
11 | 155 Federal Street, Suite 400
Boston MA 02110
12 | Telephone: 617-398-5660
Email: jason@blockesq.com

13
James R. Sweetser
14 | Marcus Sweetser
Sweetser Law Office
15 | 1020 N. Washington St.
Spokane WA 99201
16 | Telephone: 509-328-0678
Email: jsweets@sweetserlawoffice.com
17 | Email: marcussweetser@gmail.com

18 | *Attorneys for Plaintiff and the Class*

19

20

21

Class Counsels' Motion for Attorneys' Fees and Litigation Expenses - 26

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on February 24, 2020, I caused to be filed electronically

3  a true copy of the foregoing document using the CM/ECF system which effected

4  service of the same upon all counsel of record.

5                                             */s/ Thomas G. Jarrard*
                                           Thomas G. Jarrard
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21