1

Thomas G. Jarrard
The Law Office of Thomas G. Jarrard, PLLC
1020 N. Washington
Spokane, WA 99201
Telephone: (425) 239-7290
Email: tjarrard@att.net

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON**

8

Jade Wilcox, on behalf of herself and
all others similarly situated,

9

          Plaintiffs,

10

    v.

11

Swapp Law, PLLC, d/b/a Craig
Swapp and Associates, and James
Craig Swapp, individually,

12

          Defendants

13

14

15

16

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:17-cv-275-RMP

Related to Case No. 2:17-cv-122-RMP

**PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT**

4/29/2020
With Oral Argument: 1:30 p.m.
920 West Riverside Ave., Rm. 901
Spokane, Washington

17

18

19

20

21

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................i

TABLE OF AUTHORITIES..............................................................................................ii

Index of Exhibits .............................................................................................................v

Memorandum of Points and Authorities ........................................................................2

    I.      Summary of Settlement Terms ................................................................3

    II.    Procedural History.................................................................................5

    III.   The Proposed Settlement Merits Final Approval ..................................6

         A.    The Ninth Circuit Favors Settlement of Class Action Lawsuits that are the Product of Arms-Length Negotiations .......................................................7

         B.    The Settlement is Fair, Reasonable, and Adequate ..................................8

             1.    The Strength of Plaintiff's Case Compared to the Value of Settlement Supports Approval of the Settlement. ...........................9

             2.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation Supports Approval of the Settlement.............................12

             3.    The Risk of Maintaining Class Action Status Throughout Trial Supports Approval of the Settlement.............................................15

             4.    The Amount Recovered, the Value of Nonmonetary Relief to the Class, and Defendants' Ability to Pay a Potential Judgment Support Approval of the Settlement. ...............................................16

             5.    The Provisions of the Settlement for Attorneys' Fees are Reasonable.....................................................................................18

             6.    The Experience and Views of Class Counsel Supports Approval of the Settlement. .....................................................................................19

             7.    The Lack of a Governmental Investigation Supports Approval....20

             8.    The Reaction of Class Members to the Proposed Settlement Supports Approval of the Settlement......................................21

         C.    The Notice Fairly Advises the Class about the Terms of the Settlement ..22

         D.    The Protective Order Should be Modified .................................................24

    IV.    Conclusion ..........................................................................................24

**Page(s)**

**CASES**

*Adsit v. Dundrum, LLC*,
No. 17 CV 110, 2019 WL 1270937 (E.D. Wash. Mar. 19, 2019)........................ 7

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019)............................................................. 14, 15

*Carideo v. Dell Inc.*,
No. 06 CV 1772, 2010 WL 11530601 (W.D. Wash. Sept. 13, 2010)................... 7

*Churchill Village, LLC v. General Elec.*,
361 F.3d 566 (9th Cir. 2004)................................................................... 22

*Clemans v. New Werner Co.*,
No. 12 CV 5186, 2013 WL 12108739 (W.D. Wash. Nov. 22, 2013) ........... 20, 21

*Dennings v. Clearwire Corp.*,
No. 10 CV 1859, 2013 WL 1858797 (W.D. Wash. May 3, 2013), *aff'd* No. 13-
35491 (9th Cir. Sept. 9, 2013) .............................................................. 19

*Nat'l Rural Telecomm'n Cooperative v. DIRECTV*,
221 F.R.D. 523 (C.D. Cal. 2004) ..................................... 9, 10, 15, 21

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ................. 20

*Estate of Brown v. Consumer Law Assocs., LLC*,
No. 11 CV 194, 2013 WL 2285368 (E.D. Wash. May 23, 2013)............. 9, 20, 21

*Fresco v. Auto. Directions, Inc.*,
No. 03 CV 61063, 2009 WL 9054828 (S.D. Fla. Jan. 20, 2009) ....................... 11

*In re Heritage Bond Litig.*,
No. 02 ML 1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ..... 10, 11, 12

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir.2000)................................................................... 12

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................ 16

*In re RJR Nabisco Sec. Litig.*,
    MDL No. 818, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992)............................ 21

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1982) ...................................................................... 12

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &*
    *Prod. Liab. Litig.*,
    No. 10 ML 2151, 2013 WL 3224585 (C.D. Cal. June 17, 2013)...................... 20

*Johansson-Dohrmann v. Cbr Sys., Inc.*,
    No. 12 CV 1115, 2013 WL 3864341 (S.D. Cal. July 24, 2013) ........................ 12

*Linney v. Cellular Alaska P'ship*,
    No. 96 CV 3008, 1997 WL 450064 (N.D. Cal. July 18, 1997).......................... 10

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................ 20, 21

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ............................................................. 6, 7, 9, 10

*Oppenlander v. Standard Oil Co.*,
    64 F.R.D. 597 (D. Colo. 1974) .......................................................................... 15

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ............................................................................ 15

*Rinky Dink, Inc. v. World Bus. Lenders, LLC,* No. 14 CV 268, 2016 WL 4052588
    (W.D. Wash. Feb. 3, 2016)............................................................................ 8, 17

*Roberts v. Source for Pub. Data, LP*,
    No. 08 CV 4167, 2010 WL 2195523 (W.D. Mo. May 28, 2010) ...................... 18

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)......................................................................... 7, 21

*Smith v. Legal Helpers Debt Resolution, LLC*,
    No. 11 CV 5054, 2012 WL 12863173 (W.D. Wash. Aug. 30, 2012)................... 6

*State of W. Va. v. Chas. Pfizer & Co.,*
   314 F. Supp. 710, (S.D.N.Y. 1970),
   *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ................................................................. 11

*Stratton v. Glacier Ins. Admin'rs, Inc.*,
   No. 02- CV 6213, 2007 WL 274423 (E.D. Cal. Jan. 29, 2007) ........................ 23

*Util. Reform Project v. Bonneville Power Admin.*,
   869 F.2d 437 (9th Cir. 1989) .............................................................................. 6

*Wiles v. Sw. Bill Tel. Co.*,
   No. 09 CV 4236, 2011 WL 2416291 (W.D. Mo. June 9, 2011) ...................... 17

*Zamora Jordan v. Nationstar Mortg., LLC*,
   No. 14 CV 175, 2019 WL 1966112 (E.D. Wash. May 2, 2019) ................... 7, 14

**OTHER AUTHORITIES**

18 U.S.C. § 2721(a)(1) ........................................................................................... 14

18 U.S.C. § 2724(b) ............................................................................................... 11

Fed. R. App. P. 8(a). ............................................................................................... 13

Fed. R. Civ. P. 23(e) ................................................................................................ 6

## INDEX OF EXHIBITS

Declaration of R. Joseph Barton in Support of Plaintiff's Motion for Class Certification (ECF No. 61-12)

Declaration of Thomas G. Jarrard in Support of Plaintiff's Motion for Class Certification (ECF No. 61-16)

Declaration of R. Joseph Barton in Support of Plaintiff's Motion for Preliminary Approval (ECF No. 139-1) with the following attachments:

    Exhibit A:   Settlement Agreement (ECF No. 139-2)

    Exhibit B:   Notice of Class Action Settlement & Hearting (ECF No. 139-3)

    Exhibit C:   Plan of Allocation (ECF No. 139-4)

Declaration of Agnieszka Jeter of Angeion Group, LLC Regarding Notice Implementation (ECF No. 142) with the following attachments:

    Exhibit A:   Notice of Class Action Settlement & Hearing (ECF No. 142-1)

Plaintiff Jade Wilcox, by and through Class Counsel, on behalf of herself and the Certified Class, moves this Court to:

1.  Finally approve the Settlement Agreement between Plaintiff, on behalf of the Class previously certified by the Court, and Defendants as fair, reasonable, and adequate under Rule 23(e) of the Federal Rules of Civil Procedure;

2.  Dismiss this action against Defendants with prejudice;

3.  Order that the term "Final Disposition" in the Protective Order (ECF No. 38) will be modified to mean until Defendants have paid all monetary amounts required under the Settlement;

4.  Adjudge that Plaintiff and the Class be deemed conclusively to have released and waived any and all Settled Claims against the Defendants as provided in the Settlement Agreement;

5.  Bar and permanently enjoin Plaintiffs and the Class from prosecuting any and all Settled Claims, as provided in this Settlement Agreement, against the Defendants; and

6.  Retain exclusive continuing jurisdiction over the implementation of the Settlement Agreement, the disposition of the Settlement Fund, and enforcement and administration of the Settlement Agreement.

This Motion is supported by the accompanying Memorandum of Points and Authorities, Plaintiff's Unopposed Motion for Preliminary Approval of Class

Action Settlement (ECF No. 139), the Proposed Order filed herewith, the declarations of Agnieszka Jeter, all the pleadings and documents on file with the Court in this action, and further evidence and argument as may be submitted prior to the Court's decision on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Jade Wilcox, individually and as the Court-appointed Class Representative, on behalf of the Class, respectfully submits this Memorandum of Points and Authorities in support of her Motion for Final Approval of the Class Action Settlement. Plaintiff previously submitted to this Court a proposed Settlement Agreement resolving this case, which was preliminarily approved by the Court on November 27, 2019. ECF No. 141. The Parties have taken steps to effectuate the Settlement and the Court's Order Granting Preliminary Approval of Class Action Settlement. Plaintiff now respectfully requests the Court grant final approval of the Settlement.

Plaintiff brought this action on August 9, 2017 under the Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et seq*, on behalf of a class of drivers whose personal information was illegally obtained or used by Defendants for marketing purposes. Following more than two years of contentious litigation, in which two motions to dismiss were denied and class certification was granted over Defendants' opposition, Plaintiff and Defendants engaged in settlement

negotiations and then entered into the Settlement Agreement on October 25, 2019. The Settlement provides both for a substantial monetary benefit and non-monetary benefits. As previously described in the Motion for Preliminary Approval and as more fully explained below, given the uncertainty of establishing liability, the risk on appeal, and uncertainty regarding the ability of Defendants to satisfy a judgment reached at trial the Settlement is fair, reasonable, adequate, and should be finally approved by the Court.

## I. Summary of Settlement Terms

The terms of the proposed settlement between Plaintiff and Defendants provide both a monetary and non-monetary consideration. Agmt. §§ 4, 6. Effective as of the execution of the Settlement Agreement, Defendants agreed to refrain from purchasing Police Traffic Collision Reports ("PTCRs") in or from the State of Washington for the purpose of acquiring contact information for potential clients and sending marketing materials to them. *Id.* § 6.1. Defendants also agreed that they will cease using any such PTCRs for those purposes, and will, within 120 days after the final distribution to the Class Members, destroy all such PTCRs and personal information taken from them. *Id.* § 6.3-4. Defendants also agreed to notify Class Counsel of any third parties to whom Defendants have provided such PTCRs (or personal information from the PTCRs) and will notify such third parties that Plaintiff and the Class consider those records to contain information protected by

the DPPA. *Id.* § 6.5-6

In addition, Defendants have agreed to pay the following amounts: (1) $950,000 into a Settlement Fund, which minus only settlement administration expenses, will be paid to the Class (and which will be fully funded by no later than June 1, 2020); and (2) between $900,000 and $1.05 million (depending on whether the amount is paid by December 1, 2020 or paid over three years), out of which any award of attorneys' fees, litigation expenses and class representative service award, and if there are any remaining amounts, the remainder will be paid to the Settlement Fund. *Id.* § 4.2.

The Net Settlement Fund will be paid to the Class Members pursuant to a Plan of Allocation proposed by Class Counsel and as approved by the Court. *Id.* § 7. The Plan of Allocation proposes that Settlement Fund will be evenly divided among all Class Members and that Class Members will receive a payment without needing to complete a claim form. ECF No. 139-4. The benefit of being able to distribute the Settlement Funds to Class Members without a claim form is that it should greatly increase the number of persons who actually benefit from the Settlement.

In exchange for these benefits, the Class will release and dismiss with prejudice all claims arising out of Defendants' acquisition and use of PCTRs that Defendants have identified as involving Class Members and will dismiss with

prejudice their claims asserted in this action. Agmt. § 12.1.Defendants will

likewise release Plaintiff and each Class Member from all claims that could have

been asserted in this case, including any claims for attorneys' fees, costs, expenses,

or sanctions, that relate to the filing, commencement, prosecution, or settlement of

this case. *Id.* § 12.2.

**II.     Procedural History**

The full procedural history and factual background of this action are

described in Plaintiff's Motion for Preliminary Approval of Class Action

Settlement filed on October 25, 2019. *See* ECF No. 139 at 3-8. The Court held a

hearing on November 25, 2019, and on November 27, 2019, granted preliminary

approval of the Settlement, appointed Angeion Group as Settlement Administrator,

and approved the Class Notice. ECF No. 141. On January 8, 2020, the Settlement

Administrator sent the approved Class Notice to the record addresses of members

of the Class identified in data provided by the Defendants via first class U.S. mail.

ECF No. 142 ¶ 6. It also posted a website containing important documents related

to the lawsuit, including the information in the Class Notice, at

www.SwappSettlement.com. *Id.* ¶ 7.

As of March 23, 2020, 8,114 of the 30,874 notices sent by the Settlement

Administrator were returned as undeliverable. ECF No. 146 ¶ 4-5. The Settlement

Administrator identified updated addresses for 6,029 of the undeliverable notices

and re-mailed notices to them, achieving a more than 92% notice success rate. *Id*. No member of the Class filed an objection with the Settlement Administrator or the Court. Id. ¶ 11. Only 22 members of the Class have requested exclusion from the Settlement. *Id*. ¶ 10.

### III.  The Proposed Settlement Merits Final Approval

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in class actions. *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982); *Smith v. Legal Helpers Debt Resolution, LLC*, No. 11 CV 5054, 2012 WL 12863173, at *3 (W.D. Wash. Aug. 30, 2012) ("Strong judicial policy favors settlements, particularly where complex class action litigation is concerned."). To protect the interests of the class, Rule 23(e) provides that a class action cannot be settled without court approval. Fed. R. Civ. P. 23(e).

Pursuant to the Settlement and the Preliminary Approval Order (and as stated in the Notice) the time for filing objections has now passed. No objections to the Settlement have been received. Only 22 of the 30,870 Class members opted out of the Settlement. ECF No. 146 ¶ 10 & Ex. B. All of the factors set forth by the Ninth Circuit favor approval of this Settlement. Accordingly, this Settlement should be finally approved by the Court.

### A.    The Ninth Circuit Favors Settlement of Class Action Lawsuits that are the Product of Arms-Length Negotiations

The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). "[I]ntrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. When a settlement is preceded by extensive, arms-length negotiations, that favors approval. *Zamora Jordan v. Nationstar Mortg.*, LLC, No. 14 CV 175, 2019 WL 1966112, at *3 (E.D. Wash. May 2, 2019); *Adsit v. Dundrum, LLC*, No. 17 CV 110, 2019 WL 1270937, at *1 (E.D. Wash. Mar. 19, 2019).

The assistance of a neutral mediator in the settlement negotiations further evidences the non-collusive nature of the negotiations. *Zamora Jordan*, 2019 WL 1966112, at *3 (finding no collusion where "the Settlement Agreement was achieved under the supervision of a trusted third-party mediator following extensive settlement negotiations"); *Carideo v. Dell Inc.*, No. 06 CV 1772, 2010 WL 11530601, at *3 (W.D. Wash. Sept. 13, 2010) ("The assistance of an experienced mediator … confirms that the settlement is non-collusive."). The fact

Plaintiff's Motion for Final Approval of Class Action Settlement - 7

that experienced counsel has been actively engaged in the litigation and has diligently pursued the necessary discovery evidences the non-collusive nature of the settlement. *Rinky Dink, Inc. v. World Bus. Lenders, LLC,* No. 14 CV 268, 2016 WL 3087073, at *3 (W.D. Wash. May 31, 2016) ("The presence of substantial formal discovery is an indicator that the parties were informed regarding the wisdom of settlement and engaged in arms-length bargaining.").

As detailed in the Motion for Preliminary Approval, the parties negotiated the principal terms of this Settlement at an all-day mediation conducted with the assistance of mediator Hon. Lonny Suko. ECF No. 139 at 8; ECF No. 139-1 ¶ 9. The Parties reached the principal terms of the Settlement only after Plaintiff had received and reviewed documents produced by Defendants regarding their financial circumstances and ability to satisfy a potential judgment in this case. ECF No. 139-1 ¶ 7-8.

## B. The Settlement is Fair, Reasonable, and Adequate

To determine that the proposed class action settlement is fair, reasonable, and adequate, the Court will balance several factors which may include, among others, some or all of the following:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed

settlement.

*Officers for Justice*, 688 F.2d at 625 (citations omitted); *Estate of Brown v. Consumer Law Assocs., LLC,* No. 11 CV 194, 2013 WL 2285368, at *2 (E.D. Wash. May 23, 2013) (same). "The relative degree of importance to be attached to any particular factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. The Court may also consider "a settling party's ability to satisfy its financial obligations under the settlement agreement as compared to its ability to pay a potential judgment" and "the reasonableness of any provisions for an award of attorney's fees." *Estate of Brown*, 2013 WL 2285368, at *2 (citing Manual for Complex Litigation (Fourth) § 21.62 (2008)). As shown below, all the relevant factors here weigh in favor of approval.

>    1.    **The Strength of Plaintiff's Case Compared to the Value of Settlement Supports Approval of the Settlement.**

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecomm'n Cooperative v. DIRECTV,* 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 5 *Moore Federal Practice*, § 23.85[2][b]). In performing that balancing, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a

judgment in favor of the class." *Id*.; *Linney v. Cellular Alaska P'ship*, No. 96 CV 3008, 1997 WL 450064, *6 (N.D. Cal. July 18, 1997) ("While it remains a possibility that a more favorable result might have been achieved had class counsel pursued this case to trial and beyond, that is not for this Court to decide."). Indeed, the Ninth Circuit has explicitly warned against reaching a conclusion as to the merits of the case in analyzing a proposed class action settlement:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor [the Court of Appeals] is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements.

*Officers for Justice*, 688 F.2d at 625. Rather, the question is whether the settlement constitutes "a fair resolution of the issues in this case." *DIRECTV*, 221 F.R.D. at 526; *see also In re Heritage Bond Litig.,* No. 02 ML 1475, 2005 WL 1594403, *6 (C.D. Cal. June 10, 2005) (explaining that in "most situations" the settlement must be "clearly inadequate" for this factor to weigh against approval).

The potential uncertainty introduced by the remedial provisions of the DPPA weighs in favor of settlement. The DPPA provides that "[t]he court may award— (1) actual damages, but not less than liquidated damages in the amount of $2,500; (2) punitive damages upon proof of willful or reckless disregard of the law; (3) reasonable attorney's fees and other litigation costs reasonably incurred; and (4)

such other preliminary and equitable relief as the court determines to be appropriate." 18 U.S.C. § 2724(b). Some courts have taken the position that relief is awarded "at the discretion of the district court," and "statutory damages are not mandatory recovery in a DPPA case." *Fresco v. Auto. Directions, Inc.*, No. 03 CV 61063, 2009 WL 9054828, at *4 (S.D. Fla. Jan. 20, 2009) (holding proposed DPPA settlement within range of potential recovery). If the amount of liquidated damages is discretionary, then the Class could receive far less than the $25 million and the jury may award far less than $25 million or perhaps nothing at all (even if liability was otherwise established).

Even if the amount of liquidated damages is mandatory, there is certainly no guarantee that Plaintiff and the Class would be successful on summary judgment or at trial, and even if successful in the trial court, there is no certainty that any judgment in favor of Plaintiff would necessarily be affirmed on appeal. Even when class counsel is "confident of the strength of their case, it is imprudent to presume ultimate success at trial and thereafter." *Heritage Bond Litig.*, 2005 WL 1594403, *7; *State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). Indeed, there are notable instances in which a class action settlement was rejected and the class subsequently lost on the merits or recovered

less than it would have under the proposed settlement. *See Heritage Bond Litig.*, 2005 WL 1594403 *7 n.5 (discussing one such instance); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999) (discussing others). Even if this Court was to value highly the strength of Plaintiff's claims at this point, there is no guarantee that this would be the Court's ultimate view of the merits or that, even if this was the Court's ultimate view, that such a view would be adopted on appeal. Because of the risk that Plaintiff and the Class would receive nothing at judgment, the Settlement, which provides immediate monetary relief and non-monetary relief protecting the privacy interests of the Class is a good result. Thus, this factor weighs heavily in support of approval.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation Supports Approval of the Settlement.

In assessing whether the proposed settlement is fair, reasonable, and adequate, "the Court must balance against the continuing risks of litigation (including the strengths and weaknesses of the plaintiff's case), the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery." *Johansson-Dohrmann v. Cbr Sys., Inc.*, No. 12 CV 1115, 2013 WL 3864341, at *4 (S.D. Cal. July 24, 2013) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir.2000)).

The expense, risk, and length of continued proceedings necessary to prosecute this case against Defendants through trial and appeals are substantial. If

Plaintiff's Motion for Final Approval of Class Action Settlement - 12

this litigation were to continue, it might not be finally resolved for years given the amount of additional time needed to reach trial and conduct appeals. Although considerable fact discovery has been completed in connection with class certification, merits and expert discovery had not yet been completed and under the scheduling order existing at the time that the Parties agreed to mediation, discovery was anticipated to last another 3-5 months. ECF No. 114 at 4. Assuming that Plaintiff's claim survived Defendants' inevitable motion for summary judgment, a trial was not anticipated for an additional 6-7 months. *Id.* at 8. Additionally, after class certification, Defendants had filed motions to take an immediate appeal pursuant to 29 U.S.C. § 1292(b) and also intended to seek a Rule 23(f) appeal (if their motion for reconsideration were not granted). ECF No. 115 at 3 & n.1. If either of those interlocutory appeals were granted, the case could have been stayed until the appeals were completed. *See* Fed. R. App. P. 8(a). In event of an interlocutory appeal, further district court proceedings would likely be delayed by a minimum of another year. US Court of Appeals Judicial Caseload Profile at 22, *available at* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_appprofile1231.2019.pdf. Even assuming all of those hurdles were overcome, the parties would then engage in evidentiary motions and trial if the matter were not resolved on summary judgment. Prosecuting this case through trial would both entail

Plaintiff's Motion for Final Approval of Class Action Settlement - 13

significant risks and require significant expenditures for experts by all parties and countless hours of attorney time.

And even if Plaintiff were to prevail at trial, Defendants would undoubtedly appeal any adverse decision to the Ninth Circuit where there is a risk that a favorable decision might be reversed on appeal. Where it is "possible that the outcome of an appeal would result in no recovery or substantially reduced damages for Class Members" this factor weighs in favor of final approval. *Zamora Jordan*, 2019 WL 1966112, at *4. This case turns in part on whether the personal information of Class members was "from a motor vehicle record" and therefore protected by the DPPA. *See* Am. Compl. ¶¶ 6.4, 6.6; 18 U.S.C. § 2721(a)(1). This Court held in denying Defendants' Motion to Dismiss that "the DPPA protects the information on driver's licenses and motor vehicle registrations, because the information on those items come 'from a motor vehicle record' at the state DOL." ECF No. 108 at 12. After the Parties reached a settlement in principle, the Ninth Circuit decided *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019), which was pending at the Ninth Circuit at time of mediation and the result could adversely affect any favorable outcome to the Class. In *Andrews*, the Ninth Circuit held that "[a] driver's license in the possession of its owner is no longer maintained by the DMV, and so such a record is outside the bounds of the DPPA." *Andrews*, 932 F.3d at 1260. Indeed, Defendants' motion for interlocutory appeal sought to

appeal this issue before the case was stayed to facilitate mediation and settlement. ECF No. 115 at 6. Thus, the *Andrews* case raises a significant risk that decision could adversely affect any judgment in favor of the Class here.

The *DIRECTV* court colorfully summarized as follows: "It has been held proper to take the bird in hand, stead of a prospective flock in the bush." *DIRECTV*, 221 F.R.D. at 526 (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)); *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now."). If this litigation were to continue, there is a real possibility that the Class members might collect little or nothing and even if they did, would not receive any payment until well into the future. By contrast, the proposed settlement provides a prompt, substantial and assured cash benefit to the Class Members within a few months. Agmt. § 5.3. A prompt, certain recovery is considerably more valuable to the Class Members than an uncertain recovery at some undetermined point in the future. Accordingly, the factors of risk, expense, complexity, and likely duration of further litigation weigh heavily in favor of approving the Settlement.

### 3. The Risk of Maintaining Class Action Status Throughout Trial Supports Approval of the Settlement.

The risk of maintaining class certification exists even where the Court has certified the Class, because "there is no guarantee the certification would survive

through trial, as Defendants might have sought decertification or modification of the class." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008). Here, the risk was more concrete. After the court's order certifying the class, Defendants filed motions for reconsideration of this Court's order certifying the Class, and stated their intention to file a petition to the Ninth Circuit for review of the order under Rule 23(f). ECF No. 113, 115 at 3 n.1. If that petition was successful, there was a real risk that class certification would not be maintained. *See* Mark D. Harris & John E. Roberts, "Appealing Class Certification Orders Under Rule 23(f), *N.Y.L.J.* (Aug. 24, 2015), *available at https://www.proskauer.com/insights/download-pdf/2210* (approximately one in four 23(f) petitions are granted); John H. Beisner *et al.*, "Study Reveals US Courts of Appeal Are Less Receptive to Reviewing Class Certification Rulings," *Skadden Insights* (April 29, 2014), *available at https://www.skadden.com/-/media/files /publications/2014/04/studyrevealsuscourtsof-appealarelessreceptivetorev.pdf* (Ninth Circuit reverses grant of class certification in approximately 50% of cases where 23(f) petition is granted).

**4. The Amount Recovered, the Value of Nonmonetary Relief to the Class, and Defendants' Ability to Pay a Potential Judgment Support Approval of the Settlement.**

The Settlement Agreement provides for at least $950,000 to be paid into a Settlement Fund for the benefit of the Class, which results in a minimum per Class

Member value of $31.07 (before settlement administration expenses) and $28.50 (after payment of estimated settlement administration expenses). Agmt. § 4.1. The total amount is in line with class settlements approved in DPPA cases by other courts. *E.g. Wiles v. Sw. Bill Tel. Co.*, No. 09 CV 4236, 2011 WL 2416291, at *1 (W.D. Mo. June 9, 2011) (finding a $900,000 settlement reasonable for a class of all drivers licensed in Missouri). Particularly in light of the other factors, this Settlement is a very good result for the Class even without taking into account the other benefits obtained by the Settlement.

First, there is a substantial risk that even if the Class obtained a judgment against Defendants, Defendants would not be able to satisfy the judgment. ECF No. 139-1 ¶ 8. In *Rinky Dink, Inc. v. World Bus. Lenders*, LLC, No. 14 CV 268, 2016 WL 4052588 (W.D. Wash. Feb. 3, 2016), the court recognized that prior to seeking preliminary approval, class counsel had reviewed detailed financial documents establishing that defendants "d[id] not have the ability to pay a larger settlement," and held that "[t]his factor weighs in favor of preliminary approval." *Id*. at *4. Here, Defendants produced a substantial volume of financial records to allow Class counsel to assess the financial position of the Defendants and their ability to satisfy a judgment. ECF No. 139-1 ¶ 7. Based on those records, Defendants do not have the capacity to pay anything more than a fraction of the potential judgement. ECF No. 139-1 ¶ 8. A judgment of full damages for the Class

would likely bankrupt Defendants and require liquidation of the Defendants' assets in court proceedings (further depleting the funds available to satisfy the judgment and placing the Class in the position of junior, unsecured creditors). *Id*.

Second, the non-monetary relief requiring changes to Defendants' business practices and the removal of protected information from Defendants' possession accomplishes the privacy purposes of the DPPA and has substantial value to the Class. *See Roberts v. Source for Pub. Data, LP*, No. 08 CV 4167, 2010 WL 2195523, at *3 (W.D. Mo. May 28, 2010) (holding return and removal of DPPA-protected information *alone*, even with no monetary component, constituted reasonable and satisfactory terms of settlement). Under the Settlement, Defendants will be required to destroy the PTCRs or other records in their possession containing the personal information of Class Members and to cease and refrain from using that personal information for any purpose. Agmt. § 6.2-4. Defendants are also required to notify third parties to whom they have transmitted the personal information of Class Members that the Class consider that information protected by the DPPA. Agmt. § 6.6. And Defendants will no longer purchase PCTRs in or from the State of Washington for the purpose of soliciting clients even if they legally able to do so. Agmt. § 6.1.

**5. The Provisions of the Settlement for Attorneys' Fees are Reasonable.**

The Settlement Agreement includes a provision whereby Defendants agreed

to an amount of attorneys fees. Agmt. § 10.2-10.3. While the Ninth Circuit has advised district courts that such arrangements should be scrutinized, this Court has already acknowledged that the parties have taken steps to alleviate any potential concern. ECF No. 141 at 4. The monies used to pay attorneys fees will come from payments to be made by the Defendants over time, and only after an initial distribution of $950,000 is made to the Class. *See* Agmt. § 10.3-10.6. Class Counsel will bear the credit risk associated with the possibility of Defendants' nonpayment, and any amount not awarded from this fund as attorneys fees will revert to the settlement fund. *See id*. § 10.7. In *Dennings v. Clearwire Corp.*, No. 10 CV 1859, 2013 WL 1858797, at *9 (W.D. Wash. May 3, 2013), *aff'd* No. 13-35491 (9th Cir. Sept. 9, 2013), the court held that there was no evidence of collusion despite the existence of a similar attorneys' fees provision. *Id*. at 8. The Court noted that the negotiations had been conducted at arm's length with the assistance of a mediator, *id*., and held that where any amounts not awarded as fees will revert to the Class there is no indication of collusion. *Id*. at 9. This settlement has both characteristics. The Court also has the discretion to address the reasonableness of the amount of an award of attorneys' fees separately, on Class Counsel's Motion for Attorneys' Fees and Litigation Expenses. *See* ECF No. 144.

### 6.     The Experience and Views of Class Counsel Supports Approval of the Settlement.

When assessing the fairness of a proposed settlement, "the court must

consider the views and experience of counsel." *Clemans v. New Werner Co.*, No. 3:12-CV-05186, 2013 WL 12108739, at *4 (W.D. Wash. Nov. 22, 2013); *see In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 10 ML 2151, 2013 WL 3224585, at *11 (C.D. Cal. June 17, 2013) ("The recommendations of counsel are given great weight since they are most familiar with the facts of the underlying litigation."); *Estate of Brown*, 2013 WL 2285368, at *4 (holding the views of experienced counsel "are entitled to deference"). Indeed, "the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981). The extensive experience of Class Counsel in representing plaintiffs in class action litigation has been set forth previously. ECF No. 61 at 14-15; *see* ECF Nos. 61-12, 61-16. Taking into account all of the factors and after conducting significant discovery and motions practice, Class Counsel believe that the proposed Settlement is a very good result for the Class. ECF No. 139-1 ¶ 12.

**7.     The Lack of a Governmental Investigation Supports Approval.**

This case was not assisted in any way by any governmental inquiry or prosecution and therefore was not a case where Plaintiff could ride the coattails of a governmental agency's investigation and findings. *E.g., Maley v. Del Global*

Plaintiff's Motion for Final Approval of Class Action Settlement - 20

*Techs. Corp.*, 186 F. Supp. 2d 358, 360 (S.D.N.Y. 2002) (noting with approval that settlement "negotiations were made without the benefit of any governmental or agency investigation or prosecution"); *In re RJR Nabisco Sec. Litig.*, MDL No. 818, 1992 WL 210138, at *8 (S.D.N.Y. Aug. 24, 1992) (approving settlement and noting that plaintiffs' counsel, not a governmental agency, exclusively developed the facts in aid of the plaintiffs' case). A settlement obtained without the government's help is a factor in favor of approval. *W. Publ'g Corp.*, 563 F.3d at 964. Prior to filing suit, one of Plaintiff's counsel had raised issues with Defendants' practices with the Washington State Bar, but the Washington State Bar declined to take any action based on any potential violations of the DPPA.

### 8. The Reaction of Class Members to the Proposed Settlement Supports Approval of the Settlement.

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *DIRECTV*, 221 F.R.D. at 529. Where there are no objections to a proposed settlement, this factor weighs strongly in favor of approval. *Estate of Brown*, 2013 WL 2285368, at *4 (holding lack of objections a "strong indicator[] that the class favors settlement"). Similarly, a lack of objections and small number of opt-outs were "strong indications of Class Members' support for the Settlement as fair, adequate, and reasonable." *Clemans v. New Werner Co.*, No. 12 CV 5186, 2013 WL 12108739, at *5 (W.D. Wash. Nov.

Plaintiff's Motion for Final Approval of Class Action Settlement - 21

22, 2013) (finding that only 0.001% percentage of opt-outs favored approval).

Here, no Class members have filed an objection to the settlement and only 22 have

opted out. These opt-outs represent only 0.07% of the 28,785 Class members who

received the notice of the Settlement. *See* ECF 146 ¶ 4-5, 10. Accordingly, the

overwhelmingly positive reaction by the Class to the Settlement supports approval

of the Settlement.

## C. The Notice Fairly Advises the Class about the Terms of the Settlement

As explained in Plaintiff's Motion for Preliminary Approval (ECF No. 139),

the precise form of Notice to the Class is discretionary, but an adequate Notice

provides the following information: (1) descriptions of the facts underlying the

action and of the class; (2) a description of the terms of the settlement; (3)

disclosure of any benefits provided to class representatives; (4) information

regarding attorneys' fees; (5) the time and place of the final hearing; (6) counsel's

contact information and instructions on how to object and/or make inquires; and

(7) explanation of the procedure for allocation. Pl. Prelim. Approv. Mem. at 22-23;

*see Churchill Village, LLC v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)

(finding notice sufficient if it "generally describes the terms of the settlement in

sufficient detail to alert those with adverse viewpoints to investigate and to come

forward and be heard.") (emphasis added).

As another court in this Circuit explained, the Class Notice should meet the

standards of both "clarity and conciseness." *Stratton v. Glacier Ins. Admin'rs, Inc.*, No. 02 CV 6213, 2007 WL 274423, *15 (E.D. Cal. Jan. 29, 2007). Here, the Class Notice met these standards. The Settlement Class Notice is 9 pages and provides detailed information about the Settlement. ECF No. 142-1. On January 8, 2020, in accordance with the Court's Order, the Settlement Administrator sent the approved notice to 30,870 record addresses of the Class members via First Class U.S. Mail. ECF No. 142 ¶ 6. As of March 8, 2020 (two months following mailing), 8,114 sent notices were returned by the U.S. Postal Service as undeliverable. ECF No. 146 ¶ 5. The Settlement Administrator was able to direct 6,029 of these notices to an updated address. *Id.* The Notice directed Class Members to a website that went live on January 8, 2020, [www.SwappSettlement.com](www.SwappSettlement.com), which contains information about the Settlement and access to important case-related documents. ECF No. 142 ¶ 7. The website has had 938 unique visitors since it was established. ECF No. 146 ¶ 7.

The Notice and its distribution constituted the best practicable notice to members of the Class, was reasonably calculated to apprise members of the Settlement Class of pertinent information, and was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice. Accordingly, the Notices satisfy the requirements of the Federal Rules of Civil Procedure 23(c)(2) and (e), and the United States Constitution (including the Due

Process Clause).

**D. The Protective Order Should be Modified**

This Court previously entered a protective order providing for the destruction of confidential material produced in this litigation within 60 days of "Final Disposition" of this action. ECF No. 38 at 12. Final Disposition was defined as the later of the dismissal of the claims in this action, final judgment after exhaustion of appeals, or the distribution of the proceeds to the Class. *Id*. at 13. The parties have agreed as a condition of the Settlement that confidential material produced in this litigation will instead be destroyed within 60 days of the date on which Defendants make the last monetary payment under the Settlement Agreement. Agmt. § 16.1. Class Counsel's need to potentially use materials designated confidential by Defendants in this litigation will end once Defendants satisfy their obligations under the Settlement Agreement, and destruction of such documents need not wait until proceeds have been fully distributed to the Class. The Court should therefore modify the Protective Order such that the term "Final Disposition" is defined as the date on which Defendants make the last monetary payment under the Settlement Agreement.

**IV. Conclusion**

For all the foregoing reasons, the proposed Settlement should be finally approved and Plaintiff's motion should be granted.

Dated: March 30, 2020                    Respectfully submitted,


                                         */s/  Thomas  G.  Jarrard*_____
                                         Thomas G. Jarrard
                                         The Law Office of Thomas G. Jarrard, PLLC
                                         1020 N. Washington
                                         Spokane, WA 99201
                                         Telephone: (425) 239-7290
                                         Email: tjarrard@att.net

                                         R. Joseph Barton
                                         Block & Leviton LLP
                                         1735 20th Street, N.W.
                                         Washington D.C. 20009
                                         Telephone: 202-734-7046
                                         Email: jbarton@blockesq.com

                                         Jason Leviton
                                         Block & Leviton LLP
                                         155 Federal Street, Suite 400
                                         Boston MA 02110
                                         Telephone: 617-398-5660
                                         Email: jason@blockesq.com

                                         *Attorneys for Plaintiff and the Class*

                                         James R. Sweetser
                                         Marcus Sweetser
                                         Sweetser Law Office
                                         1020 N. Washington St.
                                         Spokane WA 99201
                                         Telephone: 509-328-0678
                                         Email: jsweets@sweetserlawoffice.com
                                         Email: marcussweetser@gmail.com

                                         *Attorneys for Plaintiff*

Plaintiff's Motion for Final Approval of Class Action Settlement - 25

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2020 I caused to be filed electronically a true copy of the foregoing document using the CM/ECF system which effected service of the same upon all counsel of record.

*/s/ Thomas G. Jarrard*
Thomas G. Jarrard